ORIGINAL

*1050-14*

PD-1050-14
IN THE TEXAS COURT OF CRIMINAL APPEALS
COA 09-13-00180-CR,09-13-00181-CR,09-13-00182-CR,09-13-00183-CR

PETER JAMES MARTIN, Appellant, §
§ From the 221st Judicial District
v. § Court of Montgomery County, Texas
§ Cause Number 12-03-02604-CR
THE STATE OF TEXAS, Appellee, §

---

## PETITION FOR DISCRETIONARY REVIEW

---

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 31 2014

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

DEC 31 2014

Abel Acosta, Clerk

PETER JAMES MARTIN
tdcj-cid #1846003
STILES UNIT 3060 FM 3514
BEAUMONT, TX 77705

ORAL ARGUMENT WAIVED
REQUEST FOR APPOINTMENT OF COUNSEL

## (a) Identity of Judges, Parties and Lawyers

**Judges:**

Honorable Lisa Michalk,
pre-trial proceedings
207 W. Phillips
Conroe, Texas 77301
Phone:(936)539-7808

Honorable Mary Anne Turner,
all trial proceedings
210 W. Davis, Suite 400,
Conroe, Texas 77301
Phone:(936)538-8174

**Prosecutors:**

Mr. Robert Fryer,
SBOT #00798189
pre-trial proceedings
Assistant District Attorney
for Montgomery County

Ms. Joann Linzer,
SBOT #24037255
trial proceedings
Assistant District Attorney
Montgonery County

Ms. Amanda Lanning
SBOT #24071514
trial proceedings
Assistant District Attorney
for Montgomery County

Mr. Lane Haygood
SBOT #24066670
trial proceedings
Assistant District Attorney
for Montgomery County

Jason Larman,
SBN #24072468
appeal proceedings
Assistant District Attorney
for Montgomery County

Mr. Bill Delmore,
SBN #05732400
appeal proceedings
Assistant District Attorney
for Montgomery County

Mr. Brent Ligon
SBN #00796955
District Attorney
for Montgomery County

207 W. Phillips, 2nd Floor,
Conroe, Texas 77301
Phone:(936)539-7800
FAX:   (936)788-8395

**Defense Lawyers:**

Mr. Todd Ward,
SBOT #00797780
pre-trial proceedings
DeGuerin  and Dickson L.L.C.
1013 Preston Ave., 7th Floor
Houston, Texas 77002
(713)223-5959

Mr. Walter Boyd Jr.,
SBOT #02782000
trial proceedings
202  Travis. Suite 208
Houston, Texas 77002

Mr. Christopher Neal Allen,
SBOT #24031816
appeal proceedings
Assistant District Attorney
for Mongomery County (!)
(936)539-7800

Mr. Jeremy D. Finch,
SBOT #24052964
appeal proceedings
300 W. Davis, Suite 450
Conroe, Texas 77301
Phone:(936)756-7297

**Appellant:**

Mr. Peter James Martin, TDCJ-CID #1846003
Michael Unit of TDCJ-CID, 2664 FM 2054
Tennessee Colony, Texas 75886

Legal Assistant, Paul James Koumjian, Post-Conviction Issues
TDCJ-CID #1039181, Hughes Unit, Rt.2, Box 4400
Gatesville, Texas 76597

i

## (b) Table of Contents

(a)  Identity of Judges, Parties and Lawyers                                    i
(b)  Table of Contents                                                          ii
(c)  Index to Authorities, Documents and Appendix Exhibits                 iii-iv
(d)  Statement Regarding Oral Argument                                          v
(e)  Statement of the Case                                                      v
(f)  Statement of the Procedural History                                    vi-xi
(g)  Grounds for Review One through Seven                                     xii
(h)  Arguments                                                               1-13

1.   APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED BY APPEAL COUNSEL'S
TOTAL DISREGARD IN THE APPELLANT'S BRIEF OF THE MAIN DEFENSES ARGUED
TO THE JURY AND THE COURT OF APPEALS NOT RULING ON THE MERITS OF
APPELLANT'S FILED COMPLAINTS REQUIRING A VACATE AND REMAND ORDER

    A.   Due Process                                                       1
    B.   The Court of Appeals Abused It's Discretion By Not
        Addressing the Merits of Appellant's Timely Filed
        Complaints About Appeal Counsel                                1-4
    C.   Appeal Counsel Had an Actual Conflict of Interest in
        Representing Appellant, and Montgomery County Before,
        During and After This Montgomery County Appeal                 5-6
    D.   The Court of Appeals "Overruled" Decisions on the
        Pro-Se Motion for Rehearing and En Banc Consideration,
        Were an Abuse of Discretion, Requiring a Merits Review
        of Appellant's Pro-Se Identified Constitutional Issues         6-9

2.   TRIAL COUNSEL VIOLATED THE RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL BY EMPLOYING A STRATEGY OF POISENING THE JURY WITH APPELLANT"S
PRIOR CONVICTIONS DESPITE HIS NOT TESTIFYING DURING THE GUILT PHASE,
REQUIRING REVERSAL OF THE CONVICTIONS AND REMAND FOR A NEW TRIAL       9

3.   TRIAL COUNSEL VIOLATED THE RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL BY OUTRAGEOUSLY FAILING TO EMPLOY STATE'S EVIDENCE OF "FRONT-
VIEW" LASER TEST BULLET TRAJECTORY PHOTO RESULTS TO PROVE THAT DEPUTY
AZWELL FALSELY TESTIFIED APPELLANT WAS DRIVING "DIRECTLY" AT HIM
WHEN HE SHOT AT APPELLANT AND TO PROVE CSI WRIGHT SUPPRESSED THE
"FRONT-VIEW" LASER TEST PHOTO'S EXISTENCE AND EXCULPATORY NATURE
CONTRARY TO DUE PROCESS, REQUIRING APPELLATE RELIEF AT THIS TIME    9-11

4.   THE STATE VIOLATED DUE PROCESS BY PRESENTING FALSE TESTIMONY
THAT APPELLANT DROVE "DIRECTLY" AT DEPUTY AZWELL, SUPPRESSING THE
"FRONT-VIEW" LASER TEST PHOTO RESULTS IN TRIAL, AND BY FAILING TO
CORRECT THE FALSE TESTIMONY AND MISLEADING EVIDENCE WHEN IT APPEARED    11

5.   THE COURT OF APPEALS ABUSED IT'S DISCRETION CONTRARY TO DUE
PROCESS, INTERESTS OF JUSTICE AND CASELAW BY NOT ORDERING THE STATE
TO RESPOND TO APPELLANT'S PRO-SE MOTIONS FOR REHEARING AND/OR EN
BANC CONSIDERATION UNDER TEXAS RULES OF APPELLATE PROCEDURE 47.1,49.2
                                                                     11-13

(i)  Prayer, Certificate of Service                                           14

## (c) Index to Authorities, Documents and Appendix Exhibits

| | | |
|---|---|---|
| USCA 6 | Right to Assistance of Counsel | 4,9-11 |
| USCA 14 | Right to Due Process | 1,4,6,8,9,11,12 |

Texas Rules of Appellate Procedure,

| | | |
|---|---|---|
| 44.2(a) | Reversible Constitutional Error | v |
| 44.4 | Remedial Error of Trial Court | 13 |
| 47.1 | Written Opinions Requirements | xi,3,7-9,11 |
| 49 | Motion for Rehearing | v |
| 49.2 | Responses, Motion for Rehearing | 11,12 |
| 49.3 | Decisions, Motion for Rehearing | 11 |
| 66.3(c) | Conflicting Decision Reason for Granting Review | v |
| 66.3(f) | Supervisory Authority Reason for Granting Review | v,9,11 |
| 68.2 | Time to File Petition | 11 |

| | |
|---|---|
| Ex parte Adams,768 S.W.2d 281(Tex.Crim.App.1989) | 12 |
| Anders v. California,386 U.S.738(1967) | 2,3 |
| Bledsoe v. State,178 S.W.3d 824(Tex.Crim.App.2005) | 3 |
| Brown v. State,183 S.W.3d 728(Tex.App.-Hous[1 Dist]11-23-05 reh'g denied 1-4-06) | 10 |
| Brown v. State,11-03-00253-CR, 2001 Tex.App.LEXIS 8479(Tex.App.-Eastland 10-28-04 pet refd) | 10 |
| Brown v. Miller,519 F3d 231(5th Cir.2008) | 8,10 |
| Carroll v. State,101 S.W.3d 454(Tex.Crim.App.2003) | 11 |
| CHC Honey Creek LLC v. Bexar Appraisal District,04-11-00354-CV, 2012 Tex.App.LEXIS 5458(Tex.App.-San Antonio 6-11-12 no pet) | 12 |
| Dobbs v. State,07-12-0376-CR,07-12-0377-CR,2013 Tex.App.3050(Tex.App.-Amarillo 3-20-13),rehg ovrld, 2013 Tex.App.LEXIS 5786(5/9/13) | 10 |
| Draughton v. Dretke,427 F3d 286(5th Cir.2003) | 10 |
| Evitts v. Lucy,469 U.S.387(1985) | 1,4 |
| State v. Fury,186 S.W.3d 67(Tex.App.-Hous[1 Dist]2005) | 12 |
| Garcia v. State,57 S.W.3d 436(Tex.Crim.App.2001) | 1,3 |
| Garrett v. State,749 S.W.2d 784(Tex.Crim.App.1988) | 11 |
| Jiminez v. Quarterman,129 S.Ct.681(2009) | 2,3 |
| Johnson v. State,172 S.W.3d 6(Tex.App.-Austin 2005) | 4 |
| LaPointe v. State,225 S.W.3d 513(Tex.Crim.App.2007) | 13 |
| Lewis v. State,402 S.W.3d 852(Tex.App.-Amarillo 2012), pet granted, In re Lewis,2013 Tex.Crim.App.1526(10-23-13) | 12 |
| Light v. State,15 S.W.3d 104(Tex.Crim.App.2000) | 8,11 |
| Lyons v. McCotter,770 F2d 529(5th Cir.1985) | 4 |
| Martinez v. State,163 S.W.3d 88(Tex.App.-Amarillo 2004), appeal after remand,163 S.W.3d 92(Tex.App.-Amarillo 2005 no pet.) | 1,3,4 |
| Michaelwicz v. State,186 S.W.3d 601(Tex.App.-Austin 2006 rehg ovrld, pet refd) | 13 |
| U.S. v. Miller,576 F3d 528(5th Cir.2009) | 10 |
| McKee v. State,2012 Tex.App.LEXIS 2421(Tex.App.-Dallas 3-28-12), pet refd, In re KcKee,2013 Tex.Crim.App.LEXIS 166(1-30-13) | 13 |
| Perillo v. Johnson,205 F3d 775(5th Cir.2000) | 5 |
| Perkins v. State,902 S.W.2d 88(Tex.App.-El Paso 1995), supplemental opinion,905 S.W.2d 452(Tex.App.-El Paso 1995 pet refd) | 8,12 |
| Reeves v. State,03-03-00490-CR,2004 Tex.App.LEXIS 6815(Tex.App.-San Antonio 2004 pet refd) | 12 |
| Robertson v. State,187 S.W.3d 475(Tex.Crim.App.2006), on remand, Robertson v. State,214 S.W.3d 665(Tex.App.-Waco 2007 no pet) | 4 |
| Robinson v. State,16 S.W.3d 808(Tex.Crim.App.2000) | 3,11 |
| Rochelle v. State,791 S.W.2d 121(Tex.Crim.App.1990) | 3,7,8,12 |
| Rodriguez v. State,129 S.W.3d 551(Tex.App.-Hous[1 Dist]2004 pet refd) | 1,4 |
| Rudd v. State,616 S.W.2d 623(Tex.Crim.App.1981) | 1,3,4 |

In re Schulman,252 S.W.3d 403(Tex.Crim.App.2008) 3
Sims v. State,99 S.W.3d 600(Tex.Crim.App.2003) 8,9,12
Sotelo v. State,913 S.W.2d 507(Tex.Crim.App.1995) 7,8,11,12
Strickland v. Washington,466 U.S. 668(1984) 4,10
Stome v. State,17 S.W.3d 348(Tex.App.-Corpus Christi 2000) 4
Spence v. State,758 S.W.2d 597(Tex.Crim.App.1988) 13
Tassin v. Cain,517 F3d 770(5th Cir.2008) 12
Vasquez v. State,67 S.W.3d 229(Tex.Crim.App.2002) 12
Wheat v. U.S.,486 U.S.153(1988) 5
Whiddon v. State, 10-06-00085-CR,2007 Tex.App.LEXIS 916(Tex.App.-Waco 2007) 10

Hanby's Annotated, Texas Rules of Appellate Procedure(West's 2011 ed.) 3,11

12/10/13 filed Appellant's Brief vii,1
02/10/14 filed State's Brief 1,2
03/17/14 filed Pro-Motion Objecting to Counsel's Brief, Appx.49-52, viii,xii,2,3
05/21/14 Memorandum Opinion, Appx.33-41, 2,4,9
06/13/14 filed Original Pro-Se Motion for Rehearing, 2,6,7
06/26/14 COA Denial of Pro-Se Motion to Exceed Page Limits, Appx.46, 6
07/21/14 filed Amended Motion for Rehearing, 2,3,6,7
07/24/14 COA "Overruled" Without Written Opinion Decision, Appx.45, xii,7
Affidavit of Trial Counsel, Appx.29-30, viii,xii,2
08/07/14 filed Pro-Se Motion for En Banc Consideration, 2,7
08/14/14 filed Pro-Se Motion to Abate Appeal and Remand to Trial Court, 2
09/04/14 COA "Overruled" Without Written Opinion Decision, Appx.42, 7
"Front-View" and "Side-View" Laser test Photo Results Evidence, Appx.31-32, xii,9
Deputy Azwell and CSI Wright excerpted trial testimony, Appx.1-5, xii,9-10
State and Defense Closing Jury Arguments excerpts, Appx.7-9, xii,9-10
Supplemental Brief: the Pro-Se Identified Reversible Errors, xii,10,11

Deputy Chris Azwell testimony, Appx.1-3
Bullet Trajectory Expert Mark Wright testimony, Appx.3-5
Casey Meadows testimony, Appx.5-6
State's Closing Jury Arguments, Appx.7
Defense's Closing Jury Arguments, Appx.7-9
9/20/12 Motion to Withdraw Hearing (missing from appellate record) Appx.10-19
9/27/12 Motion to Substitute hearing (same, also missing) Appx.20-28
Trial Counsel Mr. Boyd's affidavit Appx.29-30

Court of Appeals 7/21/14 Memorandum Opinion,1-9 Appx.33-41
Court of Appeals Order Denying En Banc Consideration, Appx.42
Court of Appeals Notices of filing and not filing motions, Appx.43,44
Court of Appeals Order Overruling Amended Motion for Rehearing Appx.45
Court of Appeals Order Denying Motion to Exceed Page Limits, Appx.46,47
Court of Appeals Order Refusing to Construe Pro-Se Briefs, Appx.48
Pro-Se Timely Filed Motion Complaining About Appeal Counsel, Appx.49-52
State's Exs.176,179 of Bullet holes in side and front of car, Appx.53,54
State's Exs.59,60,78,79,106-07 close-ups of syringes evidence, Appx.55-57

"Front-View" Laser Test Photo suppressed State's evidence, Appx.31
"Side-View" Laser Test Photo admitted State's exhibit Appx.32

## (d) Statement Regarding oral Argument

Appellant waives oral argument at this time

## (e) Statement of the Case

On July 12,2012, Appellant Peter James Martin ("Appellant") was charged in a four count indictment with: (CT.I) "threaten" Deputy C. Azwell by using a "vehicle" as a "deadly weapon" under the 1st degree felony Penal Code §22.02 (a)(2),(b)(2)(B) offense of Aggravated Threat of a Public Servant While Lawfully Discharging an Official Duty ; (CT.II) "flee" from Deputy C. Azwell by using a "vehicle" as a "deadly weapon" under the 3rd degree felony Penal Code §38.04 (b)(2)(A) offense of Aggravated Evading Arrest By Using a Vehicle While in Flight ; (CT.III) "alter, destroy, or conceal" "Syringes" with "intent to impair it's availability as evidence ... related to" a "Possession of Controlled Substance ... offense" under the 3rd degree felony Penal Code §37.09(d) offense of Tampering With Evidence, and ; (CT.IV) possession of a controlled substance under one gram, a state jail felony under Health and Safety Code §481.115 for possession of a controlled substance in penalty group 1.

The indictment contained five (5) enhancement paragraphs of prior conviction allegations. Clerks Record ("C.R."),39-40. Appellant pleaded "not guilty" to all charges, Reporter's Record ("R.R."),v.4,p.1, but a jury found him guilty as charged in the indictment on all counts, made an affirmative finding of the use or exhibition of a deadly weapon in the count II evading arrest charge, R.R.,v.9,pp.128-29 lines 12-15, 1-10, found the first three enhancement paragraph allegations "true" and assessed punishments for counts I,II and III at "life" and for count IV at twenty years imprisonment. R.R.,v.11,pp.211-12.

It is undisputed that Deputy Christopher Azwell attempted to conduct a traffic stop on Appellant's vehicle travelling on the freeway, was unable to stop Appellant who exited the freeway into rural, local neighborhoods pursued by the Deputy and other officers, and this police pursuit ended on a dead end street when Deputy Azwell shot through Appellant's car windows while he continued to evade arrest, hit Appellant in the chest, and Appellant promptly surrendered thereafter. The State recognizes that Appellant's main defense in trial was that Deputy Azwell fabricated his testimony that the Appellant tried to run him down to justify his act of shooting the Appellant. The instant petition for discretionary review proceeding is Appellant's continued effort to demonstrate that the court officials in his trial and appeal, in concert, falsely testified and suppressed material evidence in order to cover-up Deputy Azwell's unnecessary shooting of the Appellant to arrest him, and that the State knowingly failed to correct this perjurious testimony in trial (and in this appeal) when it appeared, all violations of Due Process of the Law. The Appellant respectfully requests this Honorable Court hold him to a lesser standard than that applied to lawyers, because of the egregious conduct of the court officials in his case below forcing him to resort to pro-se pleadings to defend his fundamental, structural, constitutional rights to a fair trial. Appellant is actually innocent of the Aggravated Threat of a Public Servant charge, and because he has legally shown Deputy Azwell's testimony in trial as the main witness against him was false and perjurious, he should be acquitted of that charge and entitled to a new trial on all the other changes. Tex.R.App.P 44.2(a),49,66.3(c),(f).

v

## (f) Statement of the Procedural History

### Trial Court

¶1    On May 4, 2012 retained defense counsel Mr. Ward of the firm DeGuerin and Dickson appeared for Appellant, filed a <u>Brady</u> motion, and on May 23, 2012 trial judge Lisa Michalk ordered "all exculpatory evidence pursuant to <u>Brady v. Maryland</u> and related cases" be produced by the State. C.R., 20-23.

¶2    On August 3rd and 30th, 2012 consecutive agreed settings for a plea acceptance hearing were scheduled. C.R., 47-54. On September 20, 2012 Mr. Ward filed a Motion to Withdraw (MTW) claiming he was only hired for "plea negotiations", the case was "now set for trial" and he was "not retained to represent Defendant during the trial stage, pursuant to their agreement". C.R., 55. A hearing was held that date with Appellant represented by attorney Mr. Boyd against Mr. Ward, during which hearing it came to light that Appellant's elderly disabled mother had paid $55,000.00 to attorney Dick DeGuerin by cashier's check in the record, see R.R., v.12; Defense Exhibits, via Mr. Ward for representation in the instant case, and now after plea negotiations failed Mr. Ward was insisting upon another $35,000.00 to continue representing Appellant in trial, which however Appellant's family did not have. At that time Judge Michalk advised the Appellant on the record, **"Here's the deal. You have to pay your attorney. Otherwise, your attorney is not going to want to do a good job for you."** See Appendix (Appx.), 14-18 (<u>Sept. 20, 2012 Hearing</u>, R.R., 5-9 (by Heather Diess, CSR #8461)); C.R., 52-53 (mother's letter to judge about Mr. Ward duping her out of her life's savings, only to ask for more money she did not have). Judge Michalk DENIED Mr. Ward's MTW and reset the case for trial. C.R., 57, 58. On September 27, 2012 both attorneys Mr. Ward and Mr. Boyd filed a joint motion to substitute Mr. Boyd for Mr. Ward in trial. C.R., 59-61. A hearing was held that date where all parties agreed to allow Mr. Boyd to substitute for Mr. Ward in trial. Appx. 23 (<u>Sept. 27, 2012 Hearing</u>, R.R., 4 (by Cathy Busa, CSR #5060)) Judge Michalk GRANTED the motion to substitute, C.R., 62, and Mr. Ward filed his last motion, a Motion for Inspection of His Motor Vehicle. C.R. 64-66.

¶3    On January 23, 2013 substitute trial counsel Mr. Boyd filed a motion titled "Defendant's Motion for Jury Views" requesting the jury be allowed to view the Appellant's impounded vehicle to see the bullet holes in his car, and to view the scene of the shootout where Appellant was arrested by Deputy Azwell shooting Appellant while unarmed. C.R., 64-66.

¶4    Also on January 23, 2012 the State filed: (1) a CD video and 11 pages of police dispatch records summarizing it's contents and showing mere seconds elapsed between Deputy Azwell exiting his patrol car and shooting the fleeing Appellant, C.R., 167-80, and, (2) a motion in limine seeking to prevent or limit Appellant from arguing in trial, amongst other things, that he was "actually or factually innocent" at point 5, "prior cases investigated by Deputy Azwell" at point 9, that the "State had tampered with, destroyed or hid evidence from defense counsel ... or the Court" at point 10, and/or "any investigation of Deputy Chris Azwell, whether concluded or ongoing" at point 11, C.R., 181-85, which were all GRANTED. R.R., v.3, pp.7-13.

¶5 On January 28,2013 trial commenced before the Honorable Mary Anne Turner, replacing without an explanation the Honorable Lisa Michalk as trial judge, although Judge Turner stated specifically she "wanted to make sure" Appellant's "choice of attorney" rights were respected by "proceeding forward" with trial counsel "Mr. Boyd [a]s the attorney ... at this point." R.R.,v.4, pp.137-38. On January 30,2012 the jury convicted the Appellant and the next day sentenced him to three "life" imprisonments for counts I-III and twenty years imprisonment for count IV, all the maximum sentences allowable under law.

¶6 On January 29 & 30,2012 trial counsel Mr. Boyd presented a Bill of Exception, presenting the testimonies of Deputy Azwell, Detective Paul Hahs, and a "Sealed Appellate Record" DVD interview by Detective Hahs of Deputy Azwell see R.R.,v.7,pp.1-3, where Mr. Boyd sought to introduce evidence attacking Deputy Azwell's credibility, arguing the count I aggravated threat of a public servant charge was a "cover-up" by false allegations of Azwell's "unneccessary shooting" of the Appellant to arrest him. id.,pp.4-7,19-21. The DVD evidence showed Deputy Azwell and his lawyer being interviewed by Detective Hahs about Appellant's arrest and shooting, which the trial court refused to allow before the jury as hearsay and irrelevant, id.,pp.8-9,20-21, of Deputy Azwell invoking his attorney-client priveledge in the trial court which the trial court refused to allow before the jury, id.,pp.41-43, AND of Azwell's attorney asking him on the DVD video "isn't there one more thing that you forgot or wish to tell" about Appellant's arrest and shooting, which the trial court also refused to be admitted before the jury. id.,p.40.

¶7 On March 4,2013 trial counsel Boyd filed motions for new trial, C.R., 220,226, arguing (1) original trial counsel Mr. Ward renderred ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, by Ward's accepting of $55,000.00 from Appellant's elderly disabled mother on behalf of attorney Dick DeGuerin purportedly only to represent Appellant in plea negotiations but without telling Appellant Martin of this limitation to Ward's representation causing Appellant to unknowingly or involuntarily reject plea offers of 40 years and 35 years, aggravated by Judge Michalk's interference with the plea bargaining process by telling Appellant on September 20,2012 that Mr. Ward then still representing the Appellant will "not want to do a good job for you" in trial if Appellant did not pay Ward more money, as a whole implicating Appellant's rights to choice of counsel, conflict free counsel, effective assistance of counsel, due process and an impartial trial court judge, C.R.,226-27; infra.,¶2;; R.R.,v.13,pp.30-38,51-53, (2) the trial court improperly refused to permit the defense to introduce a DVD video record and testimony of Deputy Azwell being interviewed by police while represented by counsel he retained to defend himself against his shooting of Appellant on relevancy and hearsay grounds, C.R.,227; R.R.,v.9(DVD video); see infra. ¶6(Bill of Exceptions details) and (3) the trial court improperly denied trial counsel Mr. Boyd's requests for assistance in conducting the motion for new trial, as he was "traumatized" by the substance and result of Appellant's trial thus "need[ed] the help", by the trial court's provisions of appointed appeal counsel and the trial transcripts. C.R.,228-29; R.R.,v.13,14,pp.5-20,8. Judge Turner DENIED the requests on March 22,2013. C.R.,231.

Appeals Court

¶8   Timely notices of appeal were filed on March 26,2013 and April 1,2013, respectively pro-se and by newly court appointed appeal counsel Mr. Christopher Allen. C.R.,234,235; R.R.,v.13,pp.5-9,13,18-20. Only Mr Allen actually did the appeal work, formulating and promulgating a single issue presented for review completely unrelated to Appellant's trial defenses. See 11/01/2013 Order (directed to only Mr. Allen); R.R.,v.14,pp.21,71(judges states twice during motion for new trial only Mr. Allen is appointed as appeal counsel effective following decision on the motion for new trial); but see,   12/10/2013 filed Appellant's Brief (Mr. Allen's single issue brief, nominally co-authored by a Mr. Jeremy Finch attorney).

¶9   On December 10,2013 appeal counsel filed an "Appellant's Brief" arguing in one issue that the trial court erred by failing to grant trial counsel Boyd's request for a mistrial, when the State referred to Appellant's prior convictions unrelated to the current matter while cross examining a defense witness. ibid.,6. On February 10,2014 the State responded arguing the trial court did not err because trial counsel Mr. Boyd did not object to the State's previous introduction of a CD video showing Appellant being interviewed by police admitting at the time of the crime he was on drugs and thirty years of parole, and additionally, trial counsel Mr. Boyd had already informed the entire jury pool during voir dire that Appellant had a "rap sheet" of "prior convictions" which even Mr. Boyd probably would not be able to  overcome.   See   02/10/2014 filed State's Brief,5-7(record quotations omitted).

¶10  Trial counsel Mr. Boyd executed an affidavit swearing he called and went to see many times appointed appeal counsel Mr. Allen to help with this appeal, but Mr. Allen disregarded and put him off, as Mr, Allen "did not even have the good sense or courtesy or even the interest of his client to consult" with Mr. Boyd on "the number of errors [Boyd] raised in trial", complaining that Mr. Allen had "no excuse for not raising some if not all of the errors in trial" in Mr Allen's single issue appellant's brief. See Appx. 29-30 ("Affidavit by Walter Boyd",1-2).

¶11  On March 17,2014 Appellant filed a pro-se motion complaining about appeal counsel's "only argument" in the brief disregarding his many trial arguments (see infra.,¶¶8-10) presenting a defaulted or waived mistrial argument that could and should have been presented on the same facts and related record references as an ineffective assistance of trial counsel claim, denying Appellant copies of the appellate record to actively assist in appeal counsel's preparation of his appeal, resultingly hindering in Appellant's participation in his own appeal and denying him a meaningful appeal contrary to due process, and by appeal counsel's efforts only addressing an obviously  "non-meritorious argument that the State elicited Appellant's prior convictions ... without even discussing  ...  defense counsel employed this tactic by inviting such an error ... makes appeal counsel's efforts seem like a boilerplate work of hacks ... like the equivalent of an Anders brief [see, Jiminez v. Quarterman,129 S.Ct.681(2009) for discussion of Anders briefs] without the right to file a pro-se brief constitutionally protected, which may be the point" of Mr. Allens filing this brief in this manner, resulting in Appellant's having "no confidence in his appeal attorneys". See Appx.44-52(03/17/2014 filed Pro-Se Motion,1-4, w/att'd clerk stamped record of Appellant's written requests to appeal counsel);

and see, related pro-se motions filed April 23,2014, April 30,2014 and May 8,2014. "Appeal counsel Mr. Allen refused to present and argue ... anything for Martin at his request." 07/21/2014 filed Amended Motion for Rehearing,4,13. On March 20,2014 the Court of Appeals ruled that since appointed appeal counsel had "already filed a brief on the merits", that the Court "would not consider any pro-se submissions while a party was represented by counsel" (i.e., refusing to allow "hybrid representation"), a ruling presumably applicable to all Appellant's further pro-se motions filed while the case was under submission. Appx. 48. . Appellant could NOT have complained about the substance of the Appellant's Brief earlier than when it was actually filed and then forwarded to him, which is when it became clear to Appellant appeal counsel's single issue raised was not "on the merits" of his jury trial defenses and errors.

¶12 On May 21,2014 the Court of Appeals affirmed the trial court's judgements of convictions and sentences, rejecting appeal counsel's single issue of an erroneous mistrial ruling in the trial court, by adopting one of the two State's rebuttal positions, specifically that trial counsel Mr. Boyd failed to object to previously admitted CD video evidence showing Appellant admitting to police at the time of the crime he was on drugs and on thirty years parole making the State's later raising of the issue "cumulative" and thus "not prejudicial". Appx.36-7—Memorandum Opinion (Mem.Op.),4-5. The Court of Appeals did not discuss the State's second rebuttal argument that trial counsel Mr. Boyd had poisened the entire jury pool by admitting during voir dire that Appellant's "rap sheet" of "prior convictions" suggested " a less than perfect past" which the State argued was done "in the effort of intentionally creating error in the proceedings." State's Brief,6-7,9 & n.3.

¶13 The Court of Appeals made the following factual conclusions upon which this Appellant relies herein: (1) the record as a whole shows Appellant's "prospects of being acquitted on any of the charges for which he was tried were highly unlikely" and "nothing in the record shows that Martin might have received a different punishment." Appx.38 - Mem.Op.,6; (2) only Deputy Azwells testimony, that Martin "having driven directly at him as the chase was ending" showed Martin "tried to run him over with his car" hence "threaten[ing]" Deputy Azwell under Penal Code §22.02(a)(2),(b)(2) hence justifying his "fir[ing] several shots at Martin's car as [Martin] drove directly toward him", supported the count I Aggravated Threat of a Public Servant conviction, id.,6-7, implicitly rejecting the State's position claiming that the CD video of the pursuit and/or Chief Hadrych's testimony "strongly corroborates" Deputy Azwell's testimony that "Appellant tried to run Azwell over to avoid capture as Azwell stood between his own patrol car and a civilian vehicle," State's Brief,8-9; (3) the police pursuit only showed Martin committing several traffic violations while evading arrest, as admitted by trial counsel Mr. Boyd to the jury, but made no conclusions regarding whether the evidence sufficiently showed Appellant actually endangered anyone sufficient to support the deadly weapon enhancement of the evading arrest conviction, Appx.38 — Mem.Op.,6, while rejecting appeal counsel Mr Allen's deficient unsupported suggestion that Martin's car "crossed into oncoming traffic", Appellant's Brief,11, and while also rejecting the State's claims that "other roadway traffic pulled to the shoulder to allow appellant and his pursuers to pass" as constituting evidence of dangerous driving by Appellant sufficient to support the deadly weapon enhancement of the evading arrest conviction. State's Brief,1.

¶14 On June 13,2014 Appellant timely filed a pro-se 57 page Motion for Rehearing and Motion to Exceed the Page Limits, but on June 26,2014 the Court of Appeals DENIED the motion to exceed the page limits and sua sponte extended the deadline to file motion for rehearing until July 21,2014. In this original motion for rehearing Appellant attempted to raise the following issues:

(1) **the counts I & II** Aggravated Threat of a Public Servant and Aggravated Evading Arrest convictions and sentences violated the Double Jeopardy prohibitions against multiple punishments for the same, continuous driving conduct at issue in this case, requiring the count II Aggravated Evading Arrest conviction and sentence to be vacated;

(2) **the count III** Tampering With Evidence conviction was based on legally insufficient evidence of any roadside found syringes being affirmatively linked to the Appellant and/or of being "related" to the indictment's alleged "offense" of "Possession of a Controlled Substance", requiring the conviction to be reversed and a judgement of acquittal renderred;

(3) **the count I** Aggravated Threat of a Public Servant conviction was based on legally insufficient evidence of Appellant's use of a vehicle to "threaten" Deputy Azwell, either based on the Deputy's false perjorious version of the facts in trial, or based on the true version of the facts proven by Appellant's "front-view" laser test photos submitted with this appeal, requiring the conviction to be reversed and a judgement of acquittal renderred;

(4) **the count II** Evading Arrest arrest deadly weapon enhancement paragraph affirmative finding of the use of a deadly weapon motor vehicle finding is based on legally insufficient evidence of Appellant's driving actually endangering anyone, requiring deletion of the affirmative finding of a deadly weapon from the Evading Arrest conviction's judgement;

(5) **the count I** Aggravated Threat of a Public Servant conviction is based on legally insufficient evidence of Deputy Azwell "lawfully discharging" his duty to arrest Appellant because, Deputy Azwell testified he jumped in front of Martin's car from where he shot him then jumped out of the way again obviously to provide a subterfuge for justification of his shooting Appellant while unarmed, and THEN falsely testified to his being directly in front of Martin's car driving straight at him when previously undisclosed State's evidence shows Deputy Azwell was NEVER in front of Martin's car and in fact shot at Martin's car at all times from the side of the car when he resulting shot Martin in the chest, requiring reversl of conviction and rendition of an acquittal; and,

(6) five specific issues of ineffective assistance of defense counsel in violation of USCA 6 & 14, in trial and on direct appeal.

See 06/23/2013 filed Original Motion for Rehearing, Table of Contents.

¶15 On July 21,2014 Appellant timely filed his necessarily truncated 15 page Amended Motion for Rehearing, by jettisoning his Double Jeopardy arguments and severely condensing the remaining arguments. ibid. On July 24,2014, the Court of Appeals "overruled" without written opinion Appellant's Amended Motion for Rehearing. Appx.45. Presumably, the Court of Appeals did not consider the merits of any issue Appellant raised in the amended motion. Rochelle v. State,791 S.W.2d 121,124(Tex.Crim.App.1990)[cited in Hanby's, Texas Rules of Appellate Procedure, Annotated,204(West 2011 ed.)].

¶16(1)     On August 7,2014 Appellant timely filed a pro-se Motion for En Banc Consideration of the panel decision to "overrule" the Amended Motion for Rehearing, which itself was "overruled" on September 4,2014.Appx. 42 . This motion reasserted the motion for rehearing's grounds for relief, but focussed upon the suppressed "front-view" laser test photo showing Deputy Azwell shot at Appellant from the side of his car and not from the front of the car as Deputy Azwell falsely testified to in trial and bullet trajectory expert CSI Wright suppressed during his testimony and the State knowingly failed to correct when it appeared in trial in violation of Due Process.

(2)     On August 14,2014 Appellant served a pro-se Motion to Abate Appeal and Remand to the Trial Court for Fact Findings regarding his submitted "front-view" laser test photo evidence undisclosed or suppressed in his trial, for authentication, and a determination of it's implications for exonerative purposes in the count I aggravated threat of a public servant by use of a deadly weapon motor vehicle conviction and impeachment purposes for the counts I-III charges and convictions. However, the Beaumont Court of Appeals Clerk's office merely "received" this motion but did not file it so no decision was ever made by the Court on it. This motion argued Deputy Azwell's perjorious motive for falsely testifying was to "cover-up" his use of excessive force in shooting Appellant in the chest through the side passenger window of Appellant's car in order to arrest him while fleeing, and how this front-view laser test photo indisputably shows the only shot the State argued came from the front of this Appellant's car which went into the front hood clearly came from 80°-85° to the side of Appellant's car, proving Deputy Azwell falsely testified he was in front of Appellant's car when he commenced shooting at Appellant, and CSI Wright suppressed the fact the laser test photos showed Deputy Azwell shot into the front hood clearly from the side of Appellant's car.   Relevant factual findings were requested under Texas Rule of Appellate Procedure 44.4, LaPointe v. State,225 S.W.3d 513,521-23 & n.9(Tex.Crim.App.2007)(holding Rule 44.4 "is designed to create a new record ... The key to Rule 44.4 is that there must be an error that the appellate court can correct."), Spence v. State,758 S.W.2d 597,599-600(Tex.Crim.App.1988)(holding it is error to exclude the testimony of the lead prosecutor, which would "obviously be particularly informative on the deliberateness of the State's actions" when it is relevant to "the very heart of the Due Process claim", abating and remanding for offer of proof or to perfect a previously thwarted Bill of Exception) and Michaelwicz v. State,186 S.W.3d 601,613-14(Tex.App.-Austin 2006 reh'g ovr'ld,pet.ref'd,citations omitted) The Court of Appeals made no decision regarding this motion to date.

(3)     A duplicate Motion to Abate Appeal and Remand to the Trial Court for Fact Findings was filed in this Court under Case No.PD-1050-14 and summarily "DENIED" without written opinion, presumably not on it's merits since the Beaumont Court of Appeals did not rule upon it in the first instance.

¶17    This Court GRANTED previous motions for time extensions to file the instant petition for discretionary review until October 24,2014, and again until December 2,2014. On November 4,2014 the State's agent prison officials confiscated from out of the incoming mail Appellant's completed copies of his petition, exhibits and related documents to be filed in the instant case, by claiming it was "written contraband", without citing any suspected criminal or TDCJ rule offense as the basis for this confiscation event.   Appellant then informed this Court of these facts and this Court GRANTED another time extension making the new deadline January 2,2015. As of December 15,2014 these PDR documents were not returned yet, so Appellant filed another motion with the Court and requested a summary ORDER to the State to return the confiscated PDR documents to the intended recipient to protect this Court's jurisdiction to decide the merits of this case.

## (g) Grounds for Review

1. APPEAL COUNSEL VIOLATED DUE PROCESS BY NOT ARGUING ANY MAJOR DEFENSE ISSUE ARGUED TO THE JURY IN FAVOR OF PRESENTING A SINGLE, DEFICIENT, MERITLESS MINOR, MISTRIAL RULING ARGUMENT, OVER APPELLANT'S RECORD FILED OBJECTIONS: post.,1-4 - see, 12/10/13 Appellant's Brief; 02-10-14 State's Brief; Appx. 29-30(trial counsel's affidavit),49-52(appellant's record filed objections) and see, 7/21/14 Am.Mot.for Reh'g,4,13; Appx.45(COA "Overruled" decision); "Supplemental Brief: the Pro-Se Identified Reversible Errors",1-4("Supp.Brief")

2. APPEAL COUNSEL VIOLATED DUE PROCESS BY HAVING A CONFLICT OF INTERESTS RESULTING IN HIS DISREGARD OF PERSUASIVE ALTERNATIVE DEFENSE APPEAL ISSUES; post.,5-6 - see 7/21/14 Am.Mot.for Reh'g,4,14-15; Appx.45(COA "Overruled" decision); Supp.Brief,4-5

3. THE COURT OF APPEALS "OVERRULED" W/O WRITTEN OPINION DECISIONS ON THE PRO-SE MOTIONS FOR REHEARING AND EN BANC CONSIDERATION BELOW, WERE AN ABUSE OF DISCRETION GIVEN THE VIABILITY OF APPELLANT'A PRO-SE IDENTIFIED ARGUMENTS AND AUTHORITIES, REQUIRING A VACATE AND REMAND TO THE COURT OF APPEALS UNDER USCA 14, AND TEX.R.APP.P.47.1,49 & 66.3(f); post.,6-9 - see, 7/21/14 Am.Mot.for Reh'g; 8/7/14 Mot.for En Banc Consideration; Motion to Abate and Remand...; Appx.42,45(COA "Overruled" decisions); Supp.Brief, 1-34(demonstrating viability of pro-se identified reversible errors)

4. TRIAL COUNSEL VIOLATED USCA 6 BY EMPLOYING A STRATEGY OF POISENING THE JURY WITH KNOWLEDGE OF APPELLANT'S PRIOR CONVICTIONS DURING THE GUILT PHASE DESPITE APPELLANT'S NEVER TESTIFYING IN THE GUILT PHASE, REQUIRING REVERSAL AND REMAND OF ALL FOUR CONVICTIONS ; post.,4,9; Am.Mot.for Rehg,13 (citing R.R.,2,pp.14-18]; Supp.Brief,3 ¶7

5. THE COURT OF APPEALS ABUSED ITS DISCRETION CONTRARY TO DUE PROCESS, INTER-ESTS OF JUSTICE AND TEX.R.APP.P.44.2,49.2 BY NOT ORDERING THE STATE TO RESPOND TO THE PRO-SE IDENTIFIED VIABLE CONSTITUTIONAL AND PROCEDURAL ARGUMENTS: post.,11-13; 6/13/14 Orig.Mot.for Reh'g,1-57; 7/21/14 Am.Mot. for Reh'g,1-16; 7/7/14 Mot.for En Banc Cons.; Appx.42,45,46(COA decisions overruling motions for rehearing and en banc consideration and denying exceeding page limits); Supp.Brief,27A

6. TRIAL COUNSEL VIOLATED USCA 6 BY OUTRAGEOUSLY FAILING TO EMPLOY THE STATE'S "FRONT-VIEW" LASER TEST PHOTO EVIDENCE IN TRIAL TO PROVE DEPUTY AZWELL FALSELY TESTIFIED APPELLANT WAS DRIVING "DIRECTLY" AT HIM WHEN SHOOTING APPELLANT AND CSI WRIGHT SUPPRESSED THIS SPECIFIC EVIDENCE DURING TRIAL, BECAUSE IT INDISPUTABLY PROVES THE DEPUTY SHOT AT APPELLANT FROM THE SIDE OF THE CAR PROVING APPELLANT'S COUNT I INNOCENCE: post.,8-10; Appx.1-5 (testimony of Deputy Azwell and CSI Wright),7-9(State's and Defense's closing jury arguments); R.R.,v.5,86-90; R.R.,v.6,14-21,155-171; R.R.,v.9, 82-83,96-112,114-16; Appx.31(suppressed "front-view" laser test photo), 32,(State's filed "side view" laser test photo exhibit); Appx.38-39, Mem. Op.,6-7(COA finds only Deputy Azwell's testimony supports the count I conviction based on appellant driving "directly" at him); Supp.Brief,28-29 ¶7

7. THE STATE PRESENTED FALSE TESTIMONY, SUPPRESSED EVIDENCE AND KNOWINGLY FAILED TO CORRECT SAME WHEN IT APPEARED.; see Ground 6 above's record cites; post.,11; Supp.Brief,20-31

## (h) Arguments

1. **APPELLANT'S RIGHTS TO DUE PROCESS WERE VIOLATED BY APPEAL COUNSEL'S TOTAL DISREGARD IN THE APPELLANT'S BRIEF OF THE DEFENSES ARGUED IN TRIAL TO THE JURY AND THE COURT OF APPEALS OVERLOOKING OF APPELLANT'S TIMELY COMPLAINTS ON THE ISSUE, REQUIRING A VACATE AND REMAND ORDER**

### A. Due Process

Appeal counsel violated Appellant's rights to effective assistance of appeal counsel contrary to Due Process, by not arguing the primary issues trial counsel argued to the jury in this trial, which was an outrageous relinquishment of appeal counsel's duty to an indigent appellant represented by appointed appeal counsel on direct appeal, forcing the instant Appellant to pursue pro-se motions for rehearings and en banc consideration after the Court of Appeals renderred its predictable judgements against him. Evitts v. Lucy,469 U.S.387,396 (1985)(right to effective assistance of counsel, on state direct appeal, is grounded in USCA 14's Due Process Clause); Garcia v. State,57 S.W.3d 436,440(Tex Crim.App.2001)(approving of resolving ineffective assistance of counsel claims, during direct appeal, when no competent attorney would have engaged in such record based deficient performance of counsel); Rudd v. State,616 S.W.2d 623, 624-25(Tex.Crim.App.1981)(approving of reviewing pro-se complaints of appeal counsel's appellant's brief, in "the interests of justice"); Martinez v. State, 163 S.W.3d 88,89-91(Tex.App.-Amarillo 2004)(applying Rudd, to grant procedural relief),appeal after remand, 163 S.W.3d 92(Tex.App.-Amarillo 2005)(granting substantive relief, reversing conviction, remanding for new trial); Rodriguez v. State,129 S.W.3d 551,562-64(Tex.App.-Hous.[1 Dist.]2004,reh'g denied, PDR ref'd) (after appointed appeal counsel argued numerous meritless issues obtaining an affirmance of aggravated robbery conviction and 25 yr. sentence, this writer assisted pro-se this appellant, filing motion for rehearing, arguing appeal counsel was ineffective for not arguing no evidence appellant knew his partner had a concealed weapon on him when he entered or exited the convenience store, rev'g and acquitting for legal insufficiency w/o ruling on ineffective assistance of appeal counsel claim).

### B. The Court of Appeals Abused It's Discretion By Not Addressing the Merits of Appellant's Timely Filed Complaints About Counsel

The Court of Appeals did not respond to the merits of Appellant's timely, pre-submission, March 17,2012 filed complaints about appeal counsel's incompetent, meritless, boilerplate appeal brief that ignored major trial issues. See supra., Procedural History,§(f),¶¶9-11. Compare, 12/10/13 filed Appellant's Brief, with, 02/10/14 filed State's Brief. Appeal counsel argued in one issue the trial court erred by failing to grant a mistrial when the State referred to Appellant's prior convictions unrelated to the current matter while cross examining a defense witness. The State's response was there was no error because trial counsel did not object to the State's having previously introduced police interview CD video evidence of Appellant admitting to police when the offenses were committed he was "on drugs" and "on thirty years parole", and also that trial counsel had already informed the entire jury pool during voir dire that Appellant had a "rap sheet" of "prior convictions" which likely even trial counsel would not be able to overcome. See 02/10/14 filed State's Brief,5-7.

1

On March 17,2014 Appellant timely filed a pro-se motion complaining about appeal counsel's "only argument" omitting major trial defense issues that should have been argued. See Appx.49-52 - 03-17-14 filed Pro-Se Motion,1-4(w/att'd, clerk stamped copy of Appellant's letter to appeal counsel). Appellant complained about appeal counsel's refusal to provide him with copies of the appellate record to actively assist appeal counsel with thus preventing Appellant from receiving a meaningful appeal by being unable to point to error in the trial record, and appeal counsel's "non-meritorious argument that the State elicited Appellant's prior convictions ... without even discussing ... defense counsel employed this tactic by inviting such error ... mak[ing] appeal counsel's effort seem like the boilerplate work of hacks ... like the equivalent of an Anders brief [see, Jiminez v. Quarterman,129 S.Ct.681,683-87(2009) for discussion of direct appeal "Anders-briefs"] without the constitutionally protected right to file a pro-se brief ... which may be the point" of appeal counsel's invidious strategy in the case at bar. id.; see also, related pro-se motion's objections, filed April 23,2012, April 30,2012 and May 8,2012. "Appeal counsel Mr. Allen refused to present and argue ... anything for [Appellant] Martin at his request". See, 07/21/14 filed Amended Motion for Rehearing,4

Trial Counsel Mr. Boyd executed an affidavit declaring he called and went to see appeal counsel Mr. Allen many times but was disregarded; Mr. Allen "did not even have the good sense or courtesy or even the interest of his client to consult" with Mr. Boyd, and Mr. Allen had "no excuse for not raising some if not all of the errors in trial" Mr. Boyd preserved. See Appx.29-30, Affidavit of Walter Boyd,1-2.

On May 21,2014 the Court of Appeals affirmed the trial court's judgements, rejecting appeal counsel's single issue erroneous mistrial ruling claim, by adopting one of two State's rebuttal arguments, that trial counsel failed to object to previously introduced State CD video evidence showing Appellant admitting to police at the time of the offenses he was "on drugs" and "on thirty years parole", making the State's later raising of these issues "cumulative" hence "not prejudicial". See Appx.36-7, Mem.Op.,4-5. The Court did not discuss the State's other argument's merits, that trial counsel essentially poisoned the entire jury pool by admitting during voir dire that Appellant had a "rap sheet" of "prior convictions" suggesting, as the State put it, "a less than perfect past" which is an understatement. 02/10/14 filed State's Brief,6-7,9.

Appellant briefed the issues he sought to have reviewed on appeal, in his 6/13/14 filed 57 page original Motion for Rehearing, July 21,2014 filed 15 page Amended Motion for Rehearing, his 8/7/14 filed Motion for En Banc Consideration, and his 8/14/14 received Motion to Abate Appeal and Remand to the Trial Court, which the court of appeals denied the original motion for rehearing for being overlength on 6/26/14, "overruled" without written opinion the amended motion for rehearing on 7/24/14, "overruled" without written opinion the motion for en banc consideration on 9/4/14, and received but never ruled at all on the motion to abate appeal and remand to the trial court. A duplicate motion to abate appeal and remand to the trial court was filed in the TCCA under Case No.PD-1050-14 and "DENIED" without written opinion, presumably on the basis of the court of appeals never filing and ruling on it's duplicate filed motion.

Arguments

The Court of Appeals abused it's discretion by failing to conduct a hearing for Appellant when he first raised the issues of appeal counsel's deficient performance in Appellant's 3/17/14 filed motion. The Texas Court of Criminal Appeals and the courts of appeals have uniformly held a court of appeals will consider pro-se contentions raised in a brief on appeal, even when represented by an appeal counsel who has already filed a brief, in the interests of justice. Rudd v. State,616 S.W.2d 623-624-25(Tex.Crim.App.1981); Martinez v. State,163 S.W.3d 88(Tex.App.-Amarillo 2004), appeal after remand, Martinez v. State,163 S.W.3d 92(Tex.App.-Amarillo 2005). In Martinez as in the case at bar, the appellant timely complained his appeal counsel had omitted issues that he should have brought up in the appellant's brief, denying him effective assistance of counsel on first appeal, requested the appeal be abated and that a copy "of his transcripts" be sent to him. The Amarillo court of appeals, contrary to the instant case, issued an abate and remand order directing the trial court to conduct a hearing as to whether the appellant would be allowed to proceed with his appeal pro-se, with another appeal lawyer or the same appeal lawyer. id.,163 S.W.3d @ 89-91[applying, Rudd,supra.].

In the case at bar, Appellant also timely filed his identical Martinez complaint in the Beaumont Court of Appeals on 3/17/14, also asking for copies of his trial transcripts, and similarly asking to abate and remand the appeal to a trial court for fact findings. Indeed, this Appellant went one step further and timely filed extensive motions for rehearing and en banc consideration, expressly outlining the substance of the pro-se arguments he would raise in the Court of Appeals pro-se or otherwise if allowed to. These motions clearly raise substantial arguments and supporting authorities implicating Due Process concerns, the interests of justice and whether Appellant received a meaningful appeal with the effective assistance of counsel. Robinson v. State,16 S.W.3d 808,813(Tex.Crim.App.2000)(vacating and remanding to court of appeals for consideration in the first instance of ineffective asistance of counsel claim); accord, Garcia,57 S.W.3d @ 440. Different from Martinez, it appears that the Beaumont Court of Appeals did not recognize any of Appellant's pro-se argument's filed below, by it's "overruled" without written opinion decisions. See, Hanby's Annotated, Texas Rules of Appellate Procedure, 204(West 2011)[citing, Rochelle v. State,791 S.W.2d 121,124(Tex.Crim.App.1990)]. Once the TCCA recognizes the underlying merits to Appellant's pro-se arguments and authorities, the Martinez result should necessarily follow with a vacate and remand order directing the Court of Appeals below to follow Martinez,supra.

Supporting this result is the fact that Appellant raised his right to represent himself pro-se in the Court of Appeals, which went unaddressed. This probably violated Tex.R.App.P.47.1 requiring a vacate and remand order itself. Bledsoe v. State,178 S.W.3d 824,827-28(Tex.Crim.App.2005). In any case this is "structural error", precluding harmless error analysis, and requiring automatic reversal. Jiminez,129 U.S. @ 683-87; Anders,386 U.S.738; In re Schulman,252 S.W.3d 403,408(Tex.Crim.App.2008); Bledsoe,178 S.W.3d @ 826-28; Martinez, 163 S.W.3d @ 89-91. This alone requires a vacate and remand result.

Ultimately supporting reaching this result is the substance of appeal counsel's single issue appeal argument, compared to the State's easily accomplished further research ANY competent appeal counsel could and should have done himself, reveals a clearly unsound appeal argument strategy being employed.

Appeal counsel's facts supporting his meritless mistrial ruling argument, together with the easily accomplished additional research on the issue done by the State, could and should have been combined to argue trial counsel employed a clearly unsound trial strategy of revealing to the entire jury pool during voir dire deliberately before a decision had even been made whether to allow Appellant to testify (he ultimately did not testify in the guilt-innocence phase) and by not objecting to the State's putting on CD video evidence showing the Appellant admitting to police he was on thirty years parole a fact finding already made. Appx.36-37 - Mem.Op.,4-5. Now, this clearly unsound trial strategy is independantly ineffective assistance of counsel, even without considering the totality of other circumstances involved that contributed to trial counsel's deficient performance on the record. Thus, by also now adopting as fact that trial counsel poisened the entire jury pool with knowledge of Appellant's prior convictions, by the time of the jury panel's hearing from appellant he was on parole for thirty years, without objection from trial counsel, trial counsels voir dire announcement to the trial court that he had a "strategy" for doing this, proves itself to be clearly unsound. It was outrageous for trial counsel to invite the jury to know Appellant had prior convictions, then not even use Appellant's testimony in the guilt phase at all, revealing a caselaw certified showing of a meritorious record-based, direct-appeal argued, ineffective assistance of counsel claim. Robertson v. State,187 S.W.3d 475(Tex.Crim.App. 2006)(aff'g deficient performance finding, remanding for prejudice analysis), on remand, Robertson v. State,214 S.W.3d 665,667-68(Tex.App.-Waco 2007 no pet.) (IAC holding finding the jury heard evidence about two prior convictions "that the State would not have been able to develope without Robertson's counsel 'opening the door' to such testimony.") Stone v. State,17 S.W.3d 348,352-53(Tex. App.-Corpus Christi 2000)(IAC holding finding trial record sufficient to show IAC based on trial counsel's offering of prior conviction that would not have come in otherwise, relying on record from vior dire and a bench conference) Johnson v. State,172 S.W.3d 6, (Tex.App.-Austin 2005)(IAC holding where trial counsel's failure to object to admissability of video evidence was factor) In the case at bar, the Appellant suffered the same, if not moreso, deficient performance of counsel. Moreover, the Appellant here suffered more severe prejudice than in these cases, given the jury found him guilty as charged in four felony counts, and then the jury issued the maximum sentences allowed by the trial court of three life sentences, and one twenty year sentence. Therefore, all four convictions and sentences must be reversed and remanded to the trial court for a new trial. Strickland v. Washington,466 U.S.668,694(1984); Robertson, 214 S.W.3d @ 668-69; Stone,17 S.W.3d @ 352-53; Lyons v. McCotter,770 F2d 529,534 (5th Cir.1985)[quoting, Nero,597 F2d @ 994].

In sum, because appeal counsel disregarded all major trial issues in the appellant's brief in favor of a non-meritorious single issue in itself a case of deficient performance on the record, because Appellant timely complained to the Court of Appeals on the record of being denied effective assistance of counsel on appeal, because Appellant indicated he sought to represent himself on appeal, and because the Court of Appeals did not rule on the merits of any complaint or argument Appellant presented to the Court of Appeals, the interests of justice and Due Process concerns require this case to granted PDR, vacating the judgements of the Court of Appeals, and remanding to that Court for an application of Martinez,supra. to this Appellant's appeal, i.e., directing a Court of Appeals' abate and remand to the trial court order for fact findings on whether Appellant should proceed with a new appeal pro-se or with assistance of a new appeal counsel. USCA 14; Evitts,469 U.S. @ 396; Martinez,163 S.W.3d @ 89-91(applying, Rudd,616 S.W.2d @ 624-25); accord, Rodriguez,supra.

4

## C. Appeal Counsel Had an Actual Conflict of Interests in Representing Appellant, and Montgomery County Before, During and After the Appeal

### Facts

Attorney Mr. Christopher Neal Allen was appointed as appeal counsel due to Appellant's indigency. C.R.,235(notice of appeal signed by Mr. Allen); R.R., v.13,pp.5-9,13,18-20(trial judge states to trial counsel she is going to appoint Mr. Allen as appeal counsel); R.R.,v.14,pp.21,71(trial judge appoints Mr. Allen as appeal counsel during motion for new trial); and see, Appx. - 11/01/13 Order (Beaumont court order is directed only to Mr. Allen). According to the 2012 and 2014 Texas State Bar Directories, in 2010 Mr. Allen was an assistant county attroney for Montgomery County, and in 2014 Mr. Allen was an assistant district attorney for Montgomery County. Montgomery County is the political subdivision of Texas that brought the instant felony prosecutions in this case. Mr. Allen filed his appellant's brief on December 10,2013, nominally co-authored by attorney Jeremy Finch, apparently for the purpose of staving off any independant official inquiry into Mr. Allen's apparent conflict of interests given his extensive and significant prior and subsequent representation of Montgomery County as county and district attorneys. On this record, Mr. Allen never recused or removed himself from representing the Appellant at any point in this appeal, raising the spector of Mr. Allen representing both the prosecution in Montgomery County as assistant district attorney, and the Appellant as defense appeal counsel, from the start of 2014 through the case's submission on March 31,2014, up to the case's affirmance on May 17,2014.

### Argument

When confronted with possible attorney conflicts of interests, a criminal court must take adequate steps to ensure the defendant receives a fair trial, or in the case at bar a fair appeal, which if not respected requires reversal of conviction. Wheat v. U.S.,486 U.S.153,160-62(1988). The U.S. Constitution confers a right to effective assistance of conflict-free counsel. Perillo v. Johnson,205 F3d 775(5th Cir.2000). An "actual conflict" exists when defense counsel is compelled to compromise his duty of loyalty or zealous representation of the accused, by choosing between or blending divergent or competing interests of his client. id. @ 781. An "adverse effect" is established by evidence that a plausible alternative defense strategy or tactic could have been pursued but was not, requiring "prejudice" to the appellant to be presumed. id. @ 781-82 Where defense counsel's prior representation involves a formal and substantial attorney-client relationship, a finding of "actual conflict" is more likely. The question turns on whether the character and extensiveness of the prior representation was such that counsel was prevented by his competing interest in the welfare of the prior client, from vigorously promoting the welfare of the current client. id. @ 799. In the case at bar, it is argued that the record shows Mr. Allen "nefariously chose to compromise his efforts" by throwing this appeal to the lions, in favor of his main employer in life Montgomery County.

Clearly, Mr. Allen has an extensive and formal attorney-client relationship with Montgomery County, before, during and after this appeal was adjudicated. Even assuming Mr. Allen was not representing Montgomery County during 2013, this record raises the neferious inference that Montgomery County rewarded Mr. Allen after throwing this case to the lions, by promoting him from assistant county attorney to assistant district attorney. Outrageously, Mr. Allen did not withdraw from the appeal but continued to remain as appointed counsel

5

in 2014 while he was an assistant district attorney, through the appeal's submissions on March 31, 2014 and affirmance decision on May 21, 2014. Had ANY court official told Appellant he was being appointed as appeal counsel a Montgomery County criminal attorney whose main client in life was Montgomery County, this Appellant would have objected on the record. But Montgomery County officials kept Appellant in the dark about Mr. Allen's divided loyalties, and probably for furthering the chances of obtaining a affirmance of Appellant's convictions. There can be no doubt that Mr. Allen deliberately lost this appeal, when you compare trial counsel's affidavit declaring Mr. Allen failed to pursue ANY trial defense issues he preserved on the record and Appellant's pro-se motions for rehearing and en banc consideration arguable issues that should have been presented on appeal, with Mr. Allen's single issue, meritless, boilerplate appeal argument. This shows plausible alternative defense appeal arguments that could have been presented but were not, requiring constitutional prejudice to be presumed. The unjust, nebulous inference is that Mr. Allen chose Montgomery County over this Appellant, in crafting his appellant's brief and/or in the manner in which he represented Appellant in this appeal, adversely effecting (if not totally negating) Appellant's Due Process rights to effective assisance of conflict free counsel on direct appeal and to a meaningful appeal that reviewed HIS trial court defenses and strategies.

Therefore, Due Process concerns, and the interests of justice, require this Court to grant Appellant an opportunity to be heard on the merits of his appeal arguments and authorities in a new direct appeal proceeding, by a return to the Beaumont Court of Appeals for further proceedings, with rebriefing and such other relief as is required by the Court. USCA 14.

### D. The Court of Appeals' "Overruled" Decisions on the Pro-Se Motions for Rehearings and for En Banc Consideration, Were an Abuse of Discretion, Requiring a Merits Review of the Pro-Se Issues

Facts

On June 13, 2014 Appellant timely filed a pro-se 57 page Motion for Rehearing and Motion to Exceed the Page limit, but on June 26, 2014 the Court of Appeals DENIED the motion to exceed page limits and sua sponte extended the time limits for filing motion for rehearing until July 21, 2014. Appx. 46. In this original motion for rehearing, the following issues were raised:

(1) the counts I and II convictions violated the Double Jeopardy prohibition against multiple punishments, for the same continuous act of evasive driving at issue, requiring the count II conviction to be vacated;

(2) the count III conviction is based on legally insufficient evidence any roadside found "syringes" were "related to the offense" of "possession of a controlled substance" and/or were "affirmatively linked" to Appellant, requiring the count III conviction to be reversed and renderred an acquittal;

(3) the count I conviction is based on legally insufficient evidence of Appellant's use of a vehicle to "threaten" Deputy C. Azwell, based on the deputy's false testimony that Appellant drove directly at the deputy as proven by the previously undisclosed "front-view" laser test photos submitted with this appeal showing the deputy shot at Appellant at all times from the side of Appellant's car, requiring the conviction to be reversed and an acquittal;

(4) the count II conviction is based on legally insufficient evidence of Appellant's use of his vehicle as a "deadly weapon", requiring deletion of the deadly weapon affirmative finding from the trial court's judgement;

(5) the court I conviction is based on legally insufficient evidence of Deputy Azwell lawfully discharging his duty to arrest, either based on his trial testimony of jumping in front of Appellant's already moving car to shoot Appellant and jumping out the way again in 2 seconds, or falsely testifying Appellant was driving directly at him when he shot at Appellant proven by previously suppressed State's "front-view" laser test photo evidence indisputably proving Deputy Azwell shot at Appellant at all times from the side of his car, requiring reversal of conviction and acquittal; and,

(6) five specific issues of ineffective assistance of trial and appeal counsel contrary to USCA 6 & 14, requiring reversal of all convictions and remand for a new trial on all counts.

See, 6/23/13 filed Original Motion for Rehearing, 1-57

On July 21,2014 Appellant filed his necessarily truncated 15 page version of his arguments and authorities in an Amended Motion for Rehearing, forced by the Court's decision to deny his motion to exceed the page limits to jettison his Double Jeopardy claims and severely condensing his remaining arguments. On July 24,2014 the Court of Appeals "overruled" without written opinion the Appellant's Pro-Se Amended Motion for Rehearing. Appx.45 . Additionally, the Appellant also filed a Pro-Se Motion for En Banc Consideration, essentially reasserting his rehearing arguments but focussing upon Deputy Azwell's having falsely testified in trial to cause his count I conviction, acting in concert with police and prosecutorial suppression of "front-view" laser test photos that indisputably prove the perjury and suppression of evidence. On September 4,2014, the Court of Appeals "overruled" without written opinion the Appellant's Pro-Se Motion for En Banc Consideration. Appx. 42. As a matter of law, the Court of Appeals' decisions on the motions for rehearing and en banc consideration, did not consider the merits of any issue Appellant raised pro-se. See, Rochelle v. State, 791 S.W.2d 121,124-25(Tex.Crim.App.1990).

Argument

In the case at bar, Appellant is entitled to return to the Court of Appeals for an actual decision on the merits of the issues he tried to raise pro-se below under Tex.R.App.P.47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). In Sotelo v. State, 913 S.W.2d 507(Tex.Crim.App.1995) the TCCA distinguished Rochelle, supra. as a case where nothing prevented movant from arguing in it's brief on original submission his rehearing claim, noting in Sotelo's case at the time of original submission to the court of appeals there was no justiciable claim to assert and the motion for rehearing was thus the "earliest opportunity" he had to raise his claim, under the facts of Sotelo's case. id. @ 509. The TCCA held the denied without written opinion decision did not address the merits of the claim therein, the complaint about the propriety of that decision was properly preserved in a motion for rehearing or a petition for discretionary review, the "viable" constitutional claim was incorrectly not considered by the court of appeals, and issued a vacate and remand order to the court of appeals for a decision on the merits in the first instance. id. @ 508-10. Sotelo applied the predeccessor to Rule 47.1 of Tex.R.App..90(a). Sotelo, @ 509. The language of "issue raised and necessary to final disposition of the appeal" is identical. Hence the Sotelo result should occur in the instant Appellant's case.

Rule 47.1 applies not only to constitutional arguments under Sotelo and Rochelle, but also to courts of appeals decisions that do not discuss the evidence an appellant argued best supported his constitutional claim. Sims v. State,99 S.W.3d 600,601(Tex.Crim.App.2003). The TCCA reviewed the court of appeals' discussion of the evidence, specific taped evidence pointed to by the appellant, id. @ 601-02, the appellant's brief and motion for rehearing arguments on the evidentiary issues pointed to, id. @ 602-03, reviewing the taped evidence pointed to, concluding they contained relevant evidence to the contested issue and held the court of appeals should have mentioned its consideration of this important evidence that appellant asserted undermined the jury's verdict. The TCCA remanded to the court of appeals, to consider this "important evidence ... crucial to the claim" under Tex.R.App.P.47.1 id. @ 603-04: accord, Light v. State,15 S.W.3d 104-106-07(Tex.Crim.App.2000)(applying Rule 47.1 on PDR to vacate and remand to court of appeals).

In the case at bar, appeal counsel prevented Appellant from raising any issue he believed should have been included in the appellant's brief, which a review of the arguable issues Appellant raised pro-se in his motions filed below reveal, compared to appeal counsel's single issue argument presented. The instant complaint about the propriety of the court of appeals decisions below that did not rule on the merits of his arguments that counsel was being ineffective contrary to USCA 14 and Appellant's briefed,"viable" constitutional issues on the appellate record and the PDR record being arguable and substantial demonstrate that the Court of Appeals abused it's discretion, by never ruling on the merits of complaints. Under Sotelo,supra., a vacate and remand order is required in the exercise of the TCCA's supervisory capacity and in the interests of justice. 913 S.W.2d @ 509[citing, Rochelle,supra.]; Perkins v. State, 905 S.W.2d 452,453(Tex.App.-El Paso 1995)(same).

Additionally, the court of appeals abused it's discretion by not ruling on the merits of Appellant's submitted, previously unknown to him or suppressed, "front-view" laser test photo State's evidence which shows Deputy Azwell in trial falsely testified that Appellant was driving directly at him and he was directly in front of Appellant's car, when he shot at Appellant, by indisputably showing all three of Deputy Azwell's shots came from the side of Appellants car, including the contested bullet hole in the front of Appellant's car which the State's bullet trajectory expert testified came from the front of the car essentially falsely testifying as well or at least suppressing the existence within his knowledge of the "front-view" laser test photo results showing that the contested bullet hole in the front hood of the car HAD to come from the side of Appellant's car. The Court of Appeals did not even mention this crucial State's evidence showing Appellant is actually innocent of the aggravated threat of a public servant charge, which given the gravity of the Appellant's prima facie showing of egregious prosecutorial misconduct in this case, requires the Sims result to follow as well. 99 S.W.3d @ 601-04. A close look at the front view laser test photo evidence, and the State's actually filed exhibits showing the side view laser test photo evidence, appear to be the same car in the same police garage going through the same bullet trajectory laser test procedures, the only difference being the previously undisclosed or suppressed front view photos show the bullet is definitely shot from the side of the car, where the angle of the side view photos showing the same laser beam appear to be coming front the front of the car but are really coming from the side of the car. See Appx.31(suppressed "front-view"),32(State's Ex."side-view"); Brown,519 F3d @ 237-38(strikingly similar circumstances of state crime lab tech's false testimony, suppression of evidence & civil rights conspiracy loss in qualified immunity setting).

8

The TCCA should review the front view and side view laser test photo evidence, conclude the front-view laser test photo result contains relevant evidence to the Appellant's issues of false testimony, suppressed evidence and the State's failure to correct false testimony when it appears, and remand to the Beaumont Court of Appeals for consideration of this "important evidence ... crucial to his claim" of false evidence, suppressed evidence, and failure to correct false testimony when it appears in violation of Due Process. id. @ 603-04.

Appellant argues that the structural nature of the errors he has revealed in his trial and appeal as having occurred, counsel this Court to apply Sotelo and Sims to his case, reaching the same result of a vacate and remand to the Beaumont Court of Appeals order, with specific instructions applicable to the facts of his case. Tex.R.App.P.47.1,66.3(f); USCA 14.

2.  **TRIAL COUNSEL VIOLATED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, BY EMPLOYING A STRATEGY OF POISENING THE JURY WITH APPELLANT'S PRIOR CONVICTIONS DESPITE HIS NOT TESTIFYING IN THE GUILT PHASE, REQUIRING REVERSAL OF ALL FOUR OF THE CONVICTIONS AND REMAND FOR A NEW TRIAL**

Appellant incorporates by reference his internal argument he said appeal counsel SHOULD HAVE MADE, to wit: a record based direct appeal ineffective assistance of counsel argument. See infra.,§(g),1.B.

3.  **TRIAL COUNSEL VIOLATED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, BY OUTRAGEOUSLY FAILING TO DISCOVER OR EMPLOY IN TRIAL THE STATE"S "FRONTVIEW" LASER TEST PHOTO EVIDENCE TO PROVE THAT DEPUTY AZWELL FALSELY TESTIFIED APPELLANT WAS DRIVING DIRECTLY AT HIM WHEN HE SHOT HIM, AND TO PROVE CSI WRIGHT WAS SUPPRESSING THE EXCULPATORY NATURE OF THE "FRONTVIEW" LASER TEST PHOTO EVIDENCE, CONTRARY TO USCA 6,14**

Facts and Arguments

See supra.,§(f),¶¶1,4,16(related procedural history). The Court of Appeals held only Deputy Azwell's testimony supported finding Appellant "tried to run over him" while trying to continue "to evade arrest", and that this was why Deputy Azwell "fired several shots at [Appellant] Martin's car when Martin drove toward him", and "Martin's having driven directly at [Azwell] as the chase was ending is not contradicted" in the record. See supra.,§(f),¶13(2) [citing, Appx.38-39, Mem.Op.,6-7]. Had the Beaumont Court of Appeals considered Appellant's submitted "front-view" bullet trajectory laser test photo evidence, the Court of Appeals ultimately would have had to conclude Deputy Azwell's testimony that he only shot Appellant because he was driving directly at him, is irrebutably contradicted as false and perjurious testimony. See Appx. 31-32(suppressed "front-view" laser testphoto,compared to State Exhibit "side-view"laser test photo).

In trial, when trial counsel is crossexamining the State's bullet trajectory reconstruction expert CSI Wright,it was undisputed two shots were fired from the side of Appellant's car, one of which hit Appellant in the chest resulting in Appellant's surrender. See Appx.1-5(excerpted testimony of Azwell and Wright) CSI Wright testified Deputy Azwell's first shot went into Appellant's front hood, going through it, and explained it's trajectory after going through the hood, but only explained it's verticaltrajectory before going through the hood.

9

Trial counsel asked CSI Wright if Appellant's car was going 10-20 mph, could'nt the front hood's bullet hole trajectory have come from the side of the car like the other two shots did, which he dodged the issue of what does the laser test photo results show where Deputy Azwell was located when he shot at Appellant (either beside or in front of the car) by testifying, "Sir, that's speculating on speed, and I could'nt make that type of speculation on it." Appx.4-R.R.,v.6,pp.169-70. At this point trial counsel passed the witness and the State asked no further questions. Appellant argues at this exact point trial counsel outrageously failed to introduce the "front-view" laser test photos showing the deputy shot into the front hood from the side of Appellant's car, very clearly and indisputably. Appx.3-5 - R.R.,v.6,pp.155-71. Supporting the outrageousness of this failure is the fact that trial counsel's final arguments to the jury contend Deputy Azwell shot Appellant from the side of the car unnecessarily, the deputy falsely testified he shot Appellant from the front of the car while Appellant was driving directly at him to cover-up his excessive use of force, the deuputy lacked credibility on this basis and this reasonable doubt was further supported by the fact that CSI Wright "never did say what angle" horizontally the front hood shot's bullet trajectory came from. Appx.7-9, Defense Jury Arguments, R.R.,v.9,pp.96-108. Trial counsel's failure to further pursue testimony on this issue in trial, and failure to produce the front-view laser test photo results and ask CSI Wright about their obvious exculpatory value is a single instant of outrageously deficient performance of counsel for which under the totality of the circumstances there exists no possible sound trial strategy for pursuing. The front view laser photo result exonerates Appellant, because they prove Deputy Azwell's testimony Appellant was driving directly at him intending to run him over, was blatantly false, perjorious and revealingly only supported by Deputy Azwell's testimony alone. Virtually all aggravated assault on a public servant by use of a car cases show the appellant drove his car directly at the police officer. See Supplemental Brief, Issue No.6, Argument B[citing, Dobbs,2013 Tex.App.LEXIS 3050(finding the car "accelerated towards him. The officer fired his weapon as the car approached and then jumped out of it's path just before it could strike him."); Dobbins,228 S.W.3d @ 765-66 (appellant drove directly at officer, then stopped at officer's direction, then moved car forward striking officer); Whiddon,2007 Tex.App.LEXIS 916(finding appellant "drove his truck toward the trooper, so that the trooper feared for his life" and "would have hit the tropper if the trooper had not moved out of the way ... only after the trooper shot out one of Whiddon's tires."); Brown,2004 Tex.App.LEXIS 8479("appellant drove his vehicle directly at him while he was standing outside his patrol car, forcing [him] to jump out of the way to avoid being hit."); Miller,576 F3d @ 529-30(similar)]. The front-view laser test photo completely exonerates Appellant as it shows Appellant was NEVER driving directly at Deputy Azwell. Brown,183 S.W.3d @ 733(in aggravated assault on public servant case, finding although officer was fairly close to the vehicle as it passed him, there was no evidence the vehicle swerved in any direction, suggesting appellant drove straight for the exit, holding it was trial error to deny lesser included jury charge on reckless driving). Accordingly, trial counsel was constitutionally ineffective in violation of USCA 6 for failing to investigate the forensics of this shooting and use the front-view laser test photo results to exonerate Appellant, Draughton v. Dretke,427 F3d 286,296(5th Cir.2008), and failing to wring the truth out of CSI Wright about his "front-view" laser test photo result. E.g., Brown v. Miller 519 F3d 231,237-38(5th Cir.2008)(state crime lab tech's false testimony, suppression of evidence, civil rights conspiracy strikingly similar situation). See USCA 6; Strickland,466 U.S. @ 687-88,690; Johnson v State,169 S.W.3d 223,229-30(Tex.Crim.App.2005)(recognizing preservation of Brady issues below is often not possible).

Therefore, as demonstrated hereinabove, because trial counsel ineffectively argued the false testimony, suppressed evidence and State's failure to correct the false testimony when it appeared issues in trial, because appeal counsel refused to argued these issues in the Court of Appeals and because the Court of Appeals when presented with these arguments pro-se didn't review them on their merits, Appellant requests the TCCA find these issues arguable on their merits, vacating and remanding to the Court of Appeals for their consideration in the first instance. Tex.R.App.P.47.1,66.3(f); Robinson,16 S.W.3d @ 813; Light,15 S.W.3d @ 106-07; Sotelo,913 S.W.2d @ 508-10.

Furthermore, Appellant requests this Court allow him, upon remand, to file a supplemental brief to consolidate all the substantive issues he previously tried to raise below but was preventted from raising and obtaining a ruling on the merits on, in the interests of clarity, justice and the right to a meaninful appeal protected by Due Process, see Hanby's Annotated, Texas Rules of Appellate Procedure,268[citing, Tex.R.App.P.68.2, Garrett v. State,749 S.W.2d 784(Tex.Crim.App.1988) and Carroll v. State,101 S.W.3d 454(Tex.Crim.App.2003) (court of appeals was authorized on remand to reconsider a previous ruling on an issue not addressed by the Court of Criminal Appeals)], and to instruct the Court of Appeals to order the State to file a response to the supplemental brief consolidating the pro-se rehearing and en banc consideration issues under Tex.R.App.P.49.2 governing responses to motions for rehearings. If any such State response does NOT produce an agreement between the parties on the false testimony, suppressed "front-view" laser test photo result evidence and other prosecutorial misconduct arguments, then instruct the Court of Appeals to abate the appeal and remand to the trial court for authentication and findings of facts regarding the "front-view" laser test photo evidence after an evidentiary hearing with Appellant represented by appointed counsel, followed by a Court of Appeals decision on the merits of Appellant's supplemental brief arguments and authorities under Tex.R.App.P.49.3.

4. **THE STATE VIOLATED DUE PROCESS BY PRESENTING FALSE TESTIMONY THAT APPELLANT DROVE DIRECTLY AT DEPUTY AZWELL, BY SUPPRESSING "FRONT-VIEW" LASER TEST BULLET TRAJECTORY PHOTOS PROVING THE FALSE TESTIMONY, AND/OR BY FAILING TO CORRECT THE FALSE TESTIMONY WHEN IT APPEARED**

Appellant incorporates by reference his internal argument presented infra., §(g) 3, and as comprehensively presented at "Supplemental Brief: the Pro-Se Identified Issues of Reversible Error" also filed in this case.

5. **THE COURT OF APPEALS ABUSED ITS DISCRETION CONTRARY TO DUE PROCESS CONCERNS, THE INTERESTS OF JUSTICE AND CASELAW BY NOT ORDERING THE STATE TO RESPOND TO THE APPELLANT'S PRO-SE MOTIONS FOR REHEARING AND/OR EN BANC CONSIDERATION UNDER TEXAS RULES OF APP.PROC.47.1,49.2**

Appellant incorporates by reference his procedural history in the Court of Appeals, as stated infra.,§(f) ¶¶12-16, including an outline of Appellant's pro-se arguments pleaded in the Court of Appeals below, at id.,¶¶14-16.

Had the Court of Appeals ordered the State to file a response to Appellant's amended motion for rehearing or motion for en banc consideration, the State might have admitted to a Due Process violation having caused the count I aggravated threat of a public servant conviction, based simply on the strength

11

of their attached "front-view" bullet trajectory State's laser test photo's compelling exculpatory value being squarely judicially placed before Montgomery County prosecutors in this case. See, Lewis v. State,402 S.W.3d 852,855-56,865-66(Tex.App.-Amarillo 2012),pet.granted, 2013 Tex.Crim.App.LEXIS 1526(10/23/13)(state declined to respond under Tex.R.App.P.49.2, court granted relief under new Supreme Court precedent, reforming "life without parole" to "life" sentence); Reeves v. State,03-03-00490-CR,2004 Tex.App.LEXIS 6815(Tex.App.-San Antonio 2004 pet ref'd)(in Tex.R.App.P.49.2 response, State admitted to Double Jeopardy violation, by Aggravated Assault on Public Servant and Aggravated Assault convictions, vacating aggravated assault conviction); CHC Honey Creek LLC v. Bexar Appraisal District,04-11-00354-CV,2012 Tex.App.LEXIS 5458(Tex.App.-San Antonio 2012 no pet.)(after Tex.R.App.P.49.2 order to respond, parties agreed to withdrawel of previous court opinion and for relief to be granted appellants; court granted rehearing, withdrew previous opinion, then reversed and renderred judgement for the appellants). Given the structural nature of Appellant's arguements on the merits of his pro-se issues of constitutional reversible error, as briefed in the Supplemental Brief for this Court's convenience, and the fact that the record supports Appellant's pro-se demonstration of false testimony by Deputy Azwell the primary witness against him, of suppressed front-view laser photo evidence by nefarious CSI testimony, and the State's failure to correct false testimony once it appeared, Due Process concerns and the interests of justice should compel this Court to consider Appellant's previously undisclosed or suppressed "front-view" laser test photo evidence under Sotelo,913 S.W.2d @ 508-10 and Sims,99 S.W.3d @ 601-04. And see, cf: Perkins v. State,902 S.W.2d 88,102(Tex.App.-El Paso 1995), supplemental opinion, 905 S.W.2d 452,452-43(Tex. App.-El Paso 1995 pet ref'd)(claim of perjured expert witness testimony about a scientific study attached to motion for rehearing for first time; rejected for not being part of the record and for finding no support in the record otherwise; on supplemental opinion the court held it could take judicial notice of the purported study because under Rochelle,791 S.W.2d @ 124-25 it had discretion to consider new matter raised for the first time in a motion for rehearing in the interests of justice or due process concerns, but would'nt under the attached study's weakness as evidence); State v. Fury,186 S.W.3d 67,73-74(Tex.App.-Hous.[1st Dist.]2005)(Brady claim of withheld photo evidence was rejected, but holding previously undisclosed Brady material photo evidence, must support Appellant's trial and appeal arguments, must be material, and must demonstrate the photo would probably cause a different result in another trial, to be considered in a direct appeal setting). After all, it is a State's duty or obligation under the Due Process Clause of the 14th Amendment to the United States Constitution, when confronted with false or perjorious State witness trial testimony and misleading evidence, to correct the false or misleading testimony or evidence at that time. Tassin v. Cain,517 F3d 770,778-79(5th Cir.2003). Vasquez v. State,67 S.W.3d 229,239 & nn.19-20(Tex.Crim.App. 2002); Ex parte Adams,768 S.W.2d 281,291(Tex.Crim.App.1989).

In the case at bar, once the State is ordered to respond to the merits of Appellant's rehearing and en banc consideration motions as consolidated into the Supplemental Brief filed in this case, arguably Due Process would require the State to admit the attached "front-view" laser test photo evidence is authentic, and their contents clearly show reasonable doubt exists as to Appellant's threatening Deputy Azwell by driving his car "directly" at him when he shot Appellant because the "front-view" laser test photo clearly and indisputably show Azwell's shot into the front hood came from the side of the

12

Appellant's car and not from the front of Appellant's car as Deputy Azwell falsely and perjoriously testified to in trial. Alternatively, the State could file a response to the instant petition for discretionary review that accomplishes the same Due Process obligation and duty of the State to admit to the false, perjorious testimony of Deputy Azwell, to admit to CSI Wright's suppression of his knowledge of the "front-view" laser test photo evidence obvious exculpatory value when he testified in trial, and to take corrective action to repair the damages to Montgomery County's judicial integrity by agreeing to a reversal and acquittal judgement in the count I aggravated threat of a public servant charge, and a reversal and remand for a new trial on the remaining charges due to the jury being entitled to hearing Deputy Azwell, the main witness against the Appellant, falsely testified so as to cause the count I conviction, hence having severely damaged credibility that the jury never got to consider.

SHOULD THE STATE DENY Appellant's facts claims that the "front-view" laser test photo evidence suppressed in trial shows Deputy Azwell falsely testified causing the count I conviction, CSI Wright fabricated or suppressed his laser test results so as to not have to testify about the "front-view" laser test photo results showing Deputy Azwell shot into Appellant's car at all times from the side of the car, and the State knowingly failed to correct false testimony when it appears, requiring reversal of all convictions, rendition of a judgement of acquittal on count I and a new trial on counts II, III & IV, THEN APPELLANT RESPECTFULLY REQUESTS this Court direct the Court of Appeals to abate the appeal and remand the case back to the trial court for fact find - ings relevant to the prosecutorial misconduct issues raised, after an evidentiary hearing conducted by appointed counsel or original trial counsel Walter Boyd representing the Appellant, for the purposes of establishing the authenticity of the "front-view" laser test photo evidence, what their contents prove about Deputy Azwell's and CSI Wright's trial testimony, and then returned to the Court of Appeals for judgement. See Tex.R.App.P.44.4; LaPointe v. State, 225 S.W.3d 513,521-23 & n.9(Tex.Crim.App.2007)(holding an abate and remand order is appropriate under Rule 44.4, which "is designed to create a new record ... The key to Rule 44.4 is that there must be an error that the appellate court can correct."); Spence v. State,758 S.W.2d 597,599-600(Tex.Crim.App. 1988) (holding it was error to exclude testimony of lead prosecutor, which would "obviously be particularly informative on the deliberateness of the State's actions" when it is relevant to the vert heart of the Due Process claim; abating and remanding so appellant can make an offer of proof or perfect a thwarted bill of exception); Michaelwicz v. State,186 S.W.3d 601,613-16(Tex.App.-Austin 2006 reh'g ovr'ld, pet.ref'd, citations omitted)(motion for ex parte trial court hearing to inspect police report for alleged exculpatory or material evidence value, intended to invoke Brady protections, held to be a proper procedural device to invoke in a direct appeal); Prudhomme v. State,28 S.W.3d 114,119-20(Tex.App.-Texarkana 2000)(holding trial court error when combined with ineffective assistance of counsel in motion for new trial issue, when asserted pro-se seeking relief on the record, will be remedied by an abate and remand order, reinstating the motion for new trial); McKee v. State,2012 Tex.App.LEXIS 2421 at **19-21(Tex.App.-Dallas 3-28-12)(on court's own motion, abating and remanding for written findings and conclusions whether videotaped statements to police were voluntary, then expressly ruling against appellant on issue), pet.ref'd,In re McKee,2013 Tex.Crim.App.LEXIS 166(1-30-13).

13

## (i) Prayer for Relief

Appellant respectfully prays that this Court will GRANT the petition, GRANT leave to file the "Supplemental Brief: the Pro-Se Identified Reversible Errors", HOLD the Court of Appeals abused it's discretion by it's "overruled" decisions on Appellant's pro-se motions filed below because they presented viable or arguable constitutional claims, ORDER the Court of Appeals affirmed decision of May 21,2014 VACATED AND REMANDED for a decision on the merits of Appellant's rehearing motion's constitutional claims as clarified in his "Supplemental Brief:..." in the first instance, ORDER the State to file a response under Tex.R.App.P.49.2 and absent an agreed resolution to this appeal between the parties thereafter INSTRUCT the Court of Appeals to abate the appeal and remand to the trial court under Martinez,163 S.W.3d 88 to determine if Appellant will continue pro-se or with new appointed appeal counsel in subsequent appeal proceedings, and under Tex.R.App.P.44.4 for an evidentiary hearing with newly appointed trial defense counsel for a determination of the authenticity, contents and facts relevant to the "front-view" laser photo test results evidence and their implications to the testimony of Deputy Chris Azwell and State's expert Mark Wright and the State's prosecutor's conduct in this trial, followed by trial court fact findings.

Alternatively, Appellant respectfully prays that this Court will GRANT the petition, set the case for submission and appoint appeal counsel to represent the Appellant in those proceedings, and/or such other relief as law and justice requires.

## CERTIFICATE OF SERVICE

I certify and affirm placing a true and correct copy of this petition for discretionary review into the prison mailbox on December 24,2014 addressed to: (1) Abel Acosta, Clerk, Texas Court of Criminal Appeals, P.O. Box 12308, Capitol Station, Austin, Texas 78711-2308; (2) Carol Anne Harley, Clerk, Ninth Court of Appeals for Texas, 1001 Pearl St., Beaumont, Texas 77701; (3) the State Prosecuting Attorney, Price Daniel Sr. Bldg., 209 W. 14th St., Rm.202, Austin, Texas 78711; (4) attorneys Jason Larman and Chris Allen, Montgomery County District Attorney's Office, 207 W. Phillips, 2nd Fl., Conroe, Texas 77301

Respectfully Submitted,

*Peter James Martin*

Peter James Martin
tdcj-cid #1846003
Stiles Unit 3060 FM 3514
Beaumont, TX 77705

14

IN THE TEXAS COURT OF CRIMINAL APPEALS
COA 09-13-00180-CR,09-13-00181-CR,09-13-00182-CR,09-13-00183-CR

PETER JAMES MARTIN, Appellant,                §
                                              §
                                              § From the 221st Judicial District
v.                                            § Court of Montgomry County, Texas,
                                              § trial Cause Number 12-03-02604-CR
THE STATE OF TEXAS, Appellee,                 §

## MOTION FOR LEAVE TO FILE "SUPPLEMENTAL BRIEF: THE PRO-SE IDENTIFIED REVERSIBLE ERRORS"

This is a petition for discretionary review ("PDR") proceeding, in which Appellant complains about his rights to Due Process were violated by appointed appeal counsel's total disregard in the appellant's brief of the major defenses argued to his jury in trial, and the Court of Appeals not ruling on his timely filed complaints about counsel's brief and on the merits of his motion for rehearing and en banc consideration procedural and substantive arguments showing reversible error. See PDR Brief,ii(listing 5 arguments and sub-claims),vii(listing 7 grounds for review). The Court of Appeals "overruled" Appellant's motions for rehearing and reconsideration, which is not a ruling on the merits presumably. Id.,x-xi[citing, Rochelle v. State,791 S.W.2d 121,124(Tex.Crim.App.1990) & Hanby's Annotated, Texas Rules of Appellate Procedure,204(West's 2011 ed.)].

Appellant argued appeal counsel below presented only one deficient, minor, meritless mistrial ruling argument, which omitted the major issues from his trial that should have been brought up in the appellant's brief, denying him effective assistance of counsel on first appeal, requesting copies of his trial transcripts, and moving for an abate and remand order for trial court fact findings on these omitted appeal issues. Id.,3[citing, Rudd v. State,616 S.W.2d 623,624(Tex.Crim.App.1981) and Martinez v. State,163 S.W.3d 88(Tex.App.-Amarillo 2004)(applying Rudd's "interest of justice" clause to abate and remand case to trial court), appeal after remand, 163 S.W.3d 92(Tex.App.-Amarillo 2005) (rev'g & rem'dg for new trial). The interests of justice can't frankly be invoked without some kind of pro-se written demonstration of reversible error that appointed appeal counsel did not pursue over objections. See e.g., Sotelo v. State,913 S.W.2d 507,509-10(Tex.Crim.App.1995)("...constitutional restraints such as due process ... may ... compel the consideration of a new matter raised for the first time on motion for rehearing", comparing PDR cases that proceeded to the merits to those that did not, and saying "we did not reject the petition outright when it raised a viable issue ... simply because that issue was not raised in the court of appeals", rev'g & rem'dg to court of appeals for decision on merits of double jeopardy argument); cf; Perkins v. State,902 S.W.2d 88,102 (Tex.App.-El Paso-1995),on supp.opinion,905 S.W.2d 452-452-53(Tex.Crim.App.1995) (rejecting motion for rehearing arguments and attachments, as not supported by the record and the argument without merit, also noting a motion for leave to file a supplemental brief was granted and considered by the court). The Court of Appeals abused it's discretion by not ruling on the merits in a written opinion on Appellant's pro-se identified reversible errors. PDR Brief,6-9[citing Sotelo, Rochelle, and Tex.R.App.P.47.1]. The sheer number of viable or arguable constitutional issues Appellant raises pro-se in his supplemental brief, shows his Due process rights to effective assistance of counsel and to a meaningful appeal were violated below. See Supp.Brief,vii-ix(listing 15 issues presented).

Additionally, Appellant raised below his constitutional rights to file a pro-se brief on appeal were violated. PDR Brief,viii-ix ¶11,2-3. The Appellant continues to rely on this constitutional issue. Supp.Brief,2-4¶¶4,6,8,9.

For the above reasons, Appellant respectfully requests this Court GRANT LEAVE to file the instant "Supplemental Brief: the Proi-Se Identified Reversible Errors" in the instant PDR proceeding.

I certify and affirm placing a true and correct copy of this instrument into the prison mailbox on 12/24/14 addressed to the State Prosecuting Attorney, , Price Daniel Sr. Bldg., 209 W. 14th St., Rm.202, Austin, Texas 78711, and the Montgomery County District Attorney's Office Jason Larman, 207 W. Phillips, 2nd Fl., Conroe, Texas 77301.

Respectfully Submitted,

*Peter James Martin*

PETER JAMES MARTIN, #1846003, pro-se,
Michael Unit, 2664 FM 2054,
Tennessee Colony, Texas 75886

-2-

PD-1050-14
IN THE TEXAS COURT OF CRIMINAL APPEALS
AND THE NINTH DISTRICT COURT OF APPEALS FOR TEXAS
COA ##09-13-00180-CR,09-13-00181-CR,09-13-00182-CR,09-100183-CR

Peter James Martin, Appellant,   §
                                 § From the 221st Judicial District
v.                               § Court of Montgomery County, Texas
                                 § Cause Number 12-03-02604-CR
The State of Texas, Appellee,    §

---

SUPPLEMENTAL BRIEF: THE PRO-SE IDENTIFIED REVERSIBLE ERRORS

---

Peter James Martin #1846003
Stiles Unit
3060 FM 3514
Beaumont, TX 77705

## IDENTITY OF PARTIES AND COUNSEL

Trial Judges: Honorable Lisa Michalk,     Honorable Mary Anne Turner,
Pre-Trial proceedings,     Trial proceedings,
207 W. Phillips     210 W. Davis, Suite 400,
Conroe, Texas 77301     Conroe Texas 77301
Phone:(936)539-7808     Phone:(936)538-8174

Prosecutors: Robert Fryer,     Joann Linzer,
SBOT #00798189     SBOT #24037255
Pre-Trial proceedings,     Trial proceedings,
Assistant Mongomery Cty.     Assistant Montgomery Cty.
District Attorney     District Attorney

Amanda Lanning,     Lane Haygood,
SBOT #24071514     SBOT #24066670
Trial proceedings,     Trial proceedings,
Assistant Montgomery Cty.     Assistant Montgomery Cty.
District Attorney     District Attorney

Jason Larman,     Bill Delmore,
SBOT #24072468     SBOT #05732400
Appeal proceedings     Appeal proceedings
Assistant Montgomery Cty.     Assistant Montgomery Cty.
District Attorney     District Attorney

Brent Ligon,     207 W. Phillips, 2nd Fl.,
SBOT #00796955     Conroe, Texas 77301
District Attorney for     Phone:(936)539-7800
Montgomery County, Texas     Fax: )936)788-8395

Defense: Mr. Todd Ward,     Mr. Walter Boyd Jr.
SBOT #00797780     SBOT #02782000
Pre-Trial proceedings     Trial proceedings
DeGeurin and Dickson LLC,     202 Travis, Suite 208,
1013 Preston Ave., 7th Fl.,     Houston, Texas 77002
Houston, Texas 77002     Phone:(713)622-3505

Christopher Neal Allen,     Jeremy D. Finch,
SBOT #24031816     SBOT #24052964
Appeal proceedings     Appeal proceedings
Assistant Mongomery Cty.     300 W. Davis, Suite 450,
District Attorney     Conroe, Texas 77301
Phone:(936)539-7800     Phone:(936)756-7297

Appellant: Mr. Peter James Martin, TDCJ-CID #1846003
Michael Unit of TDCJ-CID, 2664 FM 2054
Tennessee Colony, Texas 75886

Legal Assistant Paul James Koumjian, Post-Conviction Issues,
TDCJ-CID #1039181, Hughes Unit, Rt.2, Box 4400
Gatesville, Texas 76597

i

# TABLE OF CONTENTS

Identity of Parties and Counsel                                                    i
Table of Contents                                                                  ii
Index to Authorities                                                               iii-v
Statement of the Case                                                              vi
Statement Regarding Oral Argument                                                  vi
Issues Presented                                                                   vii-ix
Arguments                                                                          1-33

1.  Appeal Counsel Mr. Allen Violated Appellant's Right to Effective
    Assistance of Counsel Guaranteed by Due Process, Preventing Meaningful
    Review of Trial Court Defenses Argued to the Jury by Ignoring Same
    in Favor of a Lone, Meritless, Waived Mistrial Ruling Claim                     1-5
    A.  Due process                                                                1
    B.  Complaint Was Timely Made in the Court of Appeals ...                      1-4
    C.  Appeal Counsel Had an Actual Conflict of Interests ...                     4-5

2.  Penal Code §38.04(b) as Amended by Acts 2001 82nd Leg., Makes the
    Offense Both a State Jail Felony and a Third Degree Felony, Under
    Two Subsections With Different Elements, Renderring the Statute Un-
    constitutionally Vague, Indefinite and Uncertain as Written or Applied
    Requiring Vacating the §38.04(b) Conviction and Dismissal of Charge            6-8

3.  The Aggravated Threat of a public Servant Count and Enhanced Evading
    Arrest Count, as Charged, Violate the Texas and United States Double
    Jeopardy Prohibitions Against Multiple Punishments for the Same,
    Continuous Course of Conduct, Requiring Vacating the Enhanced Evading
    Arrest Count's Conviction and Sentence and Dismissing the Charge               8-11

4.  Legally Insufficient Evidence of the Use or Exhibition of a Deadly
    Weapon Motor Vehicle, Because None Was Shown to be Actually Endan-
    gered by Proximity to Appellant's Driving, Requiring Deletion of
    the Deadly Weapons Findings From the Judgement of Evading Arrest               11-14

5.  Legally Insufficient Evidence Alleged "Syringes" Were "Related"
    to the Alleged "Possession of a Controlled Substance" Offense, and/or
    Were Affirmatively Linked to Appellant, Requiring Reversal of the
    Tampering With Evidence Conviction and as Acquittal Renderred                  15-19
    Facts                                                                          15-16
    Arguments                                                                      16-19

6.  Legally Insufficient Evidence of using a Vehicle to "Threaten" a
    Public Servant While "Lawfully" Discharging His Duty, Based on Inde-
    pendant Due process Violations of Trial Court False Testimony, Sup-
    pressed Evidence, Prosecution's Knowing Failure to Correct False
    Testimony (USCA 14) and/or Unreasonable Siezure of Appellant by
    Shooting Him For Unarmed Evading Arrest by Vehicle (USCA 4; P.C.§9.51(c))     20-31
    Facts                                                                          20-21
    A.  Legally Insufficient Evidence                                             22-26
    B.  False Testimony and Suppressed Evidence by Police and Prose-
        cutors, Failure of Prosecutors to Correct Knowing False Testimony
        When it Appeared, in Violation of Due Process                             26-31

7.  Violation of Appellant's Rights to Choice of Counsel and Conflict
    Free Counsel and to a Knowing and Voluntary Decision on Plea Bargain
    Offers, in Violation of USCA 6 & Tex.Constitutional Article I, Sec.10         31-33

Prayer                                                                             34
Certificate of Service                                                             34

# INDEX TO AUTHORITIES

## Constitutions, Statutes and Rules

| | | |
|---|---|---|
| USCA 4 | Unreasonable Seizures Prohibition | viii,12,13,20,24,25 |
| USCA 5 | Double Jeopardy Prohibition | vii,8-11 |
| USCA 6 | Assistance of Counsel Guarantee | ii,vii,ix,3,31-33 |
| USCA 14 | Due Process Guarantee | ii,vii-ix,1-7,11-33 |
| Tex.Const., Art.I,§10 | Assistance of Counsel Guarantee | ii,ix,5,31 |
| Tex.Const., Art.I,§14 | Double Jeopardy Prohibition | vii,8,11 |

Texas Penal Code,

| | | |
|---|---|---|
| §38.04(b) | Evading Arrest by Vehicle | ii,vi,vii,6-7,9-10 |
| §38.04(d) | Intent for Unenhanced Multiple punishments | 9 |
| §37.09(a) | Tampering With Evidence of Current Investigation of Offense | 17 |
| §37.09(d) | Tampering With Evidence of Subsequent Investigation of Offense | vi,15-19 |
| §22.01 | Assault | 22 |
| §22.02(a)(2)(b)(2)(B) | Aggravated Assault of Public Servant | vi,10,22,24,26 |
| §9.51(c) | Unjustified Use of Deadly Force Defense Against Criminal Liability for Assault on Public Servant | ii,viii,20,25,26 |
| §6.04(a) | Concurrent Causation Defense Against Criminal Liability | viii,13,23 |

Health and Safety Code,

| | | |
|---|---|---|
| §481.115-§481.118 | Possession of Controlled Substance statutes | vi,16 |
| §481.125(a) | Possession of Drug Paraphrenalia | 17 |

Code of Criminal Procedure,

| | | |
|---|---|---|
| art.42.12,§3g(a)(2) | Use of Deadly Weapon offense enhancer | 9,10,14 |

Acts 2011, 82nd Leg.,

| | | |
|---|---|---|
| chapter 391(SB 496) | Version One of Penal Code §38.04(b) | 6,7 |
| chapter 839 | Version One of Penal Code §38.04(b) | 6 |
| chapter 920(SB1416) | Version Two of Penal Code §38.04(b) | 6,7 |

| | |
|---|---|
| Standards of Review in Texas,34 St. Mary's L.J.159(2002) | 25,26 |

Texas Rules of Appellate Procedure,

| | | |
|---|---|---|
| 33.1 | Preservation of Appellate Complaints, How Shown | 8 |
| 38.9 | Briefing Rules to Be Construed Liberally | 8 |
| 44.2(a) | Reversible Constitutional Error in Criminal Cases | 14,27A,34 |
| 44.4 | Remedial Error of the Trial Court | 27A,34 |
| 47.1 | Written Opinions | 3-5,11,14,19,30,33 |
| 49 | Motion for Rehearing, Response, Decision | 3,5,14,19,27A,33 |

## Caselaw

| | |
|---|---|
| Ex parte Adams,768 S.W.2d 281(Tex.Crim.App.1989) | 26,29 |
| U.S. v. Agurs,427 U.S.97,103(1976) | 26,29 |
| Anders v. California,386 U.S.738(1967) | 3 |
| Arizona v. Fulamonte,499 U.S.279(1991) | 4 |
| Badgett v. State,42 S.W.3d 126(Tex.Crim.App.2001) | 17 |
| U.S. v. Bagley,473 U.S.667(1985) | 4,27 |
| Baxter v. State,12-03-00253-CR, 2001 Tex.App.LEXIS 4861(Tex.App.-Eastland 10-28-04) | 22 |
| Beets v. Scott,65 F3d 1258(5th Cir.2995)(en banc) | 5,32,33 |
| Lyons v. McCotter,770 F2d 529,534(5th Cir.1985) | 3 |

(con't)

Berger v. State,104 S.W.3d 199(Tex.App.-Austin 2003)   8

Blanton v. State, 05-05-01060-CR, 05-05-01061-CR, 2006 Tex.App.LEXIS 6367
(Tex.App.-Dallas,7-21-06), pet ref'd 2x 2007 Tex.App.LEXIS 376,377(3-21-07)   18

Bledsoe v. State,178 S.W.3d 824(Tex.Crim.App.2005)   4

Blockburger v. U.S.,383 U.S.289(1932)   8-11

Brady v. Maryland,373 U.S.83(1963)   27,27A

Brock v. State,295 S.W.3d 45(Tex.App.-Hous[1 Dist]2009 rehg denied)   24,26

Brown v. State,183 S.W.3d 728(Tex.App.-Hous[1 Dist]11-23-05 rehg denied) 12,13,22-24

Brown v. State, 11-03-00253-CR, 2001 Tex.App.LEXIS 6479(Tex.App.-Eastland 10-28-04 pet refd) 22

Callison v. State,218 S.W.3d 822(tex.App.-Beaumont 2007)   9

Ex parte Carner,364 S.W.2d 896(Tex.Crim.App.2012)   6,7

Ex parte Caravos,203 S.W.3d 333(Tex.Crim.App.2008)   11

Ex parte Castellano,863 S.W.2d 476(Tex.Crim.App.1993)   26-29

Cannon v. State,252 S.W.3d 342(Tex.Crim.App.2008)   8

Carlton v. State,176 S.W.3d 231(Tex.Crim.App.2005)   6

Cates v. State,102 S.W.3d 735(Tex.Crim.App.2003)   9,13

Chapman v. California,386 U.S.18(1967)   27

Clay v. State,240 S.W.3d 895(Tex.Crim.App.2007)   7

Clintom v. Stearns,780 S.W.2d 216(Tex.Crim.App.1989)   32

Cobb v. State,95 S.W.3d 364(Tex.App.-Hous]1 Dist]2002 no pet)   7

Craig v. TDCJ-CID,2013 U.S.Dist.LEXIS 124976(E.D.Tex.2013)   27

Daniel v. State,577 S.W.2d 231(Tex.Crim.App.1979)   13

Deltenre v. State,808 S.W.2d 97(Tex.Crim.App.1990)   16,17,19

Ex parte Demmitt,664 S.W.2d 725(Tex.Crim.App.1985)   7

Dobbins v. State,228 S.W.3d 761(Tex.App.-Hous[14 Dist]2007)   11,14,22

Dobbs v. State, 07-12-0376-CR, 07-12-0377-CR, 2013 Tex.App.LEXIS 3050
(Tex.App.-Amarillo 3-20-13 rehg ovrld)   13,22,23

Drichas v. State,175 S.W.3d 795(Tex.Crim.App.2005), on remand,
Drichas v. State,219 S.W.3d 471(Tex.App.-Texarkana 2007)   9,13

Draughton v. Dretke,427 F3d 286(5th Cir.2008)   28

Duggan v. State,778 S.W.2d 465(Tex.Crim.App.1999)   27

Ex parte Ervin,991 S.W.2d 804(Tex.Crim.App.1999)   10

Estrada v. State,313 S.W.3d 274(Tex.Crim.App.2010)   7

Estate of Starks v, Engert,5 F3d 230(7th Cir.1992)   12,22-24,26

Evitts v. Lucy,469 U.S.387(1985)   1

Favela v. State,13-12-003970-CR, 2012 Tex.App.LEXIS 5691(Tex.App.-Austin 5-8-13)   18,19

Fernandez v. State,316 S.W.3d 354(Tex.App.-Ft. Worth 2010 no pet)   11

Fraire v. City of Arlington,957 F2d 1268(5th Cir.1992)   25,26

State v. Fury,186 S.W.3d 67(Tex.App.-Hous[1 Dist]2005 pet refd)   27,27A

Gaitan v. State,393 S.W.3d 400(Tex.App.-Amarillo 12-17-12)   17

Garcia v. State,57 S.W.3d 436(Tex.Crim.App.2001)   1,28

Gaston v. State,574 S.W.2d 120(Tex.Crim.App.1978)   17

Giglio v. U.S.,405 U.S.150(1972)   26,29,30

Gonzalez v. State,574 S.W.2d 135(Tex.Crim.App.1978)   24

U.S. v. GonzalezLopez,548 U.S.140(2006)   32

Graham v. Connor,490 U.S.386(1989)   25,26

Griego v. State,345 S.W.3d 742(Tex.App.-Amarillo 2011)   6

Harrell v. State,165 Tex.Crim.384,314 S.W.2d 590(Tex.Crim.App.1958)   7

Ex parte Hawkins,6 S.W.3d 554(Tex.Crim.App.1999)   8

Hobbs v. State,175 S.W.3d 777(Tex.Crim.App.2005)   8,9,11

Holloway v. State,780 S.W.2d 787(Tex.Crim.App.1989)   32

Huffman v. State,267 S.W.3d 902(Tex.Crim.App.2008)   10

Infante v. State,397 S.W.3d 731(Tex.App.-San Antonio 2-6-13)   10

Issac v. Cain,2013 U.S.Dist.LEXIS 123864(E.D.La.2012)   27

(con't)

Jackson v. Virginia,443 U.S. 307(1979)    16,19,26

Jiminez v. Quarterman,129 S.Ct.681(2009)    2,4

Johnson v. State,364 S.W.3d 292(Tex.Crim.App.2012)    10

Johnson v. State,172 S.W.3d 6(Tex.App.-Austin 2005)    3

Johnson v. State,169 S.W.3d 223(Tex.Crim.App.2005)    27

Johnson v. Dretke,442 F3d 901(5th Cir.2006)    27

Jones v. State,926 S.W.2d 386(Tex.App.-Ft. Worth 1996)    32

Kaez v. State,287 S.W.3d 497(Tex.App.-Hous[14 Dist]2009)    24

Karenev v. State,281 S.W.3d 428(Tex.Crim.App.2009)    7

Kesaria v. State,189 S.W.3d 279(Tex.Crim.App.2009)    7

Koch v. Puckett,907 F2d 514(5th Cir.1990)    27

Kyles v. Whitney,514 U.S.418(1995)    4

Lafler v. Cooper,No.10-209, 566 U.S.___(2012)    33

Lewis v. State,402 S.W.3d 852(Tex.App.-Amarillo 2012), pet.
granted, 2013 Tex.Crim.App.LESIX 1526(10-23-13)    27A

LaPointe v. State,225 S.W.3d 513(Tex.Crim.App.2007)    27A

L.P. v. State,---S.W.3d---,2009 Tex.App.LEXIS 5467(Tex.App.-Austin 7/14/09)    17

Martinez v. State,163 S.W.3d 88(Tex.App.-Amarillo 2004), appeal after
remand, 163 S.W.3d 92(Tex.App.-Amarillo 2005 no pet)    2-4

McQueen v. State,781 S.W.2d 600(Tex.Crim.App.1989)    10

Michaelwicz v. State,186 S.W.3d 601(Tex.App.-Austin 2006 rehg ovrld pet refd)    27A

U.S. v. Miller,576 F.3d 518(5th Cir.2009)    11,22

Ex parte Morrow,952 S.W.2d 530(Tex.Crim.App.1997)    5

Moser v. Bascilla,865 F.Supp.249(E.D.Pa.1994)    24,25

Murphy v. State,01-08-00768-CR,01-08-00659-CR, 2010 Tex.App.LEXIS 2853
(Tex.App.-Hous[1 Dist] 4-22-10 pet refd 2x)    9-10,14

Napue v. Illinois,360 U.S.264(1953)    27,29,30

Olivas v. State,203 S.W.3d 341(Tex.Crim.App.2006)    11,14

Pannell v. State,7 S.W.3d 222,224(Tex.App.-Dallas 1999)    17,18

Perillo v. Johnson,205 F3d 775(5th Cir.2000)    5,32,33

Ex parte Perales,215 S.W.3d 418(Tex.Crim.App.2007)    16,19

Perkins v. State,902 S.W.2d 88(Tex.App.-El Paso 1995), on supplemental
opinion, 905 S.W.2d 452(Tex.App.-El paso 1995 pet refd)    27,27A

Powell v. Alabama,286 U.S.45(1932)    32

Pyle v. Kansas,317 U.S.213(1942)    26

Rabb v. State,387 S.W.3d 67(Tex.Crim.App.2012)    14,16,17,19

Reece v. State, 03-03-00490-CR, 2004 Tex.App.LEXIS 6815(Tex.App-San Antonio 7-19-04 pet refd)    11

Robinson v. State,16 S.W.3d 808(Tex.Crim.App.2000)    3,8

Rodriguez v. State,129 S.W.3d 551(Tex.App.-Hous[1 Dust]2004)    1,3

Roberson v. State,80 S.W.3d 730(Tex.App.-Hous[1 Dist]2002)    18

Robertson v. State,187 S.W.3d 475(Tex.Crim.App.2006), on remand,
214 S.W.3d 665(Tex.App.-Waco 2007 no pet)    3

Rochelle v. State,791 S.W.2d 121(Tex.Crim.App.1990)    27,27A

Rudd v. State,616 S.W.2d 623(Tex.Crim.App.21981)    2

Satterwhite v. Lynaugh,886 S.W.2d 91(5th Cir.1989)    2

In re Schulman,252 S.W.3d 403(Tex.Crim.App.2008)    2

Self v. State, 05-02-01963-CR, 2004 Tex.App.LEXIS 7352(Tex.App.-Dallas 2004), pet.dismd,
2005 Tex.Crim.App.LEXIS 278(3-2-05 , pet.refd, 2005 Tex.Crim.App.LEXIS 973(6-22-05)    13,24

U.S. v. Severns,559 F3d 274(5th Cir.2009)    9-11

Sierra v. State,280 S.W.3d 250(Tex.Crim.App.2009)    14

Sims v. State,99 S.W.3d 600,601-04(Tex.Crim.App.2003)    27A

Sotelo v. State,913 S.W.2d 507(Tex.Crim.App.1995)    11,27,27A

Spence v. State,758 S.W.2d 597(Tex.Crim.App.1988)    27A

Stone v. State,17 S.W.3d 348(Tex.App.-Corpus Christi 2000)    3

Strickland v. Washington,466 U.S.668(1984)    3,33

Swann v. City of Richmond,498 F.Supp.2d 847(E.D.Va.2007)    12,13,22,23,26

(con't)

Tassin v. Cain,517 F3d 770(5th Cir.2003)                               27,27A,29,30

Thornton v. State,377 S.W.3d 814(Tex.App.-Amarillo 2012), reh overld,
    2012 Tex.App.LEXIS 7687(9-7-12), setting bail, 2012 Tex.App.LEXIS 8233(9-28-12),
    vacated, remanded, reformed verdict, No.PD-0669-13(Tex.Crim.App.4-2-2014)      16-18

Teeter v. State, 13-07-00578-CR, 2009 Tex.App.LEXIS 5668(Tex.App.-Corpus Christi 2009),
    affd in pert part, revd on other grounds, 2010 Tex.Crim.App.LEXIS 1206(9-22-10),
    writ denied, 2012 Tex.Crim.App.Unpub.LEXIS 3134(4/4/12)               24

Vasquez v. State,67 S.W.3d 229(Tex.Crim.App.2002)                27,27A

Verduzzo v. State,24 S.W.3d 284(Tex.App.-Hous[14 Dist]2002)           18

Wheat v. U.S.,486 U.S.153(1988)                          5,32

Willliams v. State, 03-06-00039-CR(Tex.App.-Austin 2007)           8

Whiddon v. State, 10-06-00085-CR, 2007 Tex.App.LEXIS 916(Tex.App.-Waco 2007)   22,25

In re Winship,397 U.S.358(1970)                        14

Zuliani v. State,335 S.W.3d 213(Tex.App.-Austin 2011), aff'd and
    remanded for further proceedings, 353 S.W.3d 872(Tex.Crim.App.2011),
    reaffirmed,383 S.W.3d 289(Tex.App.-Austin 2012), pet refd 2x,
    2013 Tex.Crim.App.LEXIS 64,65(1-9-13)                 8-11

## 12/24/14 dated APPENDIX INDEX

Deputy Chris Azwell relevant testimony,                    Appx.1-3

Bullet Trajectory Expert Mark Wright relevant testimony        Appx.3-5

Casey Meadows relevant testimony                    Appx.5-6

State's Closing Jury Arguments excerpts,                Appx.7

Defense's Closing Jury Arguments exceprts,             Appx.7-9

9/20/12 Motion to Withdraw Hearing (missing from appellate record),  Appx.10-19

9/27/12 Motion to Substitute Hearing (same, also missing)      Appx.20-28

Trial Defense Counsel Mr. Boyd's Affidavit            Appx.29-30

"Front-View" Laser Test Photo Suppressed State's Evidence,     Appx.31

"Side-View" Laser test Photo Filed State's Evidence,        Appx.32

7/21/14 issued COA Memorandum Opinion,1-9            Appx.33-41

COA Order Denying En Banc Consideration              Appx.42

COA Notices of filing or not filing Motions,          Appx.43,44

COA Order Overruling Pro-Se Amended motion for Rehearing,     Appx.45

COA Order Denying Pro-Se Motion to Exceed Page Limits,     Appx.46,47

COA Order Refusing to Construe pro-Se Filed Briefs,        Appx.48

3/17/14 Timely Filed Pro-Se Motion Complaining About Appeal Counsel,  Appx.49-52

State's Exs.176 & 179 of Bullet Holes in Front and Side of Car,  Appx.53,54

State's Exs.59,60,78,79,106-07 close-ups of syringes evidence,  Appx.55-57

## STATEMENT OF THE CASE

This is a criminal case appealing the convictions from the 221st Judicial District Court of Montgomery County, Texas, based on a four count indictment alleging in CT.I "threaten" Deputy Chris Azwell by using a vehicle as a deadly weapon under 1st degree felony Penal Code §22.02(a)(2),(b)(2)(B)(Aggravated Threat of a Public Servant) offense, in CT.II "flee" from Deputy Chris Azwell by using a vehicle as a deadly weapon under 3rd degree felony Penal Code §38.04 (b)(2)(A)(Aggravated Evading Arrest) offense, in CT.III "alter,destroy, or conceal" "Syringes" with "intent to impair it's availability as evidence ... related to" a "Possession of Controlled Substance" ... offense" under 3rd degree felony Penal Code §37.09(d)(Tampering With Evidence) offense and in CT.IV the possession of a controlled substance under one gram a state jail felony under Health and Safety Code §481.115(Possession of a Controlled Substance in Penalty Group 1) offense. The indictment also contained five (5) enhancement paragraphs alleging prior convictions.Clerk's Record ("C.R."),39-40.

Appellant pleaded "not guilty" to all counts, Reporter's Record ("R.R."), v.4,p.1, but a jury found him guilty on all counts as alleged in the indictment, made an affirmative finding of deadly weapon in the count II evading arrest count, R.R.,v.9,pp.128-29, found the first three enhancement paragraph allegations "true" and assessed punishments for counts I-III at "life" in TDCJ-CID and for count IV at twenty (20) years in TDCJ-CID. R.R.,v.11,pp211-212. The sentences are running concurrent. This appeal followed.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will be helpful to the Court.This is especially true because this brief has been prepared pro-se and may not be as clear and concise as the Court is used to. This case is complex and important because it involves sheriff's deputy's and prosecutors acting in concert to cover up an excessive use of force by the arresting officer in shooting the Appellant while fleeing in his vehicle from the side of Appellant's car even though Appellant was not endangering the officers or anyone else, the officer falsely testified in trial that Appellant was driving straight at him to cover-up his excessive use of force to arrest Appellant, and was assisted by another deputy expert witness on ballistics who fabricated or suppressed evidence to suppress the existence of State's evidence that conclusively proves the excessive force issue and at the same time conclusively disproves Deputy Azwell's claim Appellant was driving directly at him when he shot Appellant, which is the "front-view" laser test showing bullet trajectory in the record. Appx.31. This appeal is very important to the jurisprudence of Texas caselaw because it will show that the Courts of Appeals will defend the integrity of the Texas trial courts from abuse of police power by perversion of due process. The record is also long and the relevant issues are minute and detailed therein. Oral argument is thus requested, and appointment of appeal counsel is requested for this purpose, or that the Court allow Appellant's inmate legal assistant to argue on his behalf due to his formulation of the appeal arguments and familiarity with the record.

## ISSUES PRESENTED

1. APPEAL COUNSEL VIOLATED DUE PROCESS RENDERRING INEFFECTIVE ASSISTANCE OF COUNSEL AND PREVENTING A MEANINGFUL APPEAL, BY NOT ARGUING ANY MAJOR ISSUE TRIAL COUNSEL ARGUED TO THE JURY, IN FAVOR OF PRESENTING A MERITLESS MIS-TRIAL RULING ARGUMENT OVER APPELLANT'S RECORD FILED OBJECTIONS see post., 1-5;; Appx.49-52(Appellant's timely record filed objections); Appx.29-30(trial counsel's affidavit); 7/21/14 Am.Mot.for Reh'g,4,13; Appx.45(COA "Overruled" jugement)

2. APPEAL COUNSEL VIOLATED DUE PROCESS FOR HAVING AN ACTUAL CONFLICT OF IN-TERESTS IN REPRESENTING APPELLANT see post.,3-4; 7/21/14 Am.Mot.for Reh'g, 4,14-15; Appx.45(COA "Overruled" judgement)

3. TRIAL COUNSEL RENDERRED INEFFECTIVE ASSISTANCE OF COUNSEL BY EMPLOYING A CLEARLY UNSOUND TRIAL STRATEGY OF REVEALING TO THE JURY THAT APPELLANT HAD PRIOR CONVICTIONS DURING THE GUILT PHASE OF TRIAL, DESPITE APPELLANT NEVER TESTIFYING DURING THE GUILT PHASE, AUTHORIZING RELIEF ON THIS RECORD see post.,1-3,¶¶1,2,4,7; Appx.36-37, Mem.Op,4-5(holding trial counsel failed to object to CD video evidence, at R.R.10: State's Ex.2 at 6:55-7:00, 11:00-11:10); R.R.,v.4,pp.92-93,95-96(during voir dire trial counsel admits to a "rap sheet" of "prior convictions")

4. THE COUNT II PENAL CODE §38.04(b) CONVICTION, AS AMENDED BY ACTS 2011, 82nd LEGISLATURE, IS UNCONSTITUTIONALLY VAGUE ON IT'S FACE AND AS APPLIED, BECAUSE THE ALLEGED OFFENSE HAS TWO DIFFERENT VERSIONS OF §38.04(b) WITH DIFFERENT ELEMENTS, ONE BEING A STATE JAIL FELONY AND THE OTHER BEING A THIRD DEGREE FELONY, REQUIRING THIS COURT TO DECLARE THE STATUTE TO BE UNCONSTITUTIONAL, VACATING THE CONVICTION see post.,6-8

5. THE AGGRAVATED THREAT OF A PUBLIC SERVANT BY USE OR EXHIBITION OF A VEHICLE AS A DEADLY WEAPON COUNT AND THE ENHANCED EVADING ARREST BY USE OF A VEH-ICLE AS A DEADLY WEAPON COUNT, AS CHARGED, VIOLATE THE TEXAS AND UNITED STATES DOUBLE JEOPARDY PROHIBITIONS AGAINST MULTIPLE PUNISHMENTS FOR THE SAME CONTINUOUS COURSE OF DRIVING CONDUCT, REQUIRING VACATING THE EVADING ARREST COUNT'S CONVICTION AND DISMISSING THE CHARGE see post.,8-11; C.R.39

6. LEGALLY INSUFFICIENT EVIDENCE OF THE USE OR EXHIBITION OF A DEADLY WEAPON MOTOR VEHICLE. AS NOONE WAS SHOWN TO BE ACTUALLY ENDANGERED BY PROXIMITY TO APPELLANT'S DRIVING, REQUIRING DELETION OF THE DEADLY WEAPON FINDING FROM THE EVADING ARREST JUDGEMENT AND REMAND FOR A NEW PUNISHMENT PHASE TRIAL see post.,11-14; R.R.10: State's Ex.204(deputy's incar. video CD); Appx.38, Mem.Op,6(holding CD video shows not maintaining speed, operating vehicle in unsafe manner, failure to stop and several traffic violations, but NOT FINDING ACTUAL DANGER BY PROXIMITY); Appx.8-9, R.R.,v.9,106-07 (arguing reasonable doubt on deadly weapon finding to jury); R.R.,v.9, pp. 128 lines 12-25, 129 lines 1-10(jury's affirmative finding)

7. LEGALLY INSUFFICIENT EVIDENCE THE ALLEGED "SYRINGES" WERE "RELATED" TO THE ALLEGED "POSSESSION OF A CONTROLLED SUBSTANCE" OFFENSE, AS THE ROADSIDE FOUND SYRINGES BY THEMSELVES DO NOT PROVE ANY ELEMENT OF THE OFFENSE ALLEGED, ARE NOT ILLEGAL OR CONTRABAND, FAILING TO STATE A COGNIZABLE LEGAL THEORY REQUIRING A REVERSAL AND AN ACQUITTAL see post.,15-17; Appx.40, Mem.Op.,8; R.R.,v.9,pp.84,120-21; R.R.,v.6,pp.117,122-23,131,151-52,154-55; Appx.55-57 (close up photos of State's "syringes" evidence)

8. LEGALLY INSUFFICIENT EVIDENCE OF AN AFFIRMATIVE LINK BETWEEN THE ROADSIDE FOUND SYRINGES AND THE APPELLANT, REQUIRING REVERSAL OF CONVICTION AND RENDITION OF AN ACQUITTAL see post.,15-16,18-19; Appx.40, Mem.Op.,8; R.R., v.6,pp.103-04,120-21; R.R.,v.14,p.23(trial counsel's hearsay, no affirmative link and irrelevance objections); R.R.,v.6,pp.120-21,151-52(CSI Everton admits he could not connect any found items to Appellant); R.R.,v.6,pp. 131,151-52,154-55(Crime Scene investigators admit taking syringes back to lab and not forensically testing them, guessing as to contents)

9. LEGALLY INSUFFICIENT EVIDENCE OF USING A VEHICLE TO "THREATEN" DEPUTY AZWELL SINCE THE DEPUTY RAN IN FRONT OF APPELLANT'S VEHICLE FOR 1-2 SECOND ONLY THEN JUMPED OUT OF THE WAY AGAIN, AND THERE IS NO EVIDENCE APPELLANT WAS NOT DRIVING DIRECTLY FOR THE SPACE BEHIND AZWELL'S CAR BEFORE AZWELL RAN INTO THAT SPACE RIGHT IN FRONT OF APPELLANT'S CAR, post.,20-23; Appx.38-39, Mem.Op.,6-7; Appx.1-3, R.R.,v.5,86-90 & R.R.,v.6,14-21(Deputy Chris Azwell testimony excerpts):

10. LEGALLY INSUFFICIENT EVIDENCE OF USING A VEHICLE TO "THREATEN" DEPUTY AZWELL SINCE THE DEPUTY RAN IN FRONT OF APPELLANT'S ALREADY AIMED AND MOVING VEHICLE FOR 1-2 SECONDS ONLY THEN JUMPED OUT OF THE WAY AGAIN UNDER THE CONCURRENT CAUSATION STATUTE AT PENAL CODE §6.04(a) MAKING CLEAR APPELLANT IS NOT CRIMINALLY RESPONSIBLE FOR THE DEPUTY RUNNING IN FRONT OF APPELLANTS ALREADY AIMED AND MOVING VEHICLE WHICH WAS SUFFICIENT IN ITSELF TO CAUSE THE "THREATEN" ELEMENT, AND APPELLANT'S DRIVING AIMED FOR THE SPACE BEHIND AZWELL'S CAR BEFORE AZWELL RAN INTO THAT SPACE MOMENTARILY WAS CLEARLY INSUFFICIENT IN ITSELF TO RESULT IN AZWELL BEING "THREATENED", REQUIRING REVERSAL OF CONVICTION AND RENDITION OF AN ACQUITTAL; see post.20-23; AND SEE #9 above record citations

11. LEGALLY INSUFFICIENT EVIDENCE OF DEPUTY AZWELL "LAWFULLY DISCHARGING" HIS DUTY TO ARREST APPELLANT, BY HIS RUNNING IN FRONT OF APPELLANT'S VEHICLE LONG ENOUGH TO SHOOT APPELLANT AND THEN JUMP OUT OF THE WAY AGAIN, THUS UNREASONABLY CREATING THE "THREAT" ENCOUNTER PROSCRIBED BY THE STATUTE, IN VIOLATION OF USCA 4, THE OPPOSITE OF A VITAL FACT WITHIN THE STATE'S BURDEN OF PROOF, REQUIRING THE COUNT I CONVICTION TO BE REVERSED AND THE RENDITION OF A JUDGEMENT OF ACQUITTAL see post.,20-21,24-25; and see #9,#10 above record citations

12. LEGALLY INSUFFICIENT EVIDENCE OF DEPUTY AZWELL "LAWFULLY DISCHARGING" HIS DUTY TO ARREST APPELLANT, FOR THE SAME REASONS AS STATED IN #11 ABOVE, BUT IN VIOLATION OF TEXAS PENAL CODE §9.51(c) FOR USING EXCESSIVE FORCE IN SHOOTING THE APPELLANT TO ARREST HIM see post.,20-21,25-26; and see #9, #10,#11 above record citations

12. FALSE TESTIMONY THAT APPELLANT WAS DRIVING "DIRECTLY" AT DEPUTY AZWELL, FABRICATED AND SUPPRESSED BULLET TRAJECTORY LASER TEST PHOTO EVIDENCE TESTIMONY BY MARK WRIGHT, AND KNOWING FAILURE OF PROSECUTORS TO CORRECT THIS FALSE, MISLEADING TESTIMONY WHEN IT APPEARED IN TRIAL, IN VIOLATION OF DUE PROCESS, REQUIRING REVERSAL OF CONVICTION AND RENDITION OF AN ACQUITTAL DUE TO NO REMAINING COMPETENT EVIDENCE TO PROVE THE"THREATENED" ELEMENT OF THE OFFENSE see post.,26-31; Appx.37-39, Mem.Op.,5-7; Appx.1 - R.R.,v.5,88-90(Azwell fabricates Appellant is driving "directly" at him when he fired his weapon from in front of Appellant's car); Appx.3-5 - R.R.,v.6,155-71(Mark Wright testimony suppressing existence of "front-

view" laser test photo result, dodging the issue on the record); Appx.31, "Front-View" laser test photo result proving Deputy Azwell shot into Appellant's car from the side thus perjured himself when said he shot from the front of the car)

13. VIOLATION OF APPELLANT'S RIGHT TO CHOICE OF COUNSEL UNDER USCA 6 AND TEXAS CONSTITUTIONAL ARTICLE I SECTION 10, REQUIRING REVERSAL OF THE CONVICTIONS AND REMAND FOR A NEW TRIAL see post.,31-32; C.R.226-31; R.R.,v.12,D.Exs.1-4 Appx.14-16, Sept.20,2012 MTW Hearing,5-7; Appx.23-27 - Sept,27,2012 MTS Hearing,4-8; R.R.,v.14,pp.23-27,30-33,38,47-48,66-71

14. VIOLATION OF APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF CONFLICT FREE COUNSEL UNDER USCA 6, DUE TO CONFLICT BETWEEN MR WARD'S FEE CONTRACT AND HIS DUTY OF LOYALTY OR ZEALOUS ADVOCACY TO APPELLANT CAUSING AN ADVERSE EFFECT, REQUIRING REVERSAL OF THE CONVICTION'S AND REMAND FOR A NEW TRIAL, see post.,31-33; and see #13 above record citations

15. INVOLUNTARY AND UNKNOWING REJECTION OF 35 YEAR PLEA OFFER, REQUIRING RE-VERSAL OF CONVICTIONS AND REMAND FOR NEW TRIAL see post.,31-33; and see #13 above record citations

1. APPEAL COUNSEL MR. ALLEN VIOLATED APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL GUARANTEED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, PREVENTING MEANINGFUL REVIEW OF HIS TRIAL COURT DEFENSES ARGUED TO THE JURY, BY IGNORING SAME IN FAVOR OF A LONE, MERITLESS, WAIVED MISTRIAL CLAIM

## A. Due Process

Appeal counsel violated Appellant's rights to effective assistance of counsel on direct appeal contrary to Due Process, by not arguing the primary issues trial counsel presented to the jury in this trial, which was an outrageous relinquishment of appeal counsel's duty to an indigent appellant represented by appointed appeal counsel, forcing this Appellant to pursue pro-se a motion for rehearing after the Court of Appeals renderred it's predictable judgements against Appellant based on appointed appeal counsel's meritless argument. Evitts v. Lucy,469 U.S.387,396(1985)(right to effective assistance of appeal counsel is grounded in USCA 14's Due Process Clause); Rodriguez v. State,129 S.W.3d 551,562-64(Tex.App.-Hous.[1 Dist.]2004 pet ref'd)(after an appointed appeal counsel argued numerous meritless issues and obtained an affirmance of aggravated robbery conviction, this writer assisted pro-se inmate to file motion for rehearing arguing ineffective assistance of appeal counsel, and no evidence appellant knew his partner had a concealed weapon on him when entering and exiting convenience store, with appellant assisting in getaway as driver; rev'g conviction, renderring acquittal; court ordered previously unpublished opinion of appointed appeal counsel's resulting opinion, together with pro-se inmate's motion for rehearing results published, merely commenting on raised ineffective assistance of counsel claim but not ruling on it); Garcia v. State,57 S.W.3d 436,440(Tex.Crim.App.2001)(approving of ineffective assistance of counsel claims being resolved on direct appeal, when no competent attorney would have engaged in record based deficient performance of counsel).

## B. Complaint Was Timely Made in the Court of Appeals
## About Appointed Appeal Counsel's Deficient Performance

1. On December 20,2013 appeal counsel filed an "Appellant's Brief" arguing in one issue the trial court erred by failing to grant trial counsel's motion for mistrial, when the State referred to Appellant's prior convictions unrelated to the current matter, while cross examining a defense witness. ibid.,6.

2. On February 10,2014 the State responded, arguing the trial court did not err because trial counsel did not object to the State's previous introduction of Appellant's prior convictions in a CD video showing Appellant being interviewed by police and admitting when he allegedly committed these offenses he was "on drugs" and "on thirty years parole", and additionally because trial counsel had already informed the jury pool during voir dire that Appellant had a "rap sheet" of "prior convictions" which even trial counsel would likely not be able to overcome. See, 02/10/14 filed State's Brief,5-7(citing record).

3. On July 22,2014 trial counsel executed an affidavit swearing under oath he called and went to see many times appeal counsel to help with this appeal, but appeal counsel disregarded trial counsel, put him off and "did not even have the good sense or courtesy or even the interest of his client to consult" with trial counsel on "the number of errors" trial counsel "raised in trial", further complaining that appeal counsel had "no excuse for not raising some if not all of the errors in trial" trial counsel preserved, in appeal counsel's single issue appellant's brief. Appx.29-30(Affidavit by Walter Boyd,1-2).

1

4. On March 17,2014 Appellant timely filed a pro-se motion complaining about appeal counsel's "only argument" having disregarded his many trial court arguments, by presenting only a meritless mistrial motion claim, that should have been presented as a record based ineffective assistance of counsel claim based on the same facts and relevant record excerpts, and also complaining about being denied copies of the appellate record to actively assist appeal counsel with, which resultingly prevented Appellant from participating in his own appeal and denied him a meaningful appeal contrary to Due Process. Appellant specifically complained appeal counsel's obviously "non-meritorious argument that the State elicited Appellant's prior convictions ... without even discussing ... defense counsel employed this tactic by inviting such error ... mak[ing] appeal counsel's efforts seem like the boilerplate work of hacks ... like the equivalent of an Anders brief [see, Jiminez v. Quarterman,129 S.Ct.681(2009) for a discussion of Anders briefs in direct appeals] without the constitutionally protected right to file a pro-se brief ... which may be the point" of appeal counsel's filing of an obviously deliberately meritless appellant's brief. Appellant informed the Court of Appeals he thus had "no confidence in his appeal attorneys."Appx.49-52 ;(03/17/14 filed Pro-Se Motion,1-4[w/att'd clerk stamped letter from Appellant to appeal counsel,making requests]; see also, related pro-se motions filed April 23,2014, April 30,2014 & May 8,2014. "Appeal counsel Mr. Allen refused to present and argue ... anything for Martin at his request ." See, 07/21/14 filed Amended Motion for Rehearing,4.

5. On May 21,2014 the Court of Appeals affirmed the trial court's judgements, rejecting appeal counsel's single issue erroneous mistrial motion ruling claim, by adopting one of two State's rebuttal arguments, that trial counsel failed to object to previously State admitted CD video evidence showing Appellant admitting to police on the date of the offense he was "on drugs" and "on thirty years parole", making the State's later visitation of this issue as raised on appeal "cumulative" and "not prejudicial". Appx.36-37, Mem.Op.,4-5. The Court did not discuss the other State's argument, that trial counsel poisoned the entire jury pool by admitting during voir dire that Appellant had a "rap sheet" of "prior convictions" which suggested "a less than perfect past". 02/10/14 filed State's Brief,6-7,9.

6. The Court of Appeals abused it's discretion by failing to conduct a hearing for Appellant when he first raised the issues of appeal counsel deficient performance on appeal by his filed appellant's brief. The Texas Court of Criminal Appeals has held it will consider pro-se contentions raised in a brief on appeal even when represented by appeal counsel who has already filed an appellant's brief, in the interests of justice. See, Rudd v. State,616 S.W.2d 623,625(Tex. Crim.App.1981); accord, Satterwhite v. Lynaugh,886 F2d 91,93(5th Cir.1989). In Martinez v. State,163 S.W.3d 88(Tex.App.-Amarillo 2004), on appeal after remand 163 S.W.3d 92(Tex.App.-Amarillo 2005), the appellant complained about his appeal counsel's appellate brief's omission of issues that he should have brought up, denying him effective assistance of counsel on first appeal, and requested to "abate the appeal" and to "send appellant a copy 'of his transcripts'", and the court of appeals issued an abate and remand order directing the trial court to conduct a hearing as to whether appellant would be allowed to proceed with his appeal pro-se, with another appeal lawyer or with the same appeal lawyer. id.,163 S.W.3d @ 89-91(applying, Rudd,supra.). In the case at bar, the Appellant also timely filed his March 17,2014 objections to appeal counsels appellant's brief, also omitting obvious issues from his defense in trial, also asking for provision of and not receiving copies of the appellate record to assist appeal counsel, and went one step further than the Martinez appellant

2

by actually attempting to brief the issues appeal counsel omitted in two 57 & 15 paged motions for rehearing. These motions raise substantial arguments as implicating compelling Due Process and interest of justice concerns : whether Appellant received the "meaningful appeal" guaranteed by Due Process due to appeal counsel's renderring of ineffective assistance of counsel. See, Robinson v. State, 16 S.W.3d 808,813(Tex.Crim.App.2000)(vacating and remanding to court of appeals for consideration in the first instance of ineffective assistance of counsel). While the instant Appellant's procedural posture is slightly different from that in Martinez, in that no court has recognized Appellant's complaints about his appeal counsel's brief omitting issues that should have been raised, the same considerations of justice and Due Process are at issue, hence the result should be the same, in that the instant Appellant should be allowed to return to the direct appeal briefing stage of the case, and be given the opportunity to proceed either pro-se as he has requested, or with the assistance of new appointed appeal counsel. Martinez,163 S.W.3d @ 89-91.

7. Supporting this result is the facts that based on appeal counsel's mistrial arguments facts, and the easily accomplished further research done on the issue as the State shows in it's Brief, ANY competent appeal counsel not trying to deliberately lose his client's appeal could have argued a direct appeal record based ineffective assistance of trial counsel claim, for trial counsel's employing the clearly unsound trial strategy of revealing to the entire jury pool during voir dire and jury panel during trial, that Appellant had prior convictions, and by not objecting to the State's introduction of CD video evidence showing Appellant admitting to the police he was "on drugs" on the day of these offenses, and was "on thirty years parole" as well, during the guilt/innocence phase of trial. The Court of Appeals has already adopted as fact that the State previously introduced CD video evidence as described. Appx.,36-37,Mem.Op.,4-5. By also now adopting as fact that trial counsel poisened the entire jury pool with his voir dire comments as described, provides the full fledge basis for a meritorious record based direct appeal ineffective assistance of counsel holding. Robertson v. State,187 S.W.3d 475(Tex.Crim.App.2006),on remand, see, Robertson v. State,214 S.W.3d 665,667-68(Tex.App.-Waco 2007 no pet.)(IAC holding finding the jury heard evidence about two prior convictions "that the State would not have been able to develop without Robertson's counsel 'opening the door' to such testimony."); Johnson v. State,172 S.W.3d 6, (Tex.App.- Austin 2005)(IAC holding where trial counsel's failure to object to video evidence's admissability was element of holding); Stone v. State,17 S.W.3d 348, 352-53(Tex. App.-Corpus Christi 2000)(IAC holding finding trial record sufficient to show IAC based on trial counsel's offering of prior conviction that would not have come in otherwise, citing record from voir dire and bench conference); see n.1. The instant Appellant suffered the same deficient performance of counsel here, as in these above cited cases. Additionally, the Appellant suffered severe prejudice from these errors given the jury found him guilty as charged on all counts, and issued the maximum sentences allowable of three life sentences and one twenty year sentence. Accordingly, ALL Appellant's convictions should be reversed and remanded to the trial court for new trials. See, Strickland v. Washington,466 U.S.668,694(1984); Robertson,214 S.W.3d @ 668-69; Stone.17 S,W,3d @ 253-54. Appellant is entitled to procedural and substantive relief on appeal. Rodriguez,129 S.W.3d @ 562-64. Therefore, Appellant should be allowed to return to the Court of Appeals, for a ruling on the merits of his indicated issues. Robinson,16 S.W.3d @ 813; Martinez,163 S.W.3d @ 89-91; Tex.R.App.P.47.1,49.

1. See also, Lyons v. McCotter,770 F2d 529,534(5th Cir.1985)(holding failure to object to admission of defendant's past criminal record could have no strategic basis as it could not be considered sound trial strategy; jury may have convictedd because of the prior convictions; revg conviction)

3

8. Finally, further supporting returning this case to the direct appeal stage, under the reasoning of Martinez,163 S.W.3d @ 89-91, Appellant raised his right to represent himself pro-se in the Court of Appeals, by his citations to the cases of Jiminez v. Quarterman,129 S.Ct.681,683-87(200() and Anders v. California,386 U.S.738(1967). See Appx.49-52, 03/17/14 filed Pro-Se Motion,2,4. The Court of Appeals below disregard of the pro-se representation on appeal issue, probably violated Tex.R.App.P.47.1 requiring a vacate and remand order. Bledsoe v. State,178 S.W.3d 824,827-28(Tex.Crim.App.2005).

9. Appellant has raised or tried to raise several structural errors below, such as false testimony, suppression of evidence, failure to correct false testimony in trial knowingly when it appeared, and conspiring to cover-up the arresting officer's unnecessary shooting of Appellant amongst other trial errors. See, post., throughout; and see, 06/23/14 Motion for Rehearing,1-57; 07/17/14 Amended Motion for Rehearing,1-16. These issues are structural errors, precluding harmless error analysis, and require automatic reversals of any convictions. Kyles v. Whitney,514 U.S.418,435(1995); Arizona v. Fulamonte,499 U.S.279,310 (1991); U.S. v. Bagley,473 U.S.667,682(1985). Therefore, under Appellant's pro-se right to represent himself on appeal, in view of appointed appeal counsel Mr. Allen's boilerplate appellant's brief ignoring every major issue raised by Appellant in his jury trial below, his pro-se rights should be implemented by this Court. Bledsoe,178 S.W.3d @ 826-28(holding appellant was entitled to remand to court of appeals and trial court, for appointment of new appeal counsel); In re Schulman,252 S.W.3d 403,408(Tex.Crim.App.2008)(Anders case):Martinez, 163 S.W.3d @ 89-91, appeal after remand, 163 S.W.3d 92(Tex.Crim.App.2005)(on 2nd appeal after trial court remand for appointment of new appeal counsel, same original appeal counsel obtained reverse and remand for new trial result). This result should follow because Appellant's constitutional right to pro-se representation on direct appeal was unconstitutionally disregarded totally, which is in itself a "structural error" requiring vacate and remand. Schulman, supra; Bledsoe,supra. Tex.R.App.P.44.2(a).

C. Appeal Counsel Mr. Allen Renderred Ineffective
Assistance of Conflict Free Appeal Counsel
By Representing Both Montgomery County and
Appellant, at Practically the Same Time

1. Attorney Mr. Christopher Neal Allen, State Bar No.24031816, was appointed as appeal counsel due to Appellant's indigency. C.R.,235(notice of appeal signed by Mr. Allen); R.R.,v.13,pp.5-9.13.18-20(trial judge states she is going to appoint Mr. Allen as appeal counsel); R.R.,v.14,pp.21,71(trial judge appoints Mr. Allen during trial counsel's motion for new trial); and see, Appx. - 11/01/13 COA Order (COA Order is directed only to Mr. Allen). According to the Texas State Bar Directories for 2010 and 2014, in 2010 Mr. Allen was an assistant Montgomery County attorney, and in 2014 Mr. Allen was an assistant Montgomery County district attorney. Montgomery County is the Texas political subdivision that brought the instant felony prosecution against this Appellant. Mr. Allen filed his authored Appellant's Brief in this case on December 10,2013, having the foresight to get another attorney at law Mr. Jeremy Finch State Bar No. 2405964 to co-sign this document as a nominal co-author. Mr. Allen got Mr. Finch to simply co-sign this brief in order to stave off any independant inquiries into his representing this Appellant given his prior and subsequent representation of Montgomery County being so extensive and significant that it presents a conflict of interest for Mr. Allen to represent the Appellant in this appeal.

4

2. When confronted with possible conflicts of interest, a criminal court must take adequate steps to ensure that criminal defendants receive a fair trial, or in the instant case a fair appeal. Wheat v. U.S.,486 U.S.153,160-62(1988). The United States Constitution confers a right to effectve assistance of conflict-free counsel. Perillo v. Johnson,205 F3d 775(5th Cir.2000). An actual conflict exists when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused, by choosing between or blending divergent or competing interests of his client. Id. @ 781. An "adverse effect" is established by evidence that a plausible alternative defense stategy or tactic could have been pursued but was not, requiring prejudice to be presumed. id. @ 781-82. Where a prior representation by defense counsel involves a formal and substantial attorney-client relationship, a finding of actual conflict is more likely. The question turns on whether the character and extensiveness of the prior representation was such that counsel was prevented by his competing interest in the welfare of the prior client, from vigorously promoting the welfare of his current client, in this case the instant Appellant. id. @ 799. See e.g, Ex parte Morrow,952 S.W.2d 530(Tex.Crim.App.1997)( recognizing validity of conflict of interest claim against defense counsel). The record in the case at bar clearly infers Mr. Allen "nefariously chose to compromise his efforts" in representing this Appellant. Beets v. Scott,65 F3d 1258,1277(5th Cir 1995)(en banc).

3 Clearly, Mr. Allen has an extensive and formal attorney-client relationship with Montgomery County, not only before representing Appellant, but after representing Appellant, raising the nefarious inference that Montgomery County rewarded Mr. Allen for throwing Appellant's case to the lions, by promoting him from assistant county attorney to assistant district attorney. Indeed, this conflict cound'nt be clearer since during the pendancy of the appeal in Beaumont, between 12/10/13 when Mr. Allen filed his brief, and 5/21/14 when the case was decided by the Court of Appeals for a decision on the briefs, Mr. Allen was actively representing the Appellant not having withdrawn from representing him on the record, and representing the Montgomery County District Attorney's office, outrageously enjoying the fruits of his co-operation with the other Mongomery County court officers that conspired to cover-up the unconstitutional and illegal shooting of the Appellant merely to arrest him while fleeing from arrest and unarmed. There can be no doubt that Mr. Allen deliberately lost Appellant's appeal, when you compare Mr. Allen's single issue raised in his brief, to this Appellant's briefed complaints in his motions for rehearing, as supported by trial counsel Mr. Boyd's submitted affidavit at Appx.28-29 severely criticizing Mr. Allen's refusal to accept his assistance with this appeal and total failure to argue any major issue Mr. Boyd litigated in trial. The issues Appellant raised pro-se in his motions, and herein throughout, are arguable, plausible alternative appeal strategies, that should have been pursued, but were not despite Appellant's record preserved attempts to communicate with Mr. Allen and actively participate in this appeal being rebuffed by deliberate indifference. It appears that Mr. Allen chose Montgomery County over Appellant, in crafting his appellant's brief in this case, adversely affecting Appellant's Due Process rights to effective assistance of conflict-free counsel and to any meaningful appeal of his trial court defenses and strategies. Due Process concerns and the interest of justice require this Court to give this Appellant an opportunity to be heard on his arguments and authorities in direct appeal, by a return to the direct appeal process and rebriefing being ordered. Tex.R. App.P.47.1,49.

2.   PENAL CODE §38.04(b) AS AMENDED BY ACTS 2011 82nd LEGISLATURE MAKES THE ALLEGED OFFENSE IN THIS CASE BOTH A STATE JAIL FELONY AND A THIRD DEGREE FELONY, RENDERRING THE STATUTE UNCONSTITUTIONALLY VAGUE AS WRITTEN OR AS APPLIED, REQUIRING THIS COURT TO DECLARE THE STATUTE UNCONSTITUTIONAL, VACATE THE CONVICTION AND DISMISS THE INDICTMENT

Appellant's Penal Code §38.04(b) conviction was alleged to have occurred on or about March 6, 2012, by fleeing from Deputy Azwell while using a vehicle while in flight as a deadly weapon, and there were no allegations of any prior §38.04(b) convictions. See C.R., 40 - Indictment No.12-03-02604-CR(count II). Therefore, the 2011 amended version of §38.04(b) applies to Appellant's case. This statute has been the subject of much legislative tinkering. One prior version of §38.04(b), before the 2011 amendments, provided for Appellant to only be subjected to a state jail felony offense "because he used a vehicle while in flight and has no prior conviction for evading arrest." Ex parte Carner 364 S.W.3d 896, 899 & n.2(Tex.Crim.App.2012)(opinion on pre-2009 amendments). Thus, a prior §38.04(b) conviction had to be alleged in the indictment and proven in the guilt phase of trial, or the conviction had to be reversed. See, Carlton v. State, 176 S.W.3d 231, 233-36(Tex.Crim.App.2005); Griego v. State, 345 S.W.3d 742(Tex.App.-Amarillo 2011). The Legislature's intent in passing the 2009-11 version of §38.04(b) was to punish a person who evades arrest or detention with a prior conviction under this statute more severely than a first time offender, irrespective of whether a vehicle was used. Carner, 364 S.W.3d @ 899. The Court noted in dicta that "now it is a third degree felony if an offender used a vehicle to evade ... regardless of whether he has a prior conviction for evading." id @ n.3. However, the Court did not recognize that this statute's 2011 amendment contains two versions of the provisions applied herein.

## §38.04 Evading Arrest or Detention

* * *

(b) [Version 1; As amended by Acts 2011, 82nd Leg., chs.391 & 839] An offense under this section is a Class A misdemeanor, except that the offense is:

(1) a state jail felony if:

(A) the actor has been previously convicted under this section; or

(B) the actor uses a vehicle ... while the actor is in flight and the actor has not been previously convicted under this section;

(2) a felony of the third degree if:

(A) the actor uses a vehicle ... while the actor is in flight and the actor has ... been previously convicted under this section; or

(b) another suffers serious bodily injury ... while the actor is in flight.

* * *

* * *

(b)[Version 2; As amended by Acts 2011, 82nd Leg., ch.920] An offense under this section is a Class A misdemeanor, except that the offense is:

(1) a state jail felony if the actor has been previously convicted under this section;

(2) a felony of the third degree if:

(A) the actor uses a vehicle while the actor is in flight;

(B) another suffers serious bodily injury ... while the actor is in flight; or

(C) the actor uses a tire deflation device against the officer while the actor is in flight; or

(3) a felony of the second degree if:

(A) another suffers death ... while the actor is in flight; or

(B) another suffers serious bodily injury as as a direct result of ... the actor's use of a tire deflation device while ... in flight.

* * *

6

Under Version 1, Appellant's use of a vehicle to commit the offense is a <u>state jail felony</u>. See Acts 2011,82nd Leg.,ch.391(S.B.496),§1(approved by Governor 6-17-11). Under Version 2, Appellant's use of a vehicle to commit the offense without a prior §38.04 conviction is a <u>third degree</u> felony. See Acts 2011,82nd Leg.,ch.920(S.B.1416),§3(approved by Governor 6-17-11). Clearly, both versions became effective on September 1,2012 , each without reference to the other. See Tex.Penal Code §38.04(West's 2012-13 Pocket Part),Historical and Statutory Notes on 2011 Legislation. This Court's <u>Carner</u>,364 S.W.3d @ 899 n.6 dicta merely recognizes version 2's 3rd degree felony designation of the offense, without recognizing version 1's state jail felony designation of the offense and the clear conflict created in this single statute as to the elements of and penalties assigned to Appellant's alleged §38.04(b) offense.

2. Appellant argues §38.04(b) is unconstitutionally indefinite and uncertain on due course of law grounds hence must be held void from inception. <u>Harrell v. State</u>,165 Tex.Crim.384,385-87,314 S.W.2d 590, 590-92(1958). Alternatively the statute is unconstitutionally vague as written and applied renderring it void from inception. USCA 5,14. Because the 2011 version of §38.11(b) is void, the former 2009 version remains in effect for purposes of Appellant's conviction. See e.g., <u>Carner</u>,364 S.W.3d @ 899("After the 2009 amendments became effective , a person was guilty of a state-jail-felony evading arrest if the actor has been previously convicted of evading arrest or if he used a vehicle while in flight and has no prior conviction for evading arrest."); <u>Ex parte Demmitt</u>,664 S.W.2d 725,726(Tex.Crim.App.1986)(holding when controlled substance law was held unconstitutional as written, former version of statute remained in effect for Demmitt's case).

3. Appellant's instant third degree felony conviction under §38.04(b) was enhanced by prior convictions. The jury issued the maximum punishment of "life" in prison, in this case. Because the 2011 versions of §38.11(b) are unconstitutionally indefinite, uncertain and vague as written, the former 2009 version of the §38.04(b) applies here which makes Appellant's offense a state jail felony and having a maximum enhanceable range to punishment of 20 years in prison clearly much less than life in prison. Because Appellant was punished by the jury in this case, he is entitled to a reversal of the punishment imposed in his case, and a remand to the trial court for a new punishment phase jury trial. See Tex.R.App.P.44.2; <u>Clay v. State</u>,240 S.W.3d 895,905(Tex.Crim.App.2007) (requiring appellate court to be persuaded beyond a reasonable doubt that the jury's verdict on punishment would have been the same regardless of the error).

4. To the extent that this issue may not be raised for the first time in this appeal, <u>Karenev v. State</u>,281 S.W.3d 428(Tex.Crim.App.2009), Appellant argues the trial court below did not give trial counsel Mr. Boyd a reasonable time or opportunity to examine the jury charges to formulate any unconstitutional as written arguments for this evading arrest charge. See R.R.,v.9,pp.50-54. Mr. Boyd expressly stated he had "about 12 objections" to the evading arrest jury charges, <u>id</u>.,p.61, in a context of presenting unconstitutional statutory provisions arguments. <u>id</u>,pp.59-62. Mr Boyd informed the trial court he had not had enough time to formulate his objections to the evading arrest charge because of the trial court's denial of a reasonable time to formulate objections to the jury charges. <u>id</u>.,p.61. Therefore, Appellant should be excused from raising an unconstitutional statute objection in this factual context. <u>Estrada v. State</u>,313 S.W.3d 274,287(Tex.Crim.App.2010); <u>Kesaria v. State</u>,189 S.W.3d 279, 282(Tex.Crim.App.2006); <u>Cobb v. State</u>,95 S.W.3d 664,666(Tex.App.-Hous.[1 Dist]2002, no pet). Alternatively, Appellant argues trial counsel Mr. Boyd's failure to preserve this issue in the trial court was blatant ineffective assistance of

counsel on this record. Cannon v. State,252 S.W.3d 342,347(Tex.Crim.App.2008); Robinson v. State,16 S.W.3d 808,813(Tex.Crim.App.2000). Accordingly, this issue is properly reviewable in Appellant MArtin's case. See Tex.R.App.P.Ann., Rules 33.1, 38.9(West's 2011 ed.). Tex.R.App.P.44.2(a).

**3. THE AGGRAVATED THREAT OF A PUBLIC SERVANT COUNT AND ENHANCED EVADING ARREST COUNT, AS CHARGED, VIOLATE THE TEXAS AND UNITED STATES DOUBLE JEOPARDY PROHIBITIONS AGAINST MULTIPLE PUNISHMENTS FOR THE SAME CON- TINUOUS COURSE OF CONDUCT, REQUIRING VACATING THE ENHANCED EVADING ARREST COUNT'S CONVICTION AND SENTENCE AND DISMISSING THE CHARGE**

I. Appellant's four count indictment alleges in pertinent parts as follows:

Count I
"...while using or exhibiting a deadly weapon, to wit: a motor vehicle, intentionally or knowingly threaten C. Azwell, a public servant act- ing in the lawful discharge of an official duty, with imminent bodily injury, and the Defendant knew C. Azwell was a public servant."C.R.,39.

Count II
"...intentionally flee from C. Azwell, a person the defendant knew was a peace officer attempting lawfully to arrest or detain the defen- dant, and the defendant used a vehicle while ... in flight, And ... the Defendant did then and there use or exhibit a deadly weapon, to wit: a motor vehicle." C.R.,39.

Count I would not require proof of any fact that Count II does not, as C. Azwell being threatened or endangered by Appellant's driving in Count II is implied or imputed by Count I. Zuliani v. State,335 S.W.3d 213,218(Tex.App.-Austin 2011), aff'd & remanded for further proceedings, 353 S.W.3d 872, on remand, 383 S.W.3d 289,297(Tex.App.-Austin 2012 pet ref'd)(citations omitted); Blockbur- ger v. U.S.,284 U.S.299,304(1932); Williams v. State,No.03-06-00039-CR(Tex.App.- Austin 2007). The State's position on the basic facts of this case is that Deputy Azwell's pursuit of Appellant began on a freeway, led to a dead end street in a rural neighborhood, where Azwell shot Appellant in his chest while he was "continuing his flight" in his car, resulting in Appellant being arrested by surrendering. See 02/10/2014 filed State's Brief,1-2,8-9; Appx.1-7 R.R.,v.5, p.90(Azwell's testimony that he shot Appellant on the dead end street while Appellant continued to evade). This uncontradicted evidence shows that Appellant committed a single continuous act of evasive driving, which as a matter of law and Texas criminal appeal precedents, cannot be converted into seperate crimes by employing "stop-action" prosecution pleadings. Hobbs v. State,175 S.W.3d 777,779-81(Tex.Crim.App.2005); and see, Zuliani,383 S.W.3d @ 295 n.5(using "stop-action" quote). Here, the Count I aggravated "threat" to Azwell is based on the SAME, CONTINUOUS ACT OF RECKLESS EVASIVE DRIVING constituting the Count II "flee[ing]" from Azwell allegations. Therefore, these counts, as charged, violate the prohibition against Double Jeopardy, if based on the same conduct. Zuliani,335 S.W.3d @ 218[citing, Blockburger,284 U.S. @ 304], aff'd, 353 S.W.3d 872(Tex.Crim.App.2011). Indeed, only Deputy C. Azwell and noone else is named in both counts I and III, supporting a Double Jeopardy multiple punishments conclusion here. Williams,supra.[citing, Ex parte Hawkins,6 S.W.3d 554,556,561 (Tex.Crim.App.1999 & Berger v. State,104 S.W.3d 199,205(Tex.App.-Austin 2003, no pet)] ("However, in this case, Williams was indicted for a single offense involving a single victim, Alejandro Caterexa. The State did not name Claudio Caterexa as a victim in either count of the indictment.").

8

**2.** The Court of Appeals original, unpublished opinion has already rejected the State's position that other roadway traffic had to pull to the shoulder to allow the Appellant and his police pursuers to pass. Compare, 02/10/14 filed State's Brief,1(claiming the facts but making no deadly weapon argument), with, Appx.,38 - 06/27/14 Mem.Op.,6(finding Appellant committed several traffic violations, admitted he was guilty of "evading arrest" per-se, but without comment on if his driving was actually dangerous due to proximity to another person). There is no evidence in the record to meet the State's burden to prove beyond a reasonable doubt the "actual endangerment" of any person due to "proximity". Drichas v. State,219 S.W.3d 471,475-77(Tex.App.-Texarkana 2007)(holding "the mere existence of some other motorist somewhere in the roadway" is insufficient evidence of a deadly weapon motor vehicle allegation, as "an unspecified proximity is necessary to show that actual danger existed, even though no person was actually endangered."),pet ref'd[on remand from, Drichas v. State,175 S.W.3d 795,799(Tex.Crim.App.2005)]; and, Callison v. State,218 S.W.3d 822,827(Tex.App.-Beaumont 2007)[citing, Cates v. State,102 S.W.3d 735,738(Tex.Crim.App. 2003)]. Thus, the original unpublished Court of Appeals opinion implicitly rejects the State's trial arguments in support of a deadly weapon motor vehicle finding that Deputy Azwell was almost run over by Appellant's driving directly at him, Appx.,7 - R.R.,v.9,pp.82-83,115-16, that Deputy Azwell felt "threatened" by this alleged driving directly at him conduct, R.R.,v.6,pp.30,100, whereas trial counsel had argued Azwell was NOT threatened, that testimony was false, the motive being to cover-up Azwell's unnecessary shooting of Appellant in the chest through his passenger side window to arrest him, Appx.,7-9 - R.R.,v.9,pp. 96,98,100, hence there was reasonable doubt Appellant tried to actually endanger anyone. Appx.,8 - R.R.,v.9,p.106-07. Because almost all of the evidence and trial court arguments focus upon Deputy Azwell being actually endangered and threatened by Appellant's continuous act of criminal evasion by vehicle, the State violated the Double Jeopardy prohibition against multiple punishments by indicting, prosecuting and convicting Appellant for both threat of Deputy Azwell by use or exhibition of a deadly weapon motor vehicle, and, evading arrest by fleeing from Deputy Azwell by use of a vehicle as a deadly weapon. Zuliani,335 S.W.3d @ 218-19, aff'd, 353 S.W.3d 872(Tex.Crim.App.2011), on remand reaching same result, 383 S.W.3d 289(Tex.App.-Austin 2012 pet ref'd); Hobbs,175 S.W.3d @ 779-781(single continuous criminal act of evasive driving cannot be converted into seperate crimes by mere "change in locomotion").

**3.** The Texas Legislature has expressed it's intent to allow the multiple punishments for an unenhanced evading arrest by use of a vehicle charge, Penal Code §38.04(d)(as amended, added 2011), and one court has held an enhanced by Tex.Code Crim.Proc.art.42.12,§3g(a)(2) evading arrest by use of a vehicle as a deadly weapon charge does not violates Double Jeopardy within the scope of those two statutes alone, Murphy v. State,01-08-00768-CR,01-08-00659-CR,2010 Tex.App.LEXIS 1953 at **16-17(Tex.App.-Hous.[1 Dist.]4-22-10 pet ref'd 2x); the instant case is distinguishable as not involving the two statutes at issue in Murphy, but the three statutes of Penal Code §22.02(a)(2)(b)(2)(B), Penal Code §38.04(b)(2)(A) and Code Crim.Proc.art.42.12,§3g(a)(2). In a strikingly similar three statute enhancing scheme case, the Fifth Circuit Court of Appeals held while there was a clearly expressed Congressional intent to permit multiple punishments for the ppedicate offense (mail or wire fraud) enhanced by the use of fire there was no Double Jeopardy violations in that context (similar to Murphy,supra.) but went on to hold "it is unclear whether Congress intended the enhancement in §844(b) to apply to every arson offense", requiring a Blockburger analysis. See, U.S. v. Severns,559 F3d 274,286,289-90 & nn.52,53, 82(5th Cir.2009). The Court of Appeals concluded the "unit of prosecution"

involved "was a single use of a single firearm" imposing multiple punishments, and therefore was barred under it's Federal application of Blockburger and the Double Jeopardy Clause. id.,559 F3d @ 291; see, Zuliani,383 S.W.3d @ 298 (searching for the "best indicators of the allowable unit of prosecution pre-scribed by the Legislature."). Given that there is no similar Texas case inter-preting three statutes, the Severns analysis should be applied here. And since under Hobbs,175 S.W.3d @ 779-81 Appellant's single continuous act of evasive driving cannot be converted into seperate crimes, as was done in the instant case, this Court should also conclude that Appellant's single use of a single motor vehicle invokes no clear Texas Legislative intent to impose multiple pun-ishments in the instant case requiring the Severns result.

**4.** Relief is also required under the eight (8) "Ervin-Factors" test. See, Zuliani,353 S.W.3d 872, remanded, 383 S.W.3d @ 295-97[both cases citing Ex parte Ervin,991 S.W.2d 804,814(Tex.Crim.App.1999)]. Factors 1,3 & 4 could sup-port the inference that the Legislature intended Appellant's charged offenses to be punished seperately, because the evading arrest and threat of a public servant charges are in seperate statutory sections, they are not named similarly and evading arrest by use of a vehicle as a deadly weapon while in flight is a lesser degree of offense that threat of a public servant by use of a vehicle as a deadly weapon. Compare, Penal Code §38.04(b)(2)(A)(3rd degree felony), with, Penal Code §22.02(a)(2)(b)(2)(first degree felony); Zuliani,383 S.W.3d @ 298. However, factors 2,7 & 8 do not support such an inference. id.(noting the Leg-islature must make manifest it's intention to punish a single act twice). The 2nd factor is inapplicable because offenses listed in seperate statutory sect-ions cannot be stated in the alternative. id. The 7th factor, being the Block-burger test, suppports the conclusion that the Legislature intended this Appel-lant's single continuous act of evasive driving to be only punished once. See, infra., and, Zuliani,383 S.W.3d @ 298[citing, Zuliani,335 S.W.3d @ 218-19]. Finally, there is nothing in these three statutes legislative histories to indicate that the Texas Legislature intended these offenses, as charged, to be punished seperately. Therefore, the instant analysis result hinges on the 5th and 6th Ervin Factors, i.e., whether the offenses share a common focus, and whether that focus indicates a single instance of Appellant's conduct. The "focus" or "gravamen" of these two offenses will indicate the "allowable unit of prosecution prescribed by the Legislature." id. Analyzed are whether the two offenses focus on being a "result of conduct" crime where unspecified con-duct is criminalized because of it's result (i.e., aggravated assault causing serious bodily injury), a "nature of conduct" crime criminalized because the nature of the act itself is unlawful (i.e., assault by threat) or a "circumstan-ces surrounding the conduct" crime where otherwise innocent behavior becomes criminal due to the circumstances under which it is done. id.[citing, Huffman v. State,267 S.W.3d 902,907(Tex.Crim.App.2008), McQueen v. State,781 S.W.2d 600,603 (Tex.Crim.App.1989) & Johnson v. State,364 S.W.3d 292,298(Tex.Crim.App.2012)]. Some offenses contain two focus elements and the question becomes which aspects of the statutes predominates. id.[citing, Huffman,supra.].

**5.** Evading arrest by use of a vehicle in a dangerous manner is not focussed on the result of the driving, since the offense is committed regardless of whether dangerous driving causes any harm. Murphy,2010 Tex.App.1EXIS at *13 Rather, this offense is a nature of conduct issue because evading arrest is unlawful regardless of the consequences, and a circumstances of conduct issue because evading arrest by driving dangerously is a circumstance meant to be criminalized. id.(distinguishing between "reckless" and "dangerous" driving).

**6.** Threatening a public servant by use of a vehicle is not focussed on the result of the threat. It is irrelevant if a public servant actually felt threatened. Dobbins v. State,228 S.W.3d 761,766-67(Tex.App.Hous.[14 Dist.]2007)[citing Olivas v. State,203 S.W.3d 341,342-51(Tex.Crim.App.2006)]. Rather this offense is also a nature of the conduct issue because assault-by-threat as the basic underlying offense is a nature of the conduct offense, Zuliani,383 S.W.3d @ 298 [citing, Marinos v. State,186 S.W.3d 167,174(Tex.App.-Austin 2006 pet ref'd)]and also a circumstances currounding the conduct issue because this offense must be committed under circumstances that put a public servant under threat of imminent bodily injury. E.g., Zuliani,383 S.W.3d @ 299.

**7.** Therefore, the focus or gravamen of these two offenses indicates a single continuous instance of conduct, since the nature and circumstances of Appellants driving form the focus or gravamen of the offenses, and a single continuous act of evasive driving cannot be converted into seperate crimes by the State electing in one count to prosecute a threat or danger to Deputy Azwell specifically and electing in a second count to prosecute a danger to the general public or Deputy Azwell, by "stop-action" prosecutions. Hobbs,175 S.W.3d @ 779-81; Zuliani,383 S.W.3d @ 299[citing, Huffman,supra., Fernandez v. State,316 S.W.3d 354,369(Tex.App.-Ft. Worth 2010 no pet)(dissent) and Ervin,supra.]. Accordingly, under a straight Federal Blockburger test as applied in Severns, the "clear expression" test of the "modified" Blockburger analysis applied in Texas caselaw, OR THE "Ervin-factors" test, Appellant's instant conviction for evading arrest by use of a motor vehicle as a deadly weapon while fleeing from Deputy Azwell, as the lesser degree of felony and second count alleged in the indictment, must be vacated and dismissed. Ex parte Caravos,203 S.W.3d 333,339 & n.8(Tex. Crim.App.2008); and see, Zuliani,383 S.W.3d @ 300(retaining deadly conduct conviction, vacating reckless driving conviction); Reece v. State,03-03-00490-CR, 2004 Tex.App.LEXIS 6815(San Antonio 7-19-04 pet ref'd)(State admitted to Double Jeopardy, by counts of aggravated assault on a public servant and aggravated assault being one count included within the other count; retaining aggravated on public servant conviction, vacating aggravated assault conviction); U.S. v. Miller,576 F3d 528,531(5th Cir.2009)(single action of attempting to run over two officers, could'nt support two seperate convictions, citing cases as settled law); USCA 5; Tex.Const.,Art.I,§14; Sotelo,supra.; Tex.R.App.P.47.1.

**4.** LEGALLY INSUFFICIENT EVIDENCE OF THE USE OR EXHIBITION OF A DEADLY WEAPON MOTOR VEHICLE, BECAUSE NOONE WAS SHOWN TO BE ACTUALLY ENDANGERED BY PROXIMITY TO APPELLANT'S DRIVING, REQUIRING DELETION OF THE DEADLY WEAPON FINDINGS FROM THE EVADING ARREST JUDGEMENT OF CONVICTION

Facts

In trial, Deputy Azwell and Chief Hadrych testified Appellant's driving while they pursued him was "reckless", R.R.,v.5,p.79; R.R.,v.6,pp.66-67, since he "crossed into oncoming traffic" and "perhaps seven to ten vehicles... had to pull over to the shoulder to get out of the way". R.R.,v.5,pp.82-83. This was the State's position in arguing to the Court of Appeals initially. See 02/10/14 filed State's Brief,1. However, the Court of Appeals did not adopt this as fact. See, Appx. 38 - 05/21/14 Mem.Op.,6. Chief Hadrych speculated Appellant's reckless driving "could have caused someone serious bodily injury" or "death", R.R.,v.6,p.67, and Deputy Azwell claimed Appellant's driving had

11

"threatened" him when Azwell cornered Appellant on a dead end street and Azwell claimed Appellant drove directly at him while "continuing his flight" or "evading". R.R.,v.5,pp.90,100. In closing arguments the State emphasized that Azwell has not been the same since Appellant drove directly at him and how much fear Azwell was in as a result. R.R.,v.9,p.114. However, noone testified during this entire trial that Appellant's driving was "actually dangerous" or of any person's other than Azwell's proximity to Appellant's driving conduct. While the State relies upon Deputy Azwell's in-car video camera evidence submitted in trial to support the use of Appellant's vehicle as a deadly weapon, 02/10/14 filed State's Brief,1,8, and argued in closing that this evidence showed the Appellant "passed that person in the intersection" and "tries to pass an 18 wheeler, and you can see at least four or five vehicles have to pull out of the way", R.R.,v.9,p.119, in fact Deputy Azwell's incar video camera evidence fails to show any other person being actually endangered by close proximity to Appellant's alleged reckless driving conduct. R.R.10-State's Ex.204(video).

## Arguments

### A.

First, Deputy Azwell was never threatened by Appellant's driving directly at him, because as argued elsewhere in this brief Deputy Azwell has been shown to have falsely and perjoriously testified in regard to this factual allegation. His testimony must be discounted as a result, Therefore, Deputy Azwell cannot serve as an evidentiary basis for supporting Appellant's driving dangerously as opposed to merely recklessly for the evading arrest deadly weapon findings.

### B.

1. Assuming for purposes of argument that Deputy Azwell's testimony can serve as an evidentiary basis for the evading arrest by use or exhibition of a deadly weapon charge, then his own testimony and the incar video camera evidence proves Appellant did not place Deputy Azwell in actual danger by driving directly at him in this case, but instead Deputy Azwell ran from a safe location behind his car into Appellant's vehicle's path, from where he shot Appellant, then jumped out of Appellant's vehicle's path again. Azwell unreasonably created the encounter that ostensibly justified his use of deadly force to protect himself by shooting Appellant, in violation of USCA 4. Swann v. City of Richmond, 498 F.Supp.2d 847, 863(E.D.Va.2007)[quoting, Estate of Starks v. Engart, 5 F3d 230,232,234-35(7th Cir.1992], aff'd, 309 Fed.Appx.757, 2009 WL 180291. Independant of the 4th Amendment violation, this factual scenario must necessarily prove insufficient evidence of threatening Deputy Azwell by driving dangerously. See, Brown v. State,183 S.W.3d 728,733(Tex.App.-Hous.[1 Dist.] 11-23-05 reh'g denied 1-4-06)(finding no record testimony "the gunshot caused the vehicle to swerve in any direction, suggesting that appellant drove straight for the exit", was held to be evidence sufficient to support a lesser included offense charge on reckless driving, in an aggravated assault on a public servant conviction's appeal, finding error in denying that requested instruction, but no harm due to similar "deadly conduct" lesser included offense charge being given to uphold conviction).

2. The incar video evidence irrefutably establishes that in four (4) seconds Deputy Azwell jumped out of his car when you hear his door slamming on the video's audio portion followed in four (4) seconds by the shooting of Appellant,

12

and according to Azwell's testimony when he exited his vehicle, he ran into a "car-length-and-a-half space between the rear of his car and a resident's vehicles also parked there, R.R.,v.5,pp.86-87, Appellant drove directly at Azwell, id.,p.88, Azwell drew his weapon, shot at Appellant and then "back[ed] out of the way ... to take cover behind [Azwell's] vehicle". id.,pp.88-90; also see,, R.R.,v.6,pp.40-41; Appx.,1(Azwell testimony). There is NO evidence Appellant aimed his car in any other direction than the space between the rear of Azwell's car and the resident's vehicles also parked there. Brown,183 S.W.3d @ 733.

3. On this record, there is insufficient evidence to prove Appellant used his vehicle as a deadly weapon against Deputy Azwell. But for Deputy Azwell running into the car-length-and-a-half space Appellant was already driving towards, no danger or threat to Deputy Azwell could have occurred. See Penal Code §6.04(a)("Concurrent Causation"). Section §6.04(a) applies to cases like this Appellant's. Ferrel v. State,55 S.W.3d 586,590-91(Tex.Crim.App.2001)(aggravated assault case). Section 6.04(a) makes clear that Appellant is not criminally liable here because Deputy Azwell's conduct alone of jumping in front of Appellant's already aimed car was clearly sufficient by itself to result in his being endangered by Appellant's driving, and Appellant's driving alone while aiming directly for the unobstructed space between vehicles to escape was insufficient to endanger Azwell here. Cf: Daniel v. State,577 S.W.2d 231,235-26(Tex. Crim.App.1979)(on reh'g). Alternatively, there is insufficient evidence the Appellant used or exhibited his vehicle as a deadly weapon, as the uncontroverted record evidence shows at the last second Deputy Azwell moved into the path of Appellant's already moving and aimed vehicle, drew his weapon and shot the Appellant all within seconds. Compare this to Dobbs v. State,07-12-0376-CR, 07-12-0377-CR @ **2-4(Tex.App.-Amarillo 3-20-13 reh'g ovr'ld) where it was unsuccessfully argued the officer "could have avoided the threat's fruition, in that he could have escaped from the car's path", which was overruled by the Court refusing to impose a duty on an officer to avoid the results of the threat before an assault can happen. Here, Deputy Azwell did not merely "stand his ground" and shoot Appellant – he unreasonably created his encounter with Appellant's vehicle deliberately, to ostensibly justify shooting Appellant while unarmed and fleeing arrest. Swann,498 F.Supp.2d @ 863; Brown,183 S.W.2d @ 733(finding although police officer was fairly close to appellant's vehicle, the record suggested appellant drove straight for the exit). Please note that record shows this Appellant only has one eye, which supports his not seeing Deputy Azwell's last second move into his car's path. Cf:, Self v. State,2004 Tex.App.LEXIS 7352(Tex.App.-Dallas 2004)(discussing evidence of not seeing officer and not aiming at officer).

C.

1. Third, the State's arguments about other persons on the road amount to no more than hypothetical endangerments, which is insufficient to support the deadly weapon finding. Cates v. State,102 S.W.3d 735,738(Tex.Crim.App.2003). In Appellant's case the State is merely stacking multiple hypotheticals of some other person somewhere on the roadway, also barred by the Cates holding. Additionally, "proximity is necessary to show that actual danger existed", which the State presents insufficient evidence of in the record. Drichas v. State,219 S.W.3d 471,475(Tex.App.-Texarkana 2007)[citing, Drichas v. State,175 S.W.3d 795,799(Tex.Crim.App.2005).

13

2. All the testimony and evidence of Appellant driving "recklessly" does not prove he drove "dangerously", an essential factual showing to the State's burden of proof. Murphy v. State,01-08-00768-CR,01-08-00659, 2010 Tex.App.LEXIS 2953(Tex. App.-Hous[1 Dist] 4-22-10 pet refd 2x)[citing, Sierra v. State,280 S.W.3d 250,255(Tex. Crim.App.2009)](evading arrest's conviction analysis, distinguishing between "reckless driving" and "dangerous driving"). Here, the Beaumont Court of Appeals implicitly rejected the the State's factual claims that this Appellant crossed into oncoming traffic and vehicles had to pull over to the shoulder to let Appellant and his pursuers pass, by not recognizing those claims in it's opinion which does recognize other fact issues such as traffic violations and unsafe driving generally. However, the deputy's incar video evidence does show at between 3-4 minutes into the video Deputy Azwell trying to pass the Appellant bby trying to cross into the other lane of traffic which Appellant does foil each time, hence the deputy is driving dangerously! When Appellant is driving on the wrong side of the road, there is no car coming at him in close proximity, and there is no person anywhere near to close proximity to Appellant's driving so as to convert it into "dangerous" driving as required.

3. The officer's testimonies about what "could have" happened is mere speculation, not competent evidence, hence cannot be relied upon to prove discretely or with other evidence any dangerous driving. Rabb v. State,387 S.W.3d 67,72-73(Tex.Crim.App.2012). And Deputy Azwell's extensive testimony about how he felt "threatened" and his whole life changed after this event, beyond being self-serving and incredible on this record, is irrelevant as a matter of law. Dobbins v. State,228 S.W.3d 762,766-67(Tex.App.-Hous[14 Dist]2007)[citing Olivas 203 S.W.3d @ 342-51].

4. While driving the wrong way on a highway into oncoming traffic during a police chase would be sufficient evidence of dangerousness, Drichas,175 S.W.3d @ 798, neither the Drichas case nor this Appellant's case rises to that level of dangerous driving. Drichas,219 S.W.3d @ 475-77(on remand, finding there was "some traffic somewhere around" the police chase was insufficient to support deadly weapon finding; "the record does not demonstrate ... the pursuing officers ever encountered any motorist in such a way as to place another in actual danger."; rev'g and remanding for new punishment trial). Here, the incar video exhibit shows no evidence of Appellant's "proximity" to another person or motorist to prove "**actual** danger existed, even though no person was actually endangered." id. @ 475[citing, Drichas,175 S.W.3d @ 799](bold added). To hold in this case the Appellant's driving satisifed the dangerous proximity requirements of Code of Crim.Proc.Ann.art.42.12,§3g(a)(2) in this context results in a construction allowing any fleeing motorist to be charged with using a vehicle as a deadly weapon virtually every time an evading arrest offense is committed, which is contrary to the clear and unequivocal language of the Texas Court of Criminal Appeals in Drichas,175 S.W.3d @ 799. Drichas,219 S.W.3d @ 476 n.5. Appellant argues here the standard requiring proof beyond a reasonable doubt be presented in support of every fact necessary to convict is less than that required by Due Process. In re Winship,397 U.S.358,364(1970); USCA 14. Because there is insufficient evidence of any person's "proximity" to Appellant's driving causing "actual danger" to a person and the record shows not even a close call to any kind of collision in this case, there is reasonable doubt on the affirmative finding of a deadly weapon in this case, requiring deletion of the deadly weapon finding from the evading arrest judgement and remand to the trial court for a new punishment trial hearing. Drichas,219 S.W.3d @ 477 (requiring this result w/o dispute from the State); Tex.R.App.P.44.2(a),47.1,49.

**5.** LEGALLY INSUFFICIENT EVIDENCE ALLEGED "SYRINGES" WERE AFFIRMATIVELY LINKED TO APPELLANT AND/OR WERE "RELATED" TO THE ALLEGED "POSSESSION OF A CONTROLLED SUBSTANCE" OFFENSE, REQUIRING REVERSAL OF THE TAMPERING WITH EVIDENCE CONVICTION AND AN ACQUITTAL ORDER UNDER DUE PROCESS

<u>Facts</u>

**I.** Count III of the indictment alleges Appellant:

"knowing **an offense** had been committed, to wit: **Possession of a Controlled Substance**, intentionally and knowingly alter, destroy or conceal a thing, to wit: **Syringes**, with intent to impair its availability **as evidence** in any subsequent investigation or official proceeding **related to the offense.**" C.R.,39(bold added).

On appeal, the State argued Appellant repeatedly threw drug paraphrenalia out his car's windows while being pursued by police, interestingly completely discounting Deputy Azwell's purported eyewitness testimony affirmatively linking Appellant to the alleged thrown "Syringes" in this case, relying on hearsay testimony only. Compare, 02/10/14 filed State's Brief,1-2(relying only upon the hearsay testimony of Off.'s Balthzar, Schmitt & Everton @ R.R.,v.6,pp.98,100,&112-16 with, Appx.,40 ꞊ 04/21/14 Mem.Op.,8("According to Deputy Azwell, while pursuing Martin's vehicle, he saw Martin throw a spoon and several syringes out of his car's window."). Officers Delavaria, Balthazar and Hadrych testified as to what they heard for police radio traffic on the air, and speculated as to what if anything Appellant was throwing out his window and why, R.R.,v.6,66-69,88,100 and civilian witnesses testified as to items being thrown out the car window without specifically identifying any particular item being thrown at the time, R.R.,v.6,pp.100-01,176-77, which trial counsel Mr. Boyd objected to on hearsay, no affirmative link and irrelevance grounds, and the trial court overruled. R.R.,v.6,pp.103-04,120-21; R.R.,v.14,p.23.

**Ə.** Crime Scene Investigator ("CSI") Everton responding to the police radio statements about Appellant throwing items out his car's window, got his "narcotics trained canine" and did a systematic search 100 yards of roadside sections of the pursuit route at a time, until the dog found "anything with a residual odor of a narcotic" which turned out to be two different appearing syringes, a syringe plunger and a blue lighter, all found at different locations. Compare, R.R.,v.6,108-09,112,115, with, Appx.55-57—State's Exs.59-60,78-79,210-14, CSI Everton admitted he could not connect any of these found items to Appellant, other than they contained some <u>unspecified</u> narcotic. R.R.,v.6,pp.120-21,151-52. However, there was no evidence of lab testing for "residue" in any of these roadside found items constituting a "controlled substance", meaning CSI Everton's connection testimony amounts to mere speculation. Compare, R.R.,v.6,pp.151-52 (guesing syringes contained blood),154-55(speculating small amount of residue in some baggies found in Appellant's pocket was "narcotics"), with, R.R.,v.6,pp.122-23(testifying there is "a clear liquid substance" in a syringe, but never testing same for being a controlled substance"). While the State argued the two roadside found syringes were the same style as two syringes found in Appellant's car, R.R.,v.5,pp.151-52, the evidence shows these syringes look completely different. Compare, Appx. 55 ꞊ State's Exs.106-07(2 syringes found in Appellant's car are old, used w/bent needles), w/Appx.56-57—State's Exs.59(found roadside diabetic unused, marked, capped, new syringe),78(extremely different looking turkey baster type of syringe). The State also argued "the syringes were evidence he possessed cocaine", R.R.,v.9,p.84, "the needles he's throwing out, it's the same ones he has in the car. He's using drugs. And he's getting rid

15

of the ones he's already used", R.R.,v.7,pp.120-21, speculating on top of this unsupported basis, "Why would somebody who's driving down a freeway want to get rid of a syringe ... **if it was**" a syringe, unless "**if it has** any type of contraband; cocaine, heroin, I mean, they'd obviously want to throw it, to destroy it" because it "**could**" be evidence of "use of narcotics". R.R.,v.6,p.117 (bold added). But no State witness ever said anyone tested any alleged roadside found syringes for residual narcotics or controlled substances of any kind, and further never even tested any alleged roadside found syringes for finger-prints. R.R.,v.6,pp.122-23(CSI Everton states "a clear liquid substance" is in 1 syringe),131(CSI Wright testifies of taking syringes "back to the crime lab"), 151-52,154-55(CSI Wright testifies admitting to not forensically testing any syringes, while guessing there was blood in one of them).

**3.** Considering Deputy Azwell falsely and perjoriously testified the Appellant was driving directly at him in trial, in concert with CSI Wright's suppression of the existence of the "front-view" laser test photo evidence when he testified in trial as to his conducting of those tests, then the Court of Appeals original Memorandum Opinion finding the "record" and Deputy Azwell's testimony alone, supported the inference that Appellant had thrown the found syringes from his car, means had the court of appeals taken into consideration this irrebutable evidence of Deputy Azwell's perjury, surely it would not have relied upon Deputy Azwell's testimony alone to analyze evidence sufficiency as it did so far.

## Arguments

A person commits the offense of tampering with evidence if, knowing an offense had been committed, he alters, destroys, or conceals any record, docu-ment or thing with intent to impair its ... availability as evidence in any subsequent investigation or official proceeding related to the offense. See, Penal Code §37.09(d)(Vern's Supp.2011); Thornton v. State,No.PD-0669-13, Slip Op.1-2 n.1(Tex.Crim.App.4/2/2014). The task is to determine if the record evi-dence could reasonably support a finding of guilt beyond a reasonable doubt, by viewing the evidence in the light most favorable to the State, and deciding whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thornton,Slip Op.24-25 & nn.66,67, quoting, Jackson v. Virginia,443 U.S.307,318-19(1979); Rabb v. State, 387 S.W.3d 67,70-73(Tex.Crim.App.2012)(same).

A. "Syringes" Are Not "Evidence" "Related to the Offense" of "Possession
   of a Controlled Substance" Alleged, Requiring Reversal and Rendition

l. Throwing syringes out one's car window can never be, by itself, evidence "related to the offense" of "Possession of a Controlled Substance" which is the allegation in Appellant's indictment. See Health and Safety Code §481.115-§481.118(Vern.Supp.2011)(possession of controlled substances laws in Texas). The plain language of §37.09(d) requires this indictment's alleged "Syringes" to be evidence that is related to the offense of possession of a controlled substance, which it should be obvious that a syringe, by itself as the state clearly presents in the case at bar, fails to prove any element of the offense of possession of a controlled substance. The entire legal theory of this prose-cution is legally invalid, requiring evidence insufficiency relief. Ex parte Perales,215 S.W.3d 418,420(Tex.Crim.App.2007); Deltenre v. State,808 S.W.2d 97, 101-02(Tex.Crim.App.1990).

**2.** While throwing syringes out of a car window might be evidence related to the offense of possession of drug paraphrenalia, Thornton,Slip Op.4 & n.8(finding officers arrest Thornton for possession of drug paraphrenalia, for his dropping of a crack pipe, under Tex.H.S.C.§481.125(a)), Gaston v. State,574 S.W.2d 120(Tex.Crim.App.1978)(syringe case), in the instant prosecution the State waived any prosecution against Appellant for his conduct being "related to the offense" of "possession of drug paraphrenalia" by alleging his conduct was "related to the offense" of "possession of a controlled substance", which in this as in other cases is a fatal defect. See, Rabb,387 S.W.3d @ 72-73(State pled "destroyed" only, but only proved "concealed", requiring reversal for insufficient evidence); Pannell v. State,7 S.W.3d 222,224(Tex.App.-Dallas 1999) (State pled §37.09(a)(1) facts, then only proved §37.09(d)(1) case, requiring reversal for insufficient evidence). The case at bar requires the same result. Additionally, the Court of Criminal Appeals has stated "evidence of a person throwing down contraband during a police pursuit ... is insufficient, **by itself,** to constitute either concealment of attempted concealment." Thornton,Slip Op.27 n.77. Appellant's alleged conduct falls under this statement of the law, and for that reason should support finding insufficient evidence to convict him. Further, even if the evidence somehow supported finding the roadside found syringes were thrown down by this Appellant, "Syringes" are neither illegal nor contraband under Texas law. It is judicially noticable that syringes are available without a prescription in any Texas pharmacy. Certainly, "Syringes" are not a "controlled substance". The State's argument that the found "needles" are the same as the two found in Appellant's car, although this claim is contradicted by the State's own trial exhibits which show them to be very different looking syringes, is simply irrelevant because a "syringe" is not "related to the offense" of possession of a controlled substance. The State struggles and strains on this record, apparently trying to prove tampering with "needles", to make unavilable as evidence against "using drugs" or using "syringes" or perhaps littering, which is not a cognizable legal theory under the plain language of this statute. Indeed, the record is full of State witness testimonies speculating about how throwing syringes out a car window, if this Appellant threw syringes out a car window, might constitute this offense, which requires an insufficient evidence holding. Rabb,387 S.W.3d @ 72-73. Texas courts have criticized this statute in operation. Thornton,Slip Op.27 n.77(suggesting the TCCA author of the Court's opinion might have found no evidence in that case); Gaitan v. State,393 S.W.3d 400,402(Tex.App.-Amarillo 12/17/12)(similar lament).

**3.** To hold the syringe evidence found on the roadside in the instant case, is legally sufficient evidence of the offense of tampering with "Syringes", alleged to be "related to the offense ... of possession of a controlled substance" under Penal Code §37.09(d)(1), would nullify the "related to the offense" statutory element to this law, renderring this phrase useless, which is contrary to Texas law. L.P. v. State,---S.W.3d---,2009 Tex.App.LEXIS 5467(Tex.App.-Austin 7/14/09); Badgett v. State,42 S.W.3d 126,140(Tex.Crim.App.2001). Additionally, finding "syringes" are evidence of "possession of a controlled substance" fails to give effect to the particular or technical meaning of "controlled substance", requiring reversal of conviction and rendition of an acquittal. Deltenre v. State,808 S.W.2d 97,101-02(Tex.Crim.App.1990)(holding "detention officer" could not meet definition of "peace officer" under statute of conviction; reversing and acquitting appellant).

## B. Insufficient Evidence of an "Affirmative Link" Between the Roadside Found "Syringes" and the Appellant, Requiring Reversal and Rendition

1. Similar cases under this statute involve an officer that indisputably witnessed the alleged evidence being thrown. Thornton,Slip Op.4(officer "never lost sight" of crack pipe "from the moment the appellant removed it from his pocket" until the officer retrieved it from the street); Pannell,7 S.W.3d @ 224 (officer observed marihuana cigarette thrown from car window during traffic stop); Blanton v. State,2006 Tex.App.LEXIS 6367(Tex.App.-7/21/06)(officer observed two baggies thrown from car window during traffic stop). In the instant case, Deputy Azwell's purported affirmative link testimony initially accepted as sufficient by the Court of Appeals has now been shown to have been renderred unreliable due to his having committed perjury by false testimony in Appellant's trial involving the count I aggravated threat of a public servant charge, and even accepting Deputy Azwell's affirmative link testimony at face value is irrational to conclude beyond a reasonable doubt this provides sufficient evidence to demonstrate an "affirmative link" between the State's alleged roadside found "Syringes" or other items and the Appellant under the facts of this case.

2. Officer Balthazar testified Appellant "threw something" out his window, R.R.,v.6,97-98, Officer Schmitt testified what another person said who was not present in the trial court (i.e., hearsay) about a glass pipe being found, R.R.,v.6,100, officers Delavaria and Chief Hadrych testified about what they heard on their police radios about the suspect having "thrown some items out his window" speculating that it may be "some kind of evidence". R.R.,v.6,66, 68-69,88, Civilians Dina Walker and Sandra Courtney testified to seeing "an item", "another item being thrown", "something flew out" the car window which they they "didn't know" what they were at the time but speculated "whatever was thrown out might be important". R.R.,v.6,176-77,182-83. Even Deputy Azwell reasserted his vague police radio statements in trial, that "some items" were being thrown out the car window while he was in pursuit, followed by his uncorroborated but convenient recall only testimony that he saw a spoon and syringes being thrown specifically. R.R.,v.5,79-80; Appx.38-40 - 5/21/14 Mem.Op.,8. But distinguishing the case at bar from the above cited similar cases, is the fact that Deputy Azwell lost sight of whatever he claimed was thrown out the Appellant's car window, since he testified as to continuing with his pursuit of Appellant's car until he cornered him on a dead end and shot him. id.,6-7.

3. Under Penal Code §37.09(d)(1), the State must prove beyond a reasonable doubt an "affirmative link" between a purportedly roadside found item of alleged evidence, and the appellant's having thrown it from his car. See Favela v. State, 13-12-003970-CR, 2012 Tex.App.LEXIS 5691(Tex.App.-Austin 5/8/13)(§37.09(d)(1) affirmance, affirmatively linking thrown rifle found on roadside to appellant, by finding it was taken from the victim's truck and was linked to other property that was found in appellant's vehicle); and see, Verduzzo v. State,24 S.W.3d 284,286(Tex.App.-Hous.[14 Dist.]2000)(controlled substance 'actual transfer' case, where there was no evidence appellant ever touched the alleged controlled substance; rev'd & acquitted); Roberson v. State,80 S.W.3d 730(Tex.App.-Hous. [1 Dist.]2002)(24 grams of drugs found in and around car, was insufficient to link driver to it's possession, as there was a passenger in the car also). Even crediting Deputy Azwell's testimony as reliable, it is mere speculation that the Syringes found by CSI Everton on the roadside, after his systematic search of 100 yard wide sections of the pursuit path's roadside, are either the same syringes as what the Deputy said he saw, or the same syringes as found

in the Appellant's car. The State's arguments that the roadside found syringes are the same as the one's found in Appellant's car, is contradicted by the record evidence. The roadside found syringes were found at different locations, and appear to be two totally different kinds of syringes, in that one looks like a new, unused, capped, diabetic's syringe which should be judicially not-icable, and the other appears to some kind of a turkey baster syringe or perhaps a veterinarian's horse needle, much larger and different from the diabetic syringe. Additionally, these two very different looking syringes, look very different indeed from the State's argued Appellant's syringes found in his car which look to be old, very used, bloodstained, and unusable with bent needle tips. Hence, the State's primary argument in trial is contradicted by the record of State's exhibits. And even if this were'nt an issue, as argued in Argument A,infra., Syringes are not illegal, not contraband, are available without a prescription in Texas, and are certainly no evidence of committing the offense of "possession of a controlled substance" as this indictment meritlessly alleges in this case. Furthermore, there was testimony in this case that the area where this police pursuit occured had too much traffic on it lately, and 2 witnesses were leaving that area on this day together because they "just didn't feel as safe as I used to ... because of the speed vehicle come around". R.R.,v.6, 174,181. Given that there are lots of speeding vehicles driving around this neighborhood lately, the State simply does not know and cannot know who spec-ifically threw down their roadside found syringes and other items. Anyone of the thousands of cars driving by this area could have thrown the found items out of their car windows, instead of this Appellant. The real question in this case is why didn't the State's CSI witnesses test for controlled substance residue they testified they believed was in the roadside found syringes, and why didn't they forensically test those syringes for fingerprint evidence? Without such affirmative link evidence, under the facts of this case, the State simply cannot "affirmatively link" this Appellant to any roadside found syringe at issue in this case, even with Deputy Azwell's unreliable testimony in this case. The record being rife with mere speculation that these roadside found syringes and other items were thrown by this Appellant, constitutes legally insufficient evidence of an "affirmative link" requiring reversal and rendition of an acquittal. Rabb,387 S.W.3d @ 72-73; Cf: Favela,supra.

## C. Conclusions

There is legally insufficient evidence contrary to Due Process, that: (1) the roadside found syringes were "related to the offense" of "possession of a controlled substance", (2) any "controlled substance" was ever thrown out of Appellant's window or otherwise tampered with, (3) anyone witnessed this Appellant throw out of his car's window any specifically alleged "Syringe", and (4) the alleged roadside found "Syringes" were "affirmatively linked" to this Appellant. Accordingly, Appellant is entitled to a reversal of his Tamper-ing With Evidence conviction and rendition of a judgement of acquittal. See, USCA 14; Jackson,443 U.S. @ 319; Rabb,387 S.W.3d @ 72-73; Pannell,7 S.W.3d @ 224: AND SEE, Perales,215 S.W.3d @ 420; Deltenre,808 S.W.2d @ 102; SEE ALSO, Rodriguez,129 S.W.3d @ 562-64(in pro-se motion for rehearing context, after appointed appeal counsel obtained an affirmance of conviction, pro-se appellant [this writer] raised new argument for first time on insufficient evidence, obtaining a Jackson reversal and acquittal; court ordered previously unpublished court appointed counsel obtained affirmance opinion published together with pro-se motion for rehearing opinion's granting relief result); Tex.R.App.P.47.1, 49.

**6.** LEGALLY INSUFFICIENT EVIDENCE OF USING A VEHICLE TO "THREATEN" A PUBLIC SERVANT WHILE "LAWFULLY" DISCHARGING HIS DUTY BASED ON INDEPENDANT DUE PROCESS VIOLATIONS OF TRIAL COURT FALSE TESTIMONY, SUPPRESSED EVIDENCE, PROSECUTION'S KNOWING FAILURE TO CORRECT FALSE TESTIMONY (USCA 14) AND/OR UNREASONABLE SIEZURE OF APPELLANT BY SHOOTING HIM FOR UNARMED EVADING ARREST BY VEHICLE (USCA 4; PENAL CODE §9.51(c))

Facts

1. Appellant incorporates by referrence as if fully pleaded herein, his previously presented Issue No.Four facts and argument B, supra..

2. Deputy Azwell testified that during his police pursuit of Appellant, when he decided to continue vehicular pursuit onto Bates Road, he knew it was a dead end street, saw Appellant slowing down and presumed Appellant would stop on Bates Road to continue fleeing on foot. R.R.,v.5,83-84. The incar video CD evidence record shows vehicular pursuit of Appellant around one circle through a Bates Road resident's front lawn, Deputy Azwell parking his patrol car on the resident's driveway at it's street end facing out with resident's vehicles already parked there at the opposite end nosed up against a garage, while the Appellant continues fleeing or evading around, a second circle through the front lawn. R.R.,v.5,74-75,85-86(testimonies of Chief Hadrych and Deputy Azwell). Deputy Azwell's chosen parking location created a "car-length-and-a-half" space between the rear of his patrol car and the rears of the resident's cars parked nosed up against their garage. Appx.1 - R.R.,v.5,86(testimony of Deputy Azwell); R.R.,v.10 - State's Ex.215("Lieca Scan" drawing of driveway, resident's cars).

3. The incar video CD evidence irrefutably proves, Deputy Azwell exited his patrol car when you hear on the CD audio his door slamming, and exactly four seconds later he is shooting at Appellant. C.R.180; R.R.,v.10 - State's Ex.204. In those four seconds it is Deputy Azwell's heretofore uncontroverted testimony when he exited his patrol car he ran into the "car-length-and-a-half" space between the the rear of his car and the rears of the resident's cars, Appx.1-R.R.,v.5,86-87, was feeling his own "adrenaline", R.R.,v.6,16, at which point Appellant tried to run him over by driving directly at him as the chase was ending, so he fired three shots at Appellant resulting in Appellant's surrender. Appx.37-38 - 5/21/14 Mem.Op.,5-6; Appx.1 - R.R.,v.5,88-90(Azwell's testimony). Both the State and Deputy Azwell have taken the position that after Appellant was shot by the deputy, he "continued to evade" "straight" through the "car-length-and-a-half" space between the cars parked on the driveway, and the deputy "continued to pursue". Appx.1-R.R.,v.5,90; 2/10/14 State's Brief,2-3.

4. It is undisputed that Deputy Azwell's shots two and three were fired from and into the side of Appellant's car, shot number three lodging into the passenger side window pillar between the front and rear doors, with shot number two shattering the passenger side front window and hitting Appellant in the chest. Appx.1-5(excerpted trial testimony of CSI Wright and Deputy Azwell). All three shots fired at the car appear to be aiming to kill Appellant, instead of simply stopping the car, as they are all above the horizontal center line aimed at Appellant, and nowhere near the tires. Appx.32,53,54, R.R.,v.10, State's Exs. 201,176,179. Deputy Azwell's testimony there was no other level of force that would have stopped a moving vehicle, Appx.2 - R.R.,v.5,97(Azwell testimony), is irrational and self serving given he could have shot out Appellant's tires, but

chose to try to kill the Appellant, and then dodged trial counsel's questioning about the objective unresonableness of his shooting the Appellant. Appx.2 – R.R.,v.6,16-18(Azwell's testimony).

5, Critically unrecognized to date are the facts that there is no evidence Appellant was not aiming straight and directly for the "car-length-and-a-half" space between Deputy Azwell's and the resident's vehicles to continue to evade, necessarily meaning Deputy Azwell ran in front of Appellant's already aimed, moving vehicle, shot Appellant and then jumped out of the way again without being hit, all within no more than 2 seconds. See infra. In addition, Appellant showed the jury he had only one eye by removing same as demonstrative evidence during trial, so he may not have even seen the Deputy's purported 2 second moves jumping in front of the car, shooting him, and then jumping out of the way again. R.R.,v.9,37-38,41-42,47-48.

6. Deputy Azwell falsely and perjoriously testified in trial the Appellant tried to run him over by driving directly at him, the motive being to cover-up his excesssive use of force in shooting this unarmed Appellant from the side of his fleeing vehicle 3 times unjustifiably, hitting him in the chest and causing Appellant's surrender. Appx.7-9(defense counsel's excerpted closing jury arguments, R.R.,v.9,96,98,100), with, 2/10/14 filed State's Brief,9(recognizing main argument against count I conviction). Deputy Azwell's false and perjorious testimony was that Appellant drove "directly" or "straight" at him, as justification for shooting Appellant, moving out of the way at the last instant, and barely missing getting hit himself. Appx.38-39,5/21/14 Mem.Op.,6-7; Appx.1-2 – R.R.,v.5,88-89; R.R.,v.6,19-20(Deputy Azwell's excerpted testimony).

7. The State's bullet-trajectory expert CSI Wright testified in trial that Deputy Azwell's first shot went through Appellant's car's front hood, and explained how he used a "laser test" to determine this bullet's trajectory AFTER going through the front hood, but then only explained this bullet's trajectory BEFORE going through the front hood in terms of it's VERTICAL TRAJECTORY to confirm Deputy Azwell's general proximity to Appellant's car when the shot was fired. Upon trial cousnel's cross examiniation, CSI Wright suppressed the fact as to his personal knowledge of what his "laser test" results showed in terms of it's HORIZONTAL TRAJECTORY to confirm whether Deputy Azwell was shooting at Appellant from the front of the car as the deputy testified, or was shooting from the side of the car as trial counsel was not just suggesting but clearly arguing. Appx.3-5,7-9, R.R.,v.6,155-56,160-64,169-71(CSI Wright's testimony exceprts), R.R.,v.9,96-112(trial counsel's closing jury arguments).

8 In trial, the State used as exhibits "side view" laser test photo results, which only showed Deputy Azwell's general proximity to Appellant's car when he shot into the front hood and then shot Appellant. Appx.32 – R.R.,v.10,State's Ex.201. State prosecutors KNEW there were "front-view" laser test photo results showing Deputy Azwell shot into the front hood from the side of Appellant's car, contrary to Deputy Azwell's trial testimony, shown by the mere fact that a prosecutor had to select from all the laser test photo results the "side view" laser test photo results. Compare to, Appx.31 – Front-View Laser test Photo Result. The State's own previously suppressed "front view" laser test photo evidence conclusively and irrebutably proves Deputy Azwell falsely testified that Appellant was driving directly at him when he shot at Appellant, negating criminal liability for driving directly at Deputy Azwell as an essential element of the count I aggravated threat of a public servant charge in this case.

21

# Arguments

## A. Legally Insufficient Evidence

1. The statutory elements of the charged offense in this case are as follows: (a) A person commits an offense if the person: ...(2) intentionally or knowingly threatens another with imminent bodily injury, ... Penal Code §22.01(Assault). (a) A person commits an offense if the person commits assault as defined in §22.01 and the person: ...(2) uses or exhibits a deadly weapon during the commission of the assault. (b) An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if:... (2) Regardless of whether the offense was committed under Subsection (a)(1) or (a)(2), the offense is committed: ... (B) against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, ... Penal Code §22.02(Aggravated Assault). Here, the focus is on the legal insufficiency of the evidence to prove the Appellant intentionally or knowingly threatened Deputy Azwell with imminent bodily injury by driving his car directly at Deputy Azwell. An offender driving directly at an officer must be proven beyond a reasonable doubt, and is a factual issue present in all identical caselaw. Dobbs,supra.,2013 Tex.App.LEXIS 3050(finding sufficient evidence on egregious facts of appellant "accelerated towards him. The officer fired his weapon as the car approached and then jumped out of its path just before it could strike him."): Dobbins,228 S.W.3d @ 765-66(finding evidence sufficient as appellant drove directly at officer, then stoped at officer's direction, then moved car forward striking officer); Whiddon v. State,10 - 06 - 00085-CR, 2007 Tex.App.,LEXIS 916(Tex.App.-Waco 2007)(finding evidence sufficient as Whiddon "attempted to evade the roadblock", then "drove his truck toward the trooper, so that the trooper believed that Whiddon was going to run over him amd he feared for his life", "Whiddon would have hit the trooper if the trooper had not moved out of the way; and that Whiddon veered away only after the trooper shot out one of Whiddon's tires."); Baxter v. State,12-03-00042 - CR 2004 Tex.App.LEXIS 4861(Tex.App.-Tyler 5-28-04 pet ref'd)(finding evidence sufficient as appellant "drove his car at [officer] Swan in an effort to escape."); Brown v. State,11-03-00253-CR, 2001 Tex.App.LEXIS 8479(Tex.App.-Eastland 10-28-04, pet ref'd)(finding evidence sufficient as officer "testified that appellant drove his vehicle directly at him while he was standing outside his patrol car, forcing [him] to have to jump out of the way to avoid being hit."); U.S. v. Miller,576 F3d 528,529-30(5th Cir.2009)(evidence sufficient as appellant was trying to escape by driving through a narrow gap between 2 officer's cars, while the 2 officers were standing in that gap between cars having to jump out of the way). There are no cases on the books finding evidence sufficiency in this context when the officer deliberately jumps in front of a suspect's moving vehicle, as occurred in this Appellant's case, as a pretext to shoot the suspect. Here, Deputy Azwell stepped in front of Appellant's already aimed moving vehicle, just 1-2 second before Appellant could drive through the space between cars Azwell had created, hence Azwell himself unreasonably created the "threat" encounter that ostensibly justified his shooting the Appellant. These undeniable facts demonstrate a Fourth Amendment violation. Swann v. City of Richmond,498 F.Supp.2d 847,863(E.D.Va.2007)[citing, USCA 4 & Estate of Starks v. Engert,5 F3d 230,232,234-35(7th Cir.1993)]. These undeniable facts also demonstrate insufficient evidence of threatening Deputy Azwell. Brown,183 S.W.3d @ 733(aggravated assault on public servant case, finding although the officer was fairly close to the vehicle, there was no record testimony about the vehicle swerving in any direction, suggesting the appellant drove straight towards the exit, which supported a denied "reckless driving" instruction, but finding error harmless as "deadly conduct" instruction was given). The same

basis for relief in Swann and Estate of Starks, and the same basis for finding error in Brown, exists in the instant Appellant's case. On this record, there is legally insufficient evidence that Appellant "intentionally or knowingly" "threaten[ed]" Deputy Azwell "with imminent bodily injury", because of Deputy Azwell's own trial testimony that he stepped into the path of Appellant's car 1-2 seconds before shooting Appellant. There is no evidence in this record that absent Deputy Azwell's deliberately jumping in front of Appellant's car, that Appellant's car would've somehow still been aimed directly at the deputy. There is no evidence that as Appellant drove through the resident's yard the second time, he was not aiming for the car-length-and-a-half space between Azwell's vehicle and the resident's vehicles. The only evidence in the record shows Appellant's driving was "straight" if we are to believe the State's interpretation of the facts, and "directly" if we are to believe Deputy Azwell's interpretation of the facts. R.R.,v.5,88-89; Appx.,1(same).

2. Further supporting finding for the Appellant is Penal Code §6.04(a), the "Concurrent Causation" statute, which reads: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Section 6.04(a) applies to aggravated assault cases, and makes clear that the Appellant is not criminally responsible if Deputy Azwell's conduct alone of deliberately running right in front of Appellant's already moving and aimed car was sufficient to cause the result of Deputy Azwell being "threaten[ed]" by Appellant's driving, and Appellant's driving alone aimed not for Azwell but for the space between vehicles before Azwell ran into that space was clearly insufficient to result in Azwell being threatened. Cf: Daniel v. State, 577 S.W.2d 231,235-36(Tex.Crim.App.1979)(on reh'g). Under this statute, Appellant should also be acquitted. id. @ 236(dissent). It was error for the court of appeals below to "focus solely" upon Appellant's driving directly at Azwell, while "ignoring the fact that because of" Azwell's running directly in front of the Appellant's car, this is the only reason Deputy Azwell could have been arguably threatened as alleged. E.g., Farrel v. State,55 S.W.3d 586,590-91(Tex.Crim.App. 2001)(rev'g court of appeals granting relief, holding it was error to "focus solely on the impact from the blow of the beer bottle – ignoring the fact that because of that blow McManus fell back, hit his head on the ground, and died.").

3. Compare this case to Dobbs,2013 Tex.App.LEXIS 3050 at **2-4, where it was unsuccessfully argued the officer "could have avoided the threat's fruition, that is he could have escaped from the car's path", which was overruled by the court refusing to impose a duty on the officer to avoid the results of the threat before an aggravated assault can occur. The Court ruled, "Appellant has cited us to nothing in the record suggesting that [the officer's] threat of being struck was something less than menacingly near or impending if he stood his ground on land he lawfully occupied." id. Here, Deputy Azwell was NEVER in threat of being struck by Appellant's car, had he not stepped right in front of it's path and blocked his intended exit through the cars parked on the driveway. By the time Azwell jumped in front of Appellant's car, it was too late to change direction. According to the incar video, Appellant would have only had 1-2 seconds to change direction before Azwell shot him, which is unreasonable especially when you consider Appellant only has one eye. Clearly no rational trier of fact could have concluded Appellant was aware of, but consciously disregarded, a risk of imminent bodily injury to Deputy Azwell, when he drove directly for the space between vehicle to continue evading. In

23

addition the evidence is clear and uncontradicted that Appellant was merely aiming his car directly for the space between the rear of Deputy Azwell's car and the resident's cars all on the resident's driveway, when at the last second and within no more than 2 seconds total Deputy Azwell ran in between that space and the Appellant's path, then away from that path, for the purpose of shooting the Appellant. Therefore, for these reasons no rational trier of fact could have concluded or inferred that Appellant used or exhibited his vehicle as a deadly weapon by driving "directly" at the deputy as opposed to "directly" towards the only exit available to continue fleeing. See, e.g., Brown,183 S.W.3d @ 733(recognizing and applying a validity of there being no evidence of the appellant's vehicle swerving in any direction, suggesting he drove straight for the exit, even though officer was fairly close to the vehicle, and holding it was error to deny lesser included instruction on reckless driving); and, cf: Teeter v. State,13-07-00578-CR, 2009 Tex.App.LEXIS 5668 at *13(Tex.App.-Corpus Christi 2009)(finding sufficient evidence of "intent" under egregious facts, including that Teeter was aware of the risk of serious bodily injury to the deputy when he was driving in reverse with the deputy hanging out his car's door, the big size of his truck and the deputy's proximity to the truck, such that a rational trier of fact could have found Teeter's truck to be a deadly weapon), aff'd in pert.part, rev'd on other grounds, 2010 Tex.Crim.App.LEXIS 1206(9/22/10), writ denied, 2012 Tex.Crim.App.Unpub.LEXIS 3134(4/4/12); Self v. State,05-02-01963-CR, 2004 Tex.App.LEXIS 7352 at *7(Tex.App.-Dallas 2004)(finding sufficient evidence of intent, by weighing Self's testimony "that he did not see Cabbellero in front of his vehicle; he did not 'aim' at Cabellero or intend to hit him; was not intoxicated, angry, or even in a hurry; and that he waited for traffic to stop before crossing to the median", as some evidence the vehicle was not used in a manner capable of causing death of serious bodily injury),PDR dis'md 2005 Tex. Crim.App.LEXIS 278(3/2/05), PDR ref'd 2005 Tex.Crim.App.LEXIS 973(6/22/05).

4. Finally, the offense of threatening a public servant as charged in the instant case, has as an essential element that "the public servant is **lawfully discharging** an official duty." Penal Code §22.02(a)(2)(b)(2)(B)(Vern.Supp.2009); Gonzalez v. State,574 S.W.2d 135,136-37(Tex.Crim.App.1978)(rejecting old argument overruled by new statute and caselaw); Infante v. State,397 S.W.3d 731,735-36(Tex.App.-San Antonio 2-6-13)(rejecting argument that detention was "unlawful" because Infante was not speeding due to officer's "impossible" speeding calculations); Brock v. State,295 S.W.3d 45,52(Tex.App.-Hous.[1 Dist.]2009 rehg denied) (holding assault is a lesser included offense of assault on a public servant, and affirmative evidence in the record that negates the lawful discharge of duty element of the offense required requested lesser included offense instruction); Kaez v. State,287 S.W.3d 497(Tex.App.-Hous.[14 Dist.]2009)(similar, civil case). The precise issue here is Deputy Azwell's UNLAWFUL discharge of his duty to arrest the Appellant, by his unconstitutionally shooting Appellant as described throughout this section, by jumping in front of Appellant's car for a second or two long enough to shoot Appellant and then jump out of the way again unreasonably creating the "threat" encounter proscribed by the statute that ostensibly justified his shooting of the Appellant, which violates USCA 4. Swann,498 F.Supp.2d @ 863; Estate of Starks,3 F3d @ 232-35; Moser v. Bascilla,865 F.Supp. 249,251,255(E.D.Pa.1994). To be clear, this is not a claim of Deputy Azwell unlawful discharge of his duty to arrest the Appellant for evading arrest. Cf: Infante,supra.. The precise issue is Deputy Azwell's unreasonable seizure of Appellant by unjustifiably shooting him in violation of USCA 4. Such a scenario requires the conclusion that the opposite of a vital fact within the State's

burden of proof has been shown on the record, that is that Deputy Azwell did UNLAWFULLY discharge his duty to arrest Appellant, establishing legally insufficient evidence. Standards of Review in Texas,34 St. Mary's L.J.,159(2002).

5. Deputy Azwell's use of deadly force to shoot Appellant was grossly disproportionate to his need for self-defense or the defense of others, hence was illegal under Penal Code §9.51(c). Fraire v. City of Arlington,957 F2d 1268,1276-77(5th Cir.1992). Additionally, this violated the Fourth Amendment:

"The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in a judicial determination of guilt and punishments ... The use of deadly force is a self defeating way of apprehending a suspect and so setting the criminal justice mechanism in motion ... a majority of police departments in this country have forbidden the use of deadly force against nonviolent suspects." Tennessee v. Garner,471 U.S.1,9(1985). "[T]he test of reasonableness under the Fourth Amendment ... requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers. or others and whether he is actively ... attempting to evade arrest by flight." Graham v. Conner,490 U.S.386,396(1989)[citing, Garner,471 U.S. @ 8-9]. The test for reasonableness is an objective one, without regard for whether a police officer acted in "good faith" or "maliciously and sadistically for the very purpose of causing harm". id. @ 397. However evidence of an officer's "ill-will toward the citizen" is relevant in "assessing the credibility of an officer's account of the circumstances that prompted the use of force". id. @ 399 n.12.

Deputy Azwell's shooting of Appellant to stop his car, was grossly disproportionate to the need for self defense under §9.51(c) and USCA 4, which is shown by his calculated decision to run in front of Appellant's already aimed and moving car for a second or two, just long enough to shoot at him and then jump out of the way again before he got hit, a fabricated "threat" employed to justify shooting the fleeing Appellant who did not appear to be armed or otherwise dangerous. This conclusion is supported by several other facts such as Azwell's decision to continue vehicular pursuit of Appellant down the dead end knowing the vehicle was trapped on the dead end and Azwell could have used his patrol car to simply block the dead end at it's entry. Fraire,957 F2d @ 1272; Moser,865 F.Supp. @ 251,255(suspect pusued in his car until trapped, then shot by police, and suspect rammed police car with his own car to escape and got away, held to state a USCA 4 claim). Note that all Azwell's shots were above the horizontal center line of Appellant's vehicle and the front hood and side window pillar and passenger window shots were all clearly aimed at Appellant's person, successfully hitting him in the chest. Deputy Azwell clearly did not intend to just stop Appellant's car here, which he could have done by shooting out Appellant's tires, but chose not to. Whiddon,supra.(Whiddon was fleeing by car from police service of a warrant, drove toward trooper who shot out Whiddon's tire to stop the vehicle). And this deputy committed perjury in trial saying Appellant drove "directly" at him to cover up his excessive use of force in shooting Appellant, proven by the front-view laser test photo evidence, fabricating the threat to justify his sadistic and malicious shooting

of Appellant at issue, and of CSI Wright in trial acting in concert with Deputy Azwell to cover up his use of excessive force to shoot Appellant by effectively falsely testifying about, or at least suppressing the existence of, the "front-view" laser test photo result which irrebutably shows the Deputy falsely testifying when he testified he only shot the Appellant because the Appellant was driving directly at him. Appellant argues this is clear evidence of "ill-will toward the citizen" the Supreme Court said was relevant to incur 4th Amendment liability. Graham,490 U.S. @ 399 n.12; Fraire,957 F2d @ 1276-77[citing,Tex.Penal Code §9.51(c)]. Appellant argues the above demonstration negates the lawful **discharge** essential element of the instant offense in this case. Brock,295 S.W.3d @ 52. **Because** Deputy Azwell's shooting of the Appellant was unconstitutional and illegal under the peculiar facts and circumstances of this case, the instant aggravated threat upon a public servant "lawfully discharging" a public duty conviction must be reversed as based on the opposite of a vital fact within the State's burden of proof, requiring reversal of conviction and rendition of a judgement of acquittal. Jackson,443 U.S. @ 319; Standards of Review in Texas,34 St. Mary's Law J.,159(2002); e.g., Swann,498 F.Supp.2d @ 863; Estate of Starks,5 F3d @ 232-25; Brock,295 S.W.3d @ 52.

**6.** In conclusion, under any or all of the above arguments and authorities, there is legally insufficient evidence to convict the Appellant for intentionally or knowingly threatening Deputy Azwell by the use or exhibition of a motor vehicle against a public servant lawfully discharging a public duty, requiring the instant Penal Code §22.02(a)(2)(b)(2)(B) conviction to be reversed and a judgement of acquittal renderred. USCA 14; Jackson,443 U.S. @ 319.

B. False Testimony by Police, Suppressed Evidence by Police and Prosecutors, Failure of Prosecutors to Correct the False Testimony When it Appeared, in Violation of Due Process

**l.** Here, as in the previous subsection's argument hereinabove, the focus is again on the facts showing intentionally or knowingly threatening Deputy Azwell with imminent bodily injury by Appellant's driving his car directly at the deputy elements of the offense. See infra., Part A. This issue turns on a Texas Court of Appeals ability to consider previously undisclosed State suppressed "front-view" laser test result photographic evidence discussed hereinabove in the Facts section.

**2.** First, the Supreme Court has long required all courts to recognize the "inexpertly drawn" allegation from pro-se litigants that perjured testimony was used by the State to convict and the State's "deliberate suppression by those same authorities of evidence favorable to him." Pyle v. Kansas,317 U.S. 213,215-16(1942). Thus, when previously "undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and the prosecution knew, or should have known, of the perjury ... is fundamentally unfair, and [the conviction] must be set aside if there is any reasonable likelihood that the false testimony could have effected the judgement of the jury." U.S. v. Agurs,427 U.S.97,103(1976). Even if only the police know of the false testimony and/or suppressed evidence, this knowledge will be imputed to state prosecutors. Ex parte Adams,768 S.W.2d 281,291-92(Tex.Crim.App.1989)[citing, Giglio v. U.S., 405 U.S.150,153-54(1972)]. It is enough that the prosecutors should have recognized the misleading evidence. Ex parte Castellano,863 S.W.2d 476,481,485 & n.10

(Tex.Crim.App.1993)[citing, Duggan v. State,778 S.W.2d 465,468(Tex.Crim.App. 1999)]. It is irrelevant whether the State solicited the false evidence, since the crux of the 14th Amendment violation is "deliberate deception" by false or perjured testimony. Tassin v. Cain,517 F3d 770,778(5th Cir.2003). Perjured testimony must be proven by more that trial record contradictions, inconsistencies or conflicts in witness testimonies. Craig v. TDCJ-CID,2013 U.S. Dist. LEXIS 124976 at *13(E.D.Tex.2013)[citing, Koch v. Puckett,907 F2d 514,531( 5th Cir.1990)]. The perjured testimony must be material, and will be found material unless a reviewing court is convinced beyond a reasonable doubt that the perjury did not contribute to the conviction or the punishment. Castellano, 863 S.W.2d @ 485; Johnson v. State,169 S.W.3d 223,230 & nn.28,29(Tex.Crim.App.2005)(stating the harm standard is the same as the "beyond a reasonable doubt" standard of Chapman v. Cal.,386 U.S.18,24(1967)). The critical question to answer is, if without the perjured testimony and altered evidence, was there sufficient evidence to sustain a finding of guilt? If not the conviction will be reversed. Castellano,863 S.W.2d @ 485-86; and see, Issac v. Cain,2013 U.S.Dist.LEXIS 123864 at *6(E.D.La.2012)[citing Johnson v. Dretke,442 F3d 901,911(5th Cir. 2006)[(asking absent the knowing presentation of false testimony, whether no reasonable fact-finder would have found him guilty).

3. It is a seperate Due process violation when the State allows false testimony to go uncorrected when it appears. Tassin,517 F3d @ 779[citing, Giglio v. U.S.,405 U.S.150,153(1972)(quoting, Napue v. Ill.,360 U.S.264,269(1953))]. When the State capitolizes on it in jury arguments, a violation of Giglio and Napue is established. id.: accord, Vasquez v. State,67 S.W.3d 229,239 & nn.19-20 (Tex.Crim.App.2002)[citing, U.S. v. Bagley,473 U.S.667,678-79 & n.9(1985)]; Perkins v. State,902 S.W.3d 88,102(Tex.App.-El Paso 1995)("If the prosecution presents a false picture of the facts by failing to correct its own testimony when it becomes apparent that the testimony was false, then the conviction must be reversed ... However, the appellant bears the burden of showing that the testimony used by the State was in fact perjured."),on supplemental opinion, 905 S.W.2d 452(Tex.App.-El Paso 1995 pet ref'd).

4. When withheld State's evidence of photographs, unknown or unavailable to the appellant at the time of trial, is discovered after trial, the photographs can be considered on direct appeal if they support the appellant's positions in his trial arguments, show materiality, and show they probably would have caused a different result in another trial. State v. Fury,186 S.W.3d 67,74 & n.5(Tex.App.-Hous.[1st Dist.]2005 pet ref'd)(applying Brady v. Maryland,373 U.S.83,87-88(1963) to deny relief, as record showed complaintant stated in trial complaintant knew about pictures and where they were but did not request a continuance thus waiving the issue, failing to show the pictures were unknown or unavailable at the time of trial, the complaintant's argument changed from there were no photographs of her injuries to there were photographs of her injuries, and the photographs were consistent with the trial testimony hence cumulative). Attaching the photographs to a motion for rehearing in the Court of Appeals to show a State's witness testified falsely committing a fraud upon the trial court is authorized when faced with independant record support of the appellant's contentions, because a court of appeals has discretion to consider such new matters in a motion for rehearing when "due process concerns or the interests of justice ... compel consideration" thereof. Perkins,905 S.W.2d @ 453[citing, Rochelle,791 S.W.2d @ 124-25]; see also, Sotelo,913 S.W.2d @ 508-09]

27

(con't) Appellant requests this Court ORDER the State to file a "Response" under Tex.R.App.P.49.2 to give the State an opporunity to respond to the merits of the allegations of pro-se identified reversible errors in rebuttal, and by admitting to the authenticity of Appellant's submitted "front-view" laser test photo State's evidence compelling value for exoneration. Lewis v. State,402 S.W.3d 852, 855-56,865-66(Tex.App.-Amarillo 2012),pet.granted,2013 Tex.Crim.App.LEXIS 1526 (10-23-13)(state declined to respond to Rule 49.2 order, court granted relief ref'mg "life w/o parole" sentence to "life"); Reeves,2004 Tex.App.LEXIS 6815 (in Rule 49.2 response State admits to Double Jeopardy violation by Aggravated Assault on Public Servant, and Aggravated Assault convictions, vacating latter). Given the structural nature of many of Appellant's arguments and authorities on the merits of his pro-se identified reversible errors as briefed throughout herein, and the fact that the record supports Appellant's pro-se demonstration of false testimony, suppressed evidence and knowing failure to correct same when it appeared in trial, Due Process concerns and the interests of justice should compel this Court to consider Appellant's previously suppressed or un-available to him "front-view" laser test photo State's evidence under Sims v. State,99 S.W.3d 600,601-04(Tex.Crim.App.2003), Sotelo,913 S.W.2d @ 508-10, cf: Fury,186 S.W.3d @ 74 & n.5(Brady claim of withheld photo evidence was rej-ected, but holding previously undisclosed Brady material photo evidence must support Appellant's trial and appeal arguments, must be material, and must demonstrate the photo at issue would probably cause a different result in an-other trial, to be considered in a direct appeal context); Perkins,902 S.W.2d @ 102, supp.opin., 905 S.W.2d @ 452-53(claim of perjured expert witness testi-mony about a scientific study which appellant attached to his motion for re-hearing and argued for first time, was rejected for, first, not being part of the appellate record, and second, for finding no support in the appellate record otherwise; on supp.opin. court held it could take judicial notice of the attach-ed study because under Rochelle,supra. it had discretion to consider new matter raised for the first time in a motion for rehearing, for Due Process concerns or in the interests of justice, but would not do so here based on weakness of study as evidence and argument in support). After all, it is the State's duty and obligation under Federal Due Process, when confronted with false or perjorious State witness trial testimony and misleading evidence, to correct the false and misleading testimony and evidence at that time. Tassin,517 F3d @ 778-79; Vasquez,67 S.W.3d @ 239 & nn.19-20; Adams,768 S.W.2d @ 291. Once the State is so ordered here, arguably Due Process would require the State to admit Appellant's submitted, "front-view" laser test photo evidence is authentic, their contents clearly show reasonable doubt exists as to Appellant's driving "directly" at Deputy Azwell when shooting Appellant because the front hood shot clearly came from well to the side of Appellant's vehicle and not from the front as Deputy Azwell falsely testified to ultimately resulting in a rever-sal and acquittal on the count I aggravated threat of a public servant charge and reversal and remand on counts 2,3 & 4 for a new trial with a jury properly informed on the lack of credibility of Deputy Azwell and CSI wright.

Should the State continue to take an adverse position, Appellant requests the Court abate the appeal and remand for findings of fact on the authenticity of the "frontview" laser test photos, and the impact of it's contents upon the State's case in trial, after an evidentiary hearing with appointed defense counsel to assist Appellant, under the heretofore cited substantive law, and Tex.R.App.P.44.4, LaPointe v. State,225 S.W.3d 513,521-23 & n.9(Tex.Crim.App. 2007), Spence v. State,758 S.W.2d 597,599-600(Tex.Crim.App.1988) & Michaelwicz v. State,186 S.W.3d 601,613-16(Tex.App.-Austin 2006 rehg ovrld,pet refd, cites omitted), with a return to the Beaumont Court of Appeals for judgements on the pro-se identifiedreversible constitutional errors.

27A

5. The Beaumont Court of Appeals abused its discretion by only holding Deputy Azwell's testimony supported finding Appellant "tried to run him over" while continuing "to evade arrest" justifying the deputy having "fired several shots at Martin's car when Martin drove directly toward him" and Martin's "driving directly at" the deputy "is not contradicted" by the record, see Appx.38-39, 5/21/14 Mem.Op.,6-7, without also having construed the submitted "front-view" bullet trajectory laser test photo evidence results proving the deputy's testimony that he was in front of Appellant's car driving directly at the deputy when the deputy shot into the front hood, was irrebutably false and perjorious testimony. Appx.31-32(suppressed "front-view" laser test photo result, and State's Exhibit "side view" laser test photo result). Had the Court construed this "front-view" laser test evidence and the related arguments, it could not have concluded this specific testimony was not contradicted. See infra.,Facts,¶¶3-8.

6. Deputy Azwell's fatal testimony is that he was "directly" in front of Appellant's vehicle driving "straight" at him when he shot into the front hood. As the "front-view" laser test photo shows, that shot was obviously and irrebutably fired from the side of Appellant's car, just like the other two shots. This photo evidence rises far above mere trial record contradictions, inconsistencies or conflicts in witness testimonies. It demonstrates by the State's own expert witness laser test photo results that Deputy Azwell falsely and perjoriously testified he was right in front of Appellant's car while Appellant was driving "directly" at him to run him over, because the front hood shot laser beam is coming out of the front hood's bullet hole at what is conservatively an 80°-85° angle to the side of the car. This demonstrates materiality. Compare, infra.,Part A.1,3, with, Castellano,863 S.W.2d @ 485.

7. In trial it was undisputed that shots 2 and 3 came from the side of Appellant's car, one of which hit him in the chest leading to his surrender. The State's bullet trajectory expert CSI Wright testified it was the first shot that went through the front hood, explaining its trajectory after going through the hood, it's vertical trajectory before going through the hood, but dodged the issue of it's horizontal trajectory before going throught the hood. At this exact point, trial counsel "passed" this witness, instead of introducing the "front-view" laser test photo results into evidence and asking CSI Wright why he was dodging the issue of the "front-view" laser test photo result showing the deputy was firing into the front hood from the side of Appellant's car. Appx.1-5(Deputy Azwell and CSI Wright testimonies). The State has admitted trial counsel's main defense against the aggravated threat of a public servant charge was Azwell fabricated his driving "directly" at him testimony to cover up his excessive force in shooting the Appellant from the side of the car. Compare, 2/10/14 filed State's Brief,8-9, with, Appx.7-9 - Defense's Closing Jury Arguments. Thus the front-view laser test photo result supports Appellant's trial arguments with independant record support. Fury,186 S.W.3d @ 74 & n.5; Perkins,905 S.W.2d @ 453. Trial counsel's failure to investigate or argue the front-view laser test photo results to exonerate Appellant in this context was ineffective assistance of counsel, Draughton v. Dretke,427 F3d 286,296(5th Cir.2008), and is so outrageous as to demonstrate no possible sound trial strategy could exist for this deficient conduct allowing an ineffective assistance of counsel on this direct appeal record. Garcia v. State,57 S.W.3d 436,440(Tex.Crim App.2001). Since Appellant could not have been driving directly at Deputy Azwell when he shot at Appellant all three times from the side of his car, and still "threaten" the deputy by driving "directly" at the deputy, the evidence is legally insufficient. See infra.,Part A.1,3(arguing innocence and citing cases).

Agurs,427 U.S. @ 107,109(asking if "the evidence is so clearly supportive of of a claim of innocence" and if the evidence "is highly probative of innocence") Castellano,863 S.W.2d @ 485-86(asking if without the perjured testimony and altered evidence, there is insufficient evidence to sustain a finding of guilty)

8. The State knew of the existence of the "front-view" laser test results, as it is State's evidence, and a prosecutor had to select from all the laser test photo evidence to only wind up with "side-view" laser test results in the State's exhibits filed in trial. Clearly, these front and side view photos contain Appellant's car being tested by police using a laser beam, the only difference being that the front-view laser photos have a clear exculpatory value which the jury was prevented from being shown in this case, and the side-view laser photos have a clear inculpatory value when the jury is presented them without also being presented with the front-view laser test photo results for context. These photos show the same laser beam shooting out of Appellant's front hood bullet hole. The problem is the side view of the laser beam, out of context, appear to show a bullet is shot from the front of the vehicle. However, view the side view and the front view together, and it becomes clear that if that Bullet was shot at ANY angle to the vehicle, it was shot from an 80°-85° angle to the side of Appellant's car. Viewed in context of Deputy Azwell's false testimony that Appellant was driving directly at him when he shot into the front hood, and CSI Wright's evasive testimony on whether his laser test showed Deputy Azwell was in front of Appellant's car hence supporting the deputy's claim Appellant was driving directly at him when he fired at Appellant, or whether his laser test showed Deputy Azwell was on the side of Appellant's car hence showing the deputy falsely testified in trial to establish the essential fact to the prosecution's case that Appellant threatened the deputy by driving "directly" at him, and the conclusion is inescapable that the prosecution, Deputy Azwell and CSI Wright ALL "knew" about the false testimony of Deputy Azwell, suppressed the existence of the "front-view" laser test photos from the jury, and then failed to correct this false testimony and suppressed evidence when it appeared in trial that would show it. Hence, the knowing presentation of false evidence and suppressed evidence is shown, since the police themselves falsely testified and suppressed material evidence. Castellano,863 S.W.2d @ 481,485 & n.10; Adams,768 S.W.2d @ 291-92[citing, Giglio 405 U.S. @ 153‑54].

9. The State certainly capitolized on Azwell's false testimony, by relying on it almost exclusively in jury arguments. Appx.7 - R.R.,v.9,82-83,114-16. The State argued Appellant saw the deputy without evidence to prove that, was almost run over by Appellant hence the car was a deadly weapon, and then went on and on about how this threat to Azwell placed him in "much fear" as "the potential risk" to him "became very very real to him" and "his life has not been the same since that moment". id. All this jury argument is capitolizing upon Azwell's underlying false testimony that Appellant drove directly at him, dressed up by further perjury about how the deputy felt which is irrelevant, establishing the Due Process violations of failing to correct false testimony when it appears and relying upon it in jury arguments. Tassin,517 F3d @ 779[citing, Giglio,405 U.S. @ 153 & Napue,360 U.S. @ 269]. Though the State also relied minimally upon the testimony of Casey Meadows "who saw it from her home", i.e., "the danger that she thought the officer was in", her actual trial testimony is too equivocal to rely upon exclusively to prove the Appellant was driving his car directly at Azwell. Appx.5-6, R.R.,v.6,22-29. First, she was in her garage

which is no more than 10-15 feet away from her house. R.R.,v.10 - State's Ex.215 ("Lieca Scan" drawing of driveway, garage and house). Second, Meadows testified she "panicked" and "ran from the garage to the house". Although there is no timeline established specifically, it could not have taken her longer then mere seconds to run this distance. Appx.5 - R.R.,v.9,22-23. Third, Meadows testified she was still outside when she saw Appellant's "car and two police following" coming "down the street", then saw "a policeman standing in my yard, and [Appellant] was driving toward the policemen". id. @ 23. Fourth, the incar CD video evidence shows Deputy Azwell parked his patrol car in Meadows driveway at the street end just before getting out of his car, yet she said she could not see it "because I was running towards the house". id. @ 24-25. Fifth, Meadows then changed her testimony to the police car had stopped in front of her house before the driveway,when she saw the deputy standing in her yard. id. @ 25. Sixth, Meadows testified she didn't see the deputy "get out of the car" but did see him standing in the yard. Appx.6 - R.R.,v.9,pg.25. This evidence merely shows a panicked woman, running a very short distance in seconds, who momentraily saw the Appellant driving "toward" Deputy Azwell during a glance behind her - Ms. Meadows did not see Azwell getting out of patrol car a few seconds before, and didn't see him shooting the Appellant a second or two later. Indeed, she doesn't even see Azwell's patrol car which is parked right beside him on Meadows' driveway, shown by the CD in car video to be there, and then changes her mind that it is parked in the street. At best, Meadows testimony corroborates Azwell's claim Appellant was driving "directly" at him, by Meadows claim Appellant was momentarily seen by her to be driving "toward" Azwell. But this testimony has no bearing on whether Azwell shot the Appellant from in front of, or beside, Appellant's car, since Meadows admitted she could not see that precise event. Therefore, Meadows' "driving toward" testimony is so ambiguous, that even the State could not rely upon it in closing argument, instead arguing she "saw it from her home" and "she witnessed the danger that she thought the officer was in". Appx.,7 - R.R.,v.9, pgs.82-83,114-16. Therefore, Meadows' testimony is irrelevant to the ultimate factual issue to be decided by this Court. Hence, the State capitolized on Deputy Azwell's falsified or perjured testimony during jury argument, establishing a Due Process violation for the State's failure to correct this false or perjured testimony during trial. Tassin,517 F3d @ 779[citing, Giglio,supra. & Napue,supra.].

Conclusions

1. The trial and appeals courts abused their discretions by failing to take into consideration the facts that a second or two before Appellant's car passed between Deputy Azwell's and the resident's vehicles parked on the driveway, Deputy Azwell ran into that space and right in front of Appellant for a second or two long enough to fire his weapon and jump out of the way again. See infra. Facts 3,5. This distinction alone establishes legally insufficient evidence Appellant "threatened" Deputy Azwell. See infra., Arguments A.1-3. T.R.A.P.47.1.

2. The evidence is also legally insufficient to show Deputy Azwell was in the terms of the statute "lawfully discharging" his duty to arrest Appellant, since the "front-view" laser test photo result evidence shows the deputy used unconstitutional excessive force to arrest him contrary to USCA 4 and Tex.Penal Code §9.51(c), establishing the opposite of the vital fact of lawful arrest required by the statute hence insufficient evidence. See infra., Arguments, 4-5. Tex.R.App.P.47.1,49

3. The "threaten" and/or "lawfully discharging" elements of the offense in this conviction were entirely and only supported by false testimony, suppressed material evidence and the State's knowing failure to correct false testimony and suppressed evidence when it appeared in trial, in violation of Due Process.

## 7. VIOLATION OF APPELLANT'S RIGHTS TO CHOICE OF COUNSEL AND CONFLICT-FREE COUNSEL, UNDER USCA 6 AND TEXAS CONSTITUTIONAL ART.I, SECTION.10

Facts

Trial counsel presented a motion for new trial, arguing ineffective assistance of previous trial counsel Mr. Ward due to his premature withdrawel from from the case and Mr. Boyd's substitution into the case. See R.R.,v.14,1. The same facts also establish the trial court violated Appellant's right to assistance of counsel. Ward was paid in advance by Appellant's elderly mother, when plea negotiations foundered Mr. Ward refused to defend Appellant in trial, filing a motion to withdraw, which the trial court denied. C.R.226-31. One 4/27/12 payment to Dick DeGuerin was made, two letters on DeGuerin letterhead were thereafter issued for representation which "does not include the fee for going to trial" and this fee was "nonrefundable". R.R.,v.12, Defense Exhibits 1-4. Appellant did not find out that Ward's representation was conditional, until after he'd rejected plea offers of 40 years and 35 years, only learning of this conditional representation during Ward's motion to withdraw hearing. R.R.,v.14,pgs.30-31,38. Trial counsel Mr. Boyd argued Dick DeGuerin and Mr. Ward took Appellant's $55,000.00 in bad faith, refusing to go to trial after Appellant unknowingly refused two plea offers based on the purported letter contract Appellant never knew about until it was too late. R.R.,v.13,pgs. 26-27. And see, Appx.14 - Sept.20,2012 MTW Hearing,R.R.5. Trial counsel Mr. Boyd's first appearance in this case was during this MTW hearing, his purpose being to represent Appellant against Mr. Ward, which succeeded when the trial court denied Mr. Ward's motion to withdraw. See Appx.15-16 - Sept.20, 2012 MTW Hearing,6-7. When confronted with this dispute, the trial court advised Appellant, "Here's the deal. You have to pay your attorney. Otherwise your attorney is not going to want to do a good job for you." See Appx.14 - Sept.20,2012 MTW Hearing,5. One week later Mr. Boyd and Mr. Ward appeared in the trial court and agreed to let Mr. Boyd substitute for Mr. Ward, during which the State withdrew it's plea offer of 35 yrs. See Appx.23-27 - Sept.27,2012 MTS Hearing, 4-8. In the new trial hearing Appellant explained that after the trial judge initial denial of the MNT, the prosecutor "Rob" "went off on me", Mr. Ward told Appellant he was "not happy" with him but was "stuck" with going to trial, as Appellant wept from the stand that he feared he was going to get railroaded by "Rob" and Mr. Ward, especially after the trial judge's advice that Ward was "not going to do a good job for" Appellant since Appellant didn't have any more money to pay Ward, factual issues that were not objected to by the State. R.R.,v.14,pgs.32-33. Appellant emphasized that his elderly mother had hired Dick DeGuerin, not Mr. Ward, id.,pgs.47-48, and after spending the large amount for them of $55,000.00 they didn't "have no more money" to pay lawyers. id.,30. Boyd argued Ward withdrew prematurely because the trial court's order to Ward to defend Appellant, did not mean a plea would not still be worked out, id., highlighted by Martin's merely contesting Mr. Ward's withdrawel effort alone resulted in Appellant obtaining a 35 yr. plea offer, better than Ward's

31

40 yr. plea offer. Mr. Boyd emphasized the trial judge's comment to Appellant improperly influenced the plea proceedings and Appellant's ability to proceed with chosen counsel. R.R.,v.14,pgs.26-27,66-71.

## A. The Right to Choice of Counsel

The Sixth Amendment confers a right to retain the attorney of one's choice. Powell v. Alabama,286 U.S.45,53(1932). The right to choose counsel can be violated even if erroneously substituted counsel is effective because the choice versus the quality of representation are distinct rights. U.S. v. Gonzalez-Lopez,548 U.S.140,147-48(2006). While this right is not absolute under USCA.6, giving trial courts the right to balance counsel of choice against the interests of judicial integrity and efficiency, Wheat,486 U.S. @ 162, this right IS absolute under Tex.Const.Art.I,§10. Jones v. State,926 S.W.2d 386,390-91 & nn.21,22 (Tex.App.-Ft. Worth 1996)[citing, Holloway v. State,780 S.W.2d 787(Tex.Crim.App. 1989) & Clinton v. Stearns,780 S.W.2d 216(Tex.Crim.App.1989)].

Appellant's family paid Dick DeGuerin's law firm $55,000.00 via associate counsel Mr. Ward to represent Appellant, but only Mr. Ward represented him during pre-trial hearings alone. When plea negotiations failed, Mr. Ward demanded more money to go to trial, which Appellant's family did not have. However, Appellant did not know of this contract and it's terms until after he'd turned down two plea offers, only finding out about the contract's terms during Ward's motion to withdraw. When the trial judge advised Appellant to pay his lawyer Mr. Ward "or he would not do a good job for you", this improperly interfered with the plea bargain process, and Appellant's choice of counsel Mr. Ward up to that point. Remember, he came to the trial court with another hired lawyer Mr. Boyd to fight against Mr. Ward's withdrawing from the case. The trial judge statement as such intimidated and coerced Appellant to dismiss Mr.Ward after the motion to withdraw hearing, which was done a week later in the motion to substitute hearing. The trial judge improperly interfered with Appellant's choice of Mr. Ward as counsel when giving the improper advice to him to pay Mr. Ward or else! Therefore, Appellant's Federal and State rights to choice of counsel were violated by the trial court authorizing a new trial;.

## B. The Right to Conflict-Free Counsel

See infra., Issue No.1,C,1-3. The Sixth Amendment confers a right to the effective assistance of conflict free counsel. An actual conflict exists whend defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending divergent interests or competing interests of the client. Perillo,205 F3d @ 781. If a fee contract actually hinders an attorney's performance or prejudices the defendant by rendering the result of the trial fundamentally unreliable, relief is authorized. Beets v. Scott,65 F3d 1258,1274(5th Cir.1995)(en banc).

Attorney Ward compromised his duty of loyalty or zealous advocacy to this Appellant, by taking every last dime from Appellant's elderly mother to represent her son, locking her into a no trial contract after the payment knowing only he would be representing Appellant for pre-trial hearings only, and then the Appellant was never told by anyone that there was a pre-trial only clause to this "contract". The State waived the issue of contesting Appellant's actual knowledge of the contract's terms by not disputing the issue during themotion for new trial proceeding's Appellant's testimony on the issue. Had the

Appellant known of the terms of this alleged "contract" from the outset, he would have known then his family didn't have any more money to pay lawyers, his family had not purchased for him the best TRIAL lawyers in Texas, and thus would have fought Mr Ward's "contract" terms from the outset, or at least made a different decision about the last plea offer of 35 yrs instead of outright rejection. Clearly, Mr. Ward's interest in his "contract" was conflicting with Appellant's interest in obtaining the best defense counsel he could afford in Texas, preventing Mr. Ward from loyally and zealously advocating for him. most readily shown by Appellant's having to obtain another lawyer Mr. Boyd to fight against Mr. Ward's attempt to withdraw from representing him on the record, Accordingly, Appellant is entitled to a reversal of all convictions and remand to the trial court for a new trial, because Mr. Ward was prevented by his interest in the contract's fees and his relationship with the DeGuerin Law Firm from vigorously promoting his welfare. Perillo,205 F3d @ 799; Beets,65 F3d @ 1274.

## C. Involuntary and Unknowing Rejection of 35 Year Plea Offer

Appellant argued his being kept in the dark about the fee contract's actual existence and it's terms during the course of this pre-trial proceeding, up to the September 20,2012 motion to withdraw hearing, deprived him of effective assistance of counsel during the plea proceedings. This certainly prejudiced Appellant because he rejected the 35 yr. plea offer without knowing that he did not have a trial counsel in Mr. Ward or Mr. DeGuerin to go to trial with. By the time this 35 yr. plea offer was repeated on September 20,2012 on the record, the process had already become so infected with the constitutional error of lack of knowledge, that Appellant could not have made a valid decision on the plea offer in that hearing, especially given his shocking discovery during this hearing that all this time Mr. Ward never intended to go to jury trial for Appellant at least not without $35,000.00 more money he did not have! The trial judge's comment about Appellant had to pay his lawyer or else, simply highlights Appellant's lack of knowledge of this contract's terms before the September 20,2012 hearing itself. Therefore, Appellant is entitled to a reversal of the convictions and remand to the trial court for either a new trial or reimplementaion of the 35 yr. plea offer. Lafler v. Cooper,No.10-209, 566 U.S. (2012), Slip Op.1-15; Strickland,466 U.S. @ 692.

## Conclusions

Based on any or all of the above claims, Appellant requests his convictions be reversed, and the case remanded to the trial court for a new trial. Tex.R. App.P.47.1,49

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERRED, the Appellant respectfully prays this Court will GRANT relief in the form of (1) reversal of the count I aggravated threat of a public servant conviction for legally insufficient evidence, prosecutorial misconduct, and render a judgement of acquittal (2) reversal of the count II evading arrest conviction for Double Jeopardy and Unconstitutional Vagueness of a Criminal Statute violations ordering the prosecution dismissed with prejudice (3) reverse the count III conviction for legally insufficient evidence of tampering with evidence and render a judgement of acquittal, and/or (4) such other relief as law, justice and equity requires. Tex.R.App.P.44.2(a), 44.4.

## PROOF OF SERVICE

I certify and affirm placing a true and correct copy of the foregoing Supplemental Brief; Pro-Se Identifed Reversible Errors, into the prison mailbox on 12/24/2014, addressed to: (1) Abel Acosta, Clerk of Court, texas Court of Criminal Appeals, P.O. Box 12308, Capitol Station, Austin, Texas 78711-2308; (2) Carol Anne Harley, Clerk, Beaumont Court of Appeals, 1001 Pearl St., Beaumont, Texas 7701; (3) the State prosecuting Attorney, Price Daniel Sr. Bldg., 209 W. 14th St., Rm.202, Austin, Tx.78711; (4) attorneys Jason Larman and Chris Allen of the Montgomery County District Attorney's Office, 207 W. Phillips, 2nd Fl., Conroe, Tx. 77301 (current D.A. is listed as Michael McDougal, Suite 106, 301 N.Thomson St., Conroe, Tx. 77301).

Respectfully Submitted,

*Peter James Martin*

Peter James Martin, TDCJ-CID #1846003, pro-se,

Stiles Unit 3060 FM 3514  Beaumont, TX 77705

34

PETER JAMES MARTIN, Appellant,

v.

THE STATE OF TEXAS, Appellee,

On appeal from the 221st Judicial
District Court of Montgomery County,
Texas, Cause No. 12-03-02604-CR

## APPELLANT'S PRO-SE APPENDIX, VOLUME I OF II VOLUMES

Volume I Contents

Pages

1-32

## Inmate Declaration

I, Peter James Martin, being presently incarcerated in the Texas Dept. of Criminal Justice, Correctional Institutions Division, declare under penalty of perjury that the above-listed records are true and correct, unaltered copies of the originals already in the record in the instant case or in the possession of State prosecutors in the instant case. These facts are within my own personal knowledge. EXECUTED ON DECEMBER 24, 2014.

## Certificate of Service

I certify and affirm placing a true and correct copy of the foregoing into the prison mailbox on 12-24-14 addressed to: State Prosecuting Attorney, Price Daniel, Sr, Bldg 209 W. 14th St, Rm 202, Austin, TX. 78711. The Montgomery County District Attorney's Office, Assistant DA's Jason Larman and Christopher Allen, 207 W Phillips, 2nd Fl., Conroe, TX 77301 & The Clerk of the Beaumont Court of Appeals, Suite 330, 1001 Pearl St., Beaumont, TX. 77701.

Peter James Martin

Peter James Martin #1846003
Stiles Unit 3060 FM 3514
Beaumont, TX 77705

# TESTIMONY OF DEPUTY CHRIS AZWELL

R.R.,v.5,pg.86(direct)

State: So when you got out of your car, tell us where you went.

Azwell: From that point, I went to the rear of my patrol car. There was approximately a car length and a half between my patrol car and the vehicles parked in the driveway. I had nothing else to use to contain Mr. Martin and his vehicle. I stepped directly in between these vehicles and my patrol car, made eye contact with Mr. Martin through the windshield of his patrol car (sic) and gave him a visual command to stop at that point.

R.R.,v.5,pg.87

... A. My vehicle is parked here. The rear of my patrol car. And I step behind here. Mr. Martin is in the yard. He's making his second loop through the yard. **He's facing me directly,** and that's when I give him the ...

R.R.,v.5,pg.88

... signal to stop.

Q. And at this point, do you have your duty weapon drawn?

A. Yes, I did draw my duty weapon. ...

Q. What did Peter Martin do when he saw you making that stance that you're showing us right now?

A. I remember that he made eye contact with me. And **he accelerated aggressively,** and I remember grass from the yard flying up, **and he came directly at me.**

Q. What did you think when you heard that engine accelerate and you saw that look in his face? What was going through your mind?

A. I knew that he was going to try to get out of there at any cost, and it didn't matter if I was standing in the way or not.

Q. At the **moment he accelerated, were you directly in his path?**

A. **Yes, I was.** ...

R.R.,v.5,89

Q. How, if at all, were you able to survive that? **How were you able to get out of the way?**

A. Just **by moving out of the way of the vehicle coming towards me.** And actually just narrowly. I mean he probably passed maybe a foot, a foot and a half next to my body.

Q. ... If I'm driving straight towards you like this, which way did you get out of the way?

A. I backed out of the way towards my vehicle to take cover behind my vehicle.

Q. So you were favoring towards the passenger side of the defendant's car?

A. Correct.

Q. **Is that when you fired those shots in that moment?**

A. Out of -- once again, out of fear of my -- ...

R.R.,v.5,pg.90

... fear of my own welfare, my own life. And not only the residents that were in the area. Kids and everybody else. ...

Q. Immediately after the shots were fired and you've moved out of the way, what is the very next thing that you have to do?

A. I -- he continued to evade. And I got back into my patrol car and continued to pursue.

R.R.,v.6,pg.14(cross)

Q. ... There is some shots that we hear on one of those tapes, I guess. Was that on that tape, do you think?

A. That's correct.

Q. But no video at all.

A. Not of the shooting.

Q. And basically we just have your word, don't we?

A. At this point. ...

R.R.,v.6,pg.16

Q. ... you said you shot Mr. Martin not just to defend yourself but also to defend the children, the children and the neighbors.

A. That is correct.

Q. So you find this shooting, you were defending children and neighbors?

A. Correct.

Q. Do you know what the law is on the use of deadly force by an officer, anyone else?

A. Yes, I do.

Q. Well, you want to explain your understanding of what, when and where you or anyone else can use deadly force? In justification or excuse.

A. When in fear of imminent serious bodily injury or death, deadly force can be exercised.

R.R.,v.6,pg.17

Q. Do you know of any other test? I mean did you take a course in that? Did they train on when and how you can use deadly force?

A. Yes.

Q. Do you understand that, do you remember anything about that **it's got to be reasonable under a reasonable man's perception? It just can't be what you think, subjectively,** it's got to be judged by a reasonable standard. **You didn't even mention that** when you just set it out?

A. I understand when deadly force can be used. ...

Q. Would you, once again, set out when you think you can use deadly force in self-defense of yourself or others?

R.R.,v.6,pg.18

A. Deadly force can be used when you are in fear of serious bodily injury or imminent death.

Q. According to you only?

A. No.

Q. What else is involved?

A. Can you rephrase the question?

Q. If you think you have set out the entirety of the law on when you can use deadly force?

State: You Honor, I'm going to object to relevance now. The officer said what he thinks it is reasonable. He's not here to take a law test on what every element is of that.

The Court:Sustained.

Q. Do you think you had the right to use deadly force to defend children under these circumstances?

A. Yes, I do. ...

R.R.,v.6,pg.19

Q. Now, ... the car is approaching. Let's just say I'm the car.

A. Yes, sir. ...

Q. I'm in the driver's seat, right? Okay. Am I coming this way like this, and the -- which way?

A. Directly at me, yes.

Q. Directly at you like this?

A. Yes sir.

Q. And then what?

A. At that point, I gave the command to stop. A visual command. As I had my pistol, and he acknowledged that. ...

R.R.,v.6,pg.20(cross)

Q. Uh-huh. He acknowledged it?

A. And he refused -- he made the choice not to stop. Continuing directly in the path where I was standing. ...

Q. And then what? Then what did you do?

A. As I made the split second decision to move out of the way, I fired three shots at him.

Q. At him.

A. Yes.

Q. All right. ... And when are you firing the shot?

A. First shot was approximately here, was across the front of the car through the front of the windshield. Then as I moved out of the way, he passed by.

Q. And then what?

A. Then two shots were rapid right after that. One through the side window and one into the --- ...

R.R.,v.6,pg.21

Q. All three shots were fired before the car passed you?

A. That's right. ...

Q. So, how fast were these shots fired?

A. All three shots were fired within, I would say, a second to a second and a quarter. ...


## TESTIMONY OF C.S.I. MARK WRIGHT

R.R.,v.6,pg.155-56(direct)

Q. And where do you believe, based on your investigation, that the first shot was fired? Or where was the first point of impact on the car?

A. Would have been the hood. The one that deflected, that it perforated the hood, richoted (sic) off the windshield. ...

R.R.,v.6,pgs.160-164

Q. So tell us, you were about to explain to us how you can tell the angle or how you can recreate the angle of impact from a shooting. So if you would please explain to us how you would do that?

A. Yes maam. Q.(sic) I'm sorry. What I was saying is when a bullet per-forates an object, if there is no secondary impact, and the original, the prim-ary impact is thin, if I try to put a rod through there, if there is nothing -- if there is no secondary impact over here, there is nothing -- you can't -- there is nothing to rod. ... On the vehicle itself, as far as the angles of impact on there, there was only one that I was able to, because there was no -- there was -- the second bullet was fired. It perforated the window, and it broke it. So my primary impact was gone. The secondary impacct would have been the defendant. And the third impact would have been the door post. So I've lost my primary and secondary impact. So I cannot do a trajectory on that. The third one, it just went into the first, had a primary impact and then dropped down into [pg.162] the dorr of the frame on the passenger side, which I believe would have been the third shot. The only one I was able to

3

get an approximate on was **the one that struck the hood.** And ricocheted off into the glass, and **I was only able to get that based on the bullet's path with a laser.** So I was -- it was a very rough estimate as far of angle of impact ... The lasers are set up to catch the groove where it ricocheted through that. And as I said this was very hard to do because what I'm basically trying to do is **I'm trying to get the laser to follow the path of the bullet** and to come back up onto the windshield where it -- because it deflected again off the windshield wiper blade and then onto the windshield. This was the best trajectory that I was able to get based on this. It actually went through, and it's hard to see in the photograph. But the laser actually traveled through and [pg.163] came up to the impact side on the windshield.

Q. State's 201 is just another view [of State's 200].

A. It's basically the same photograph. What I'm trying to do --- and this is --- the only reason that you can see the laser is there's a fog. That's why you kind of lose the laser. Is I'm trying to show actual level on that first photograph. Your angle looks kind of distorted. So I was trying to show more of an actual heighth (sic) on it, per se.

Q. ... are you familiar with the kind of the topography of that scene?

A. Yes, maam.

Q. Is the driveway higher or lower than the open area next to the drive-way?

A. The driveway is higher by, I'd say, approximately an inch to two inches. ... [pg.164]

Q. So So you're familiar with [Deputy Azwell's] account of events that happened that day?

A. Yes., maam.

Q. And do these -- the investigation that you've done and where you found the bullets to go in, is that consistent with what Deputy Azwell says happened that day?

A. Yes, maam.

Q. **As far as where he was standing when he first fired and everything like that?**

A. **Yes, maam.** Even -- if I may?

Q. Yes.

A. Even though this is, it's very rough depiction of this, of the traject-ory, and based on where the vehicle was when this bullet was fired going over as the prosecution was saying, the uneven ground, Deputy Azwell would have been in close proximity of the vehicle, based on -- I believe Deputy Azwell is about five six, five seven in hieghth (sic). So he would have had to have been relatively close for this shot to have been fired. ... R.R.,v.6,pgs.169-71(cross)

Q. ... Let's go with **the second two shots. There's no question they were fired in the side of the car. Isn't that true?** [pg.170]

A. **Yes, sir.** They came from that direction, yes sir. ...

Q. And if I were to tell you Azwell testified that these shots were fired within a second or two, you would'nt -- of each other, you would'nt ques-tion that, would you?

A. No, sir. That's reasonable. ...

Q. **So, if the second two shots were fired in the side of the automobile, as it was passing,** and this car was driving, perhaps ten or 20 miles, I believe an hour, **the first shot would have probably been fired on the side of the auto-mobile, too, don't you think?**

A. **Sir, that's speculating speed, and I could'nt make that type of spec-ulation on it.**

Q. If this jury were to look at this automobile, could you have that automobile towed down here in front of the building, we could take the jury out there to look at it?
A. If so ordered yes, sir.
Q. Or we could go out there to that storage place?
A. Yes, sir.
Q. Okay. All right.
MR. BOYD: I'll pass the witness
THE COURT: You're welcome, sir
MS. LANNING: No further questions from the State. Your Honor.

## TESTIMONY OF CASEY MEADOWS

R.R.,v.6,pgs.22-27(direct)

Q. Did you hear anything while you were in your garage?
A. Yes. I heard sirens and like squealing of tires. ...
Q. When you first heard these sounds, what did you think about?
A. When I realized, like I heard them, they ere coming down the street, that it was possible the people didn't know it was a deadend street. I'm one of the last houses, so I kind of panicked. [pg.23]
Q. ... what did you do?
A. **I ran from the house to the garage.**
Q. Were you still outside your house when the car came down the street?
A. Yes.
Q. Describe for us what you saw come down your street?
A. I saw that light blue car and two police cars following.
Q. **Tell us what you saw the blue car do?**
A. I have two driveways He turned in the second driveway and came across — the second driveway isn't cement. the first one is. He came across my cement driveway, like through my yard.
Q. **What did he do after he drove through your yard?**
A. **There was a policeman standing in my yard, and he was driving toward the policeman.**
Q. But before that happened, before we get to that, what were you think-ing as you were watching this car drive through your yard? [pg.24]
A. I was nervous possibly he was going to drive into my garage, that was the reason I felt like I needed to get out of the garage. ...
Q. Now, you say you saw police cars. ... Were they behind the blue car, in front of the blue car?
A. Behind.
Q. And did any of the officers drive into your driveway?
A. One stopped before the driveway and one followed him to the second driveway.

Q. Talking about the one that who followed him to the second driveway. ... **from where you were standing, could you see that police car?** [pg.25]
A. **No, I was running towards the house.**
Q. At some point, did you look back and look up to see what that police car was doing?
A. The second one that was following him?
Q. Yes.
A. No.
Q. **What about the first one?**
A. **He stopped before the house, and the policeman was standing in the yard.**

Q. Did you watch the policeman get out of his car?

A. No. I didn't watch the policeman get out of the car.

Q. But you do remember seeing him standing?

A. In the yard.

Q. When you saw the policeman standing in front of you, and you were still -- can you still see the blue car in your range of vision from this time?

A. Yes.

Q. What did you see next?

A. The blue car coming across my cement driveway towards where the policeman was standing.

Q. From what you could see, where did you think that blue car was trying to drive?

A. Towards the policeman.

Q. What did you think about when you saw the car [pg.26] drive at that policeman?

MR BOYD: I'm not sure. I object to what she thought and conjured up and that. Just what she saw and observed is all that she should be testifying to.

THE COURT: Okay. Overruled.

Q. (BY MS. LANNING) Casey, what did you think when you saw that blue car driving at the police officer?

MR. BOYD: Same objection, Your Honor.

THE COURT: Overruled.

A. That he was driving towards him to hit him.

Q. (BY MS. LANNING) What was the next thing you saw happen?

A. As I was going into the house, I saw or heard, saw the policeman fire his gun.

Q. Did the police officer get hit by that blue car?

A. I'm not sure. I was going into the house.

Q. Where did the blue car go after that?

A. I'm not exactly sure.

Q. Because at this point, where were you after you saw that?

A. In my house.

Q. How many times do you think you heard the gun fire?

A. Two or three. Once I heard it, I shut the door and went to the back of the house. ...

R.R.,v.9,pgs.29-30(cross)

Q. When -- you really were quite frightened yourself, were you not?

A. Yes.

Q. You really were running away from the whole scene, getting to the back of your house, were you not?

A. Yes. ...

Q. All right. But, it's fair to say you were really turning your back on all of this because of your fear of people which you just expressed a minute ago. You really just -- you just scampered inside the house to get away from it all?

A. I believe you would, too, in the situation.

Q. Well, oh yeah. I would. Yeah. Some people would. But that's what you were doing, right?

A. Yes. Getting out of the way. ...

6

## STATE'S JURY ARGUMENTS

R.R.,v.9,pgs.82-83

... The next thing you've got to do is decide, did the defendant try to run over Chris Azwell with his car. And there's testimony for that. Chris Azwell's testimony. The last witness who saw it from her home. Their testimony is that Chris Azwell was almost run over by Peter Martin. And then you have to decide whether or not the car is a deadly weapon. Well, if he had been run over by that car, it could have killed him, so I think it's a deadly weapon. So, we've got that proven beyond a reasonable doubt, ladies and gentlemen. This defendant, on March 6th,2012, after driving recklessly all over the place is in the car, makes eye contact, maybe one eye, but makes eye contact with with Deputy Azwell. He sees the tires spin. He sees the grass fly up. And he knows he's about to be run over. That's all you have to believe in order to find him guilty of this charge. ...

R.R.,v.9,114-16

... And on March 6th of 2012, the potential risk for Chris Azwell, became very, very real to him. I want you to remember when you got to meet Chris Azwell, he was standing here and talking to you about how he was feeling, what he was thinking when he saw Peter Martin look at him and accelerate his car. He told you that his life has not been the same since that moment. He's lived hiw whole life one way, and after that day,he told you he does'nt take anything for grant-ed. This is a man whose had three children and had a wife. He's had all those blessings in his life, but they look different to him now than they used to. If that doesn't tell you how much fear he was in, I don't know what does. **If you believe Chris Azwell, if you find him credible as a witness, then that aggravated assault charge is a guilty. You can meet every element, everything you need to check off for that charge. You can believe Chris Azwell. And if you do then you can stop there.** But there's more evidence ... a police officer for 16 years. He's the Chief of Police. He told you about what it's like to be in their profession. ... **He didn't see the defendant driving at Chris Azwell, and he didn't see the shooting, but he was very worried** ... And I brought you Casey Meadows. ... she told you she was trying to get away. ... She was trying to get away because she is — saw how fast that car was going. She thought that was going to hit her, her home. **But one thing that Casey told you that is the most important thing about her testimony. Is that she witnessed the danger that she thought that officer was in.**

## DEFENSE'S JURY ARGUMENTS

R.R.,v.9,pgs.96-108

... **This officer Azwell used unnecessary force. He tried to kill a man. Now, that's because his testimony, he says that the defendant was trying to run him over.** Now, the prosecutor ... believes she's proved the case beyond a reasonable doubt that he tried to run her over. That's the issue. Is there reasonable doubt on it? And is there reasonable doubt on whether this car was a deadly weapon. That's the issue. **Now the reason why this is so important is because I think you know something's going on here.** ... You're entitled to draw reasonable inference from what wasn't presented. Who did Azwell [pg.97] talk to. Who did he — what was — **why did he have to shoot him?** [pg.98] The problem we've got is that Officer Azwell says he was threatened by being — by run over and that he's got to shoot the man. You know, the deadly weapon, you remember what he said, it's deadly force you got to be more careful as as an officer, less careful. You remember what was his answer to that. You got to be more circum[spect]. I got to use deadly force less, less actively

7

than the average citizen. But yet this man, this officer, and I jumped on people a lot, but, by God, there wasn't any reason to shoot him. There wasn't any dog gone reason to try to kill Mr. Martin. None. Look at the car. ... you remember [CSI Wright] testified that the bullet in the car here. And it deflected. Did he ever say what angle it was fired from? Did he? But anyway, whatever. My guy was shot, shot in the side of the car. Shot right through the side. Azwell is still firing. He's firing in the back. That's why he's not really a credible witness. I don't know what's happened. We all make mistakes, but my God. You don't make a mistake, Mr. Azwell, like that. And shoot somebody else. ... [pg. 100] ... I still don't see from the evidence, do you? Where those cars were. Was he behind the car? Was he in front. Was he in between? Where was he? If he did feel threatened, he didn't get hit, did he? He was able to jump out of the way. You take his testimony, he didn't get hit. He didn't get hurt. No. Who got hurt? This man here. Who got shot up and almost died. You heard spleen. And we didn't bring in the hospital records. We could have. This man has suffered a lot. There's no used (sic) to hit him again hard. ... [pgs.103] ... Look at what -- look at what Azwell justified this shooting on. You remember his testimony. Do you remember? What did he say about it? Oh, I shot him to protect the children and the women and all that on the streets. I shot him for that also. He had no reason to shoot somebody because of a car unless somebody was specifically in danger. Then he would have had a right. Maybe. Under self defense of third persons. But he has no right to shoot because he's supposed to be protecting those people generally on the streets. ... that's not the purpose of a deadly weapon or anything like that. It's just not the purpose. They've stretched the law so much, and I ask you to show a little common sense and bring them down to perspective. ... I do ask you to not guilty totally because reasonable doubt of trying to run him over. You don't know. And let me say. You [pg.104] remember, my friend, Ms. Lanning, prosecutor Lanning. You remember her opening statement? .. She said she's got a witness out there. ... she's going to testify pretty much that this man, Martin, was trying to run him over. ... The woman that was called on, Ms. Meadows, look, I didn't go into it much with her, but you got to admit, you can just say, she was scared. She was fearful. ... Her first thing was she was in that garage and ran into the house. Her back was to everything, probably. ... She really didn't say anything. Where is your back up to Officer Azwell. Are you -- excuse me. Is she asking, ladies and gentlemen of the jury [pg.105], the basis of Azwell's testimony alone. ... I'm not saying Azwell's a bad man, but he made a bad, bad decision. And if it was just even -- Officer Azwell, even if he had beaten somebody up or something, but to shoot a guy and try to kill him because of ego or whatever. And not only that, I still get this thing messed up, but here, I wish we'd had better photos, better everything, better videos. This not my problem Here is Azwell. Wait a minute. Azwell, whatever side. Azwell, he's coming through and shoots here, and probably the car is passing there. Shoots and shoots again. (Descriptive sound) And then (Descriptive sound). He's a good shot. Well, you are a good shot. He is a good shot. Congratulations. Shoot this man up and shoot and shoot him up like that. We expect more. He expects more himself. And let me tell you, I expect [pg.106] more myself. I expect more of -- I respect the police. But they don't have any business doing this. No way. You see, they've all lined up there. I didn't invoke the rule. I let them all sit in the court. But you see they have all been on that side of the court right there. .. I got one one little two bit lawyer like me trying to defend this guy. And you got the whole dadgum place. ... You got reasonable doubt on that deadly weapon, find it not true, not guilty. [pg.107] But I think from the evidence, or the lack of it, it's not guilty altogether on that first count. Trying to run him

over. But he's not guilty for sure on the two deadly weapon findings that you have been asked to issue. ... [pg.111-12] Where was Azwell? Where was he? Can you picture it? If you can picture it. And don't get mad at me for raising my voice. Where was it? Where was he? Was he in between cars? Why don't we have a video of that? He says, well video's on in front of the car. Well, get a video. It's their job to prove their case. They haven't done it. There's reasonable doubt. ...

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CASE NO. 12-03-02604-CR

THE STATE OF TEXAS        §   IN THE DISTRICT COURT OF
                            §
VS.                          §   MONTGOMERY COUNTY, TEXAS
                            §
PETER JAMES MARTIN       §   221ST JUDICIAL DISTRICT
                            §

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRIAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On September 20, 2012, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Lisa Michalk, Judge presiding, held in Conroe, Montgomery County, Texas.

Proceedings reported by machine shorthand and computer-aided transcription.

EXHIBIT

A P P E A R A N C E S


Mr. Robert Arnold 'Rob' Freyer, Jr.
SBOT No. 00798189
Assistant District Attorney
207 West Phillips Street, 2nd Floor
Conroe, Texas 77301
Phone: 936-539-7800
ATTORNEY FOR THE STATE


Mr. Todd Alan Ward
SBOT NO. 00797780
DeGuerin & Dickson
1018 Preston St., Floor 7
Houston, Texas 77002
Phone: 713-223-5959
ATTORNEY FOR DEFENDANT


Also Present:


Mr. Walter E. Boyd, Jr.
SBOT NO. 02782000
202 Travis, Suite 208
Houston, Texas 77002
ATTORNEY FOR DEFENDANT'S SISTER & MOTHER

CHRONOLOGICAL INDEX
VOLUME 1 OF 1 VOLUMES
JURY TRIAL

September 20, 2012                                    PAGE          VOL.

Appearances............................       2            1

Index..................................       3            1

Court Reporter's Certificate..........       10           1

Heather Deiss, CCR, RPR, CSR
435th District Court - 936-538-3638

MR. BOYD: Your Honor, my name is Walter Boyd and I represent his sister and mother. May I stand up here?

THE COURT: Thank you. It's come to my attention this is your sixth appearance. This is your plea acceptance date. You have to decide if you're going to reject it or accept it. It's my understanding that your attorney has communicated the offer to you. At this point, you have to decide whether you're going to accept the plea or reject it. And I notice here that your count one is a first degree felony. So the range of punishment is basically five years to life in prison.

MR. WARD: If I may, your Honor, he's habitualized.

THE COURT: Okay. So 25 years to life in prison. So even if the jury thought your case had merit, the minimum they could give you would be 25 years. And the same with the court. Because when you have prior convictions, it moves the minimum up to 25 years. So whatever the plea offer is made you have to know before you go into it, you have to make your decision, we'll start 25 years to life. And you have several different counts, I see here evading arrest or detention, tampering with physical evidence, and possession of a controlled substance. So at this time, you need to talk to your

13

attorney. It's my understanding the State has made an offer and it's your opinion the offer is a pretty fair one.

MR. WARD: Yes. And if I may, your Honor, Mr. Martin and I discussed it. I conveyed it in writing. He's rejected it in writing. I have a motion to withdraw. I was hired to bring it to this stage.

THE COURT: Can I have Mr. Martin's file, Peter Martin?

MR. WARD: I need to get a clerk stamp on here.

THE COURT: The offense date is March 6th of 2012. I show here there's a complaint in the file. Oh, and I actually signed it. I sign a lot of these. So I don't always remember very many details. Unfortunately, I'm not wanting to let you withdraw.

MR. WARD: Your Honor, we filed a motion and I have a contract with them and, you know, that's -- he has a very able lawyer right here representing the sisters who may want to get involved with the case.

THE COURT: Here's the deal. You have to pay your attorney. Otherwise, your attorney is not going to want to do a good job for you.

MR. WARD: They did pay me in full, but our agreement was up to a certain point. And so that's where

we are right now.

THE DEFENDANT: Your Honor, my mother is 87 years old and she's the one that paid him $55,000 to represent me and he got my sister to sign a contract and in that contract -- I'd like you to read it.

THE COURT: Which attorney are you referring to?

MR. BOYD: I haven't been paid anything yet.

MR. FREYER: I'll bet you five bucks this guy is about to say something foolish.

THE COURT: I'd feel more comfortable if you didn't speak.

MR. FREYER: He's been nothing but completely diligent and very persuasive in representing this defendant in a case where the facts are alleged to be overwhelming, okay, should this case go to trial. Today has been straightforward about returning phone calls the best he can to advocate for this case. Any assertion is blatantly false.

MR. BOYD: May I be heard, your Honor?

THE COURT: I don't understand why you have a dog in this fight.

MR. BOYD: I think I really do. I represent the sister and the mother who paid this man, and

we vehemently object to this withdrawal. I don't think it's right, but here's something that really should be taken in with us aside from everybody else here in this little skirmish over attorney's fees. On behalf of the mother and the sister -- and she's here, she's here to back this up, but we feel like it's --

THE COURT: Obviously the client is not them. The client is this gentleman right here.

MR. BOYD: I understand. That's true. Can she come up here, your Honor?

THE COURT: No, she cannot.

MR. BOYD: Well, I'm just glad I got up here.

THE COURT: We're having a discussion with Mr. Martin and really you don't represent Mr. Martin.

MR. BOYD: No, I don't.

THE COURT: So the decision is whether or not I allow Mr. Ward to withdraw. And I'm not at this time inclined to do so. I'm going to leave you on the case and if you want to set it for one more --

MR. WARD: It's been six times.

THE COURT: You've got to make your decision today. You have got to decide whether to accept or reject it. If your decision is to reject it, then it will be set for trial. I don't know what decision you

16

need to make or what answers you need to answer.

MR. FREYER: Just for the record, I did tell Mr. Ward that the tentative offer that I have -- I did make an offer -- I made him the opportunity to give me a number, that if he gave me a number, I would go up my food chain to see if that was something they could live with.

MR. WARD: They approved the offer at 40 and then it was 50.

MR. FREYER: It's 35 years. I told time 35 years ag time, then I would call Mr. Diepraam or Mr. Prewitt.

THE COURT: If you get approval and he decides to take it. --

MR. WARD: He he's already rejected it.

MR. FREYER: Just for the record, the offer is gone.

THE COURT: Then you may set it for trial.

MR. WARD: Again, your Honor, I think we have a capable attorney here if wants to take it over. I was paid up to a certain point and that's what the family signed up for.

THE COURT: I'm not going to let you off.

MR. BOYD: I do expect him to do a darn good job for them, and I know you will, Mr. Ward.

MR. FREYER: Walter, take it easy.

MR. BOYD: You can take your seat.

THE BAILIFF: Hey, go sit down.

MR. BOYD: Well, he directed it to me.

THE BAILIFF: Step out of the bar area. I don't care if you're an attorney or not.

STATE OF TEXAS §
COUNTY OF MONTGOMERY §

I, Heather L. Deiss, Deputy Court Reporter, in and for the 221st Judicial District Court of Montgomery County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of the Reporter's Record is $75.00 and has been paid by the Mr. Ward.

WITNESS MY OFFICIAL HAND this the 27th day of December, 2012.

_____
Heather Deiss, Texas CSR 8461
Expiration Date: 12/31/2013
Deputy Official Court Reporter
221st Judicial District Court
Montgomery County, Texas
301 North Main Street
Conroe, Texas 77301

REPORTER'S RECORD
VOLUME 1 of 1
TRIAL COURT CAUSE NO. 12-03-02604-CR

STATE OF TEXAS                : IN THE DISTRICT COURT OF
                              :
VS.                           : MONTGOMERY COUNTY, TEXAS
                              :
PETER JAMES MARTIN            : 221ST   DISTRICT   COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HEARING RE: MOTION TO SUBSTITUTE

SEPTEMBER 27, 2012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**EXHIBIT**

_____

On the 27th day of September, 2012, the following proceeding came to be held in the above-titled and numbered cause, the Honorable Judge Lisa Michalk presiding, held in Conroe, Montgomery County, Texas.

Proceedings reported by Machine Shorthand and computer-assisted realtime.

A P P E A R A N C E S

FOR THE STATE:

> Mr. Robert Freyer
> SBOT: 00798189
> Montgomery County District Attorney's Office
> 207 W. Phillips, 2nd Floor
> Conroe, Texas   77301
> (936) 539-7800

FOR THE DEFENDANT:

> Mr. Todd Ward
> SBOT: 00797780
> DeGuerin & Dickson
> 1018 Preston Ave, 7th Floor
> Houston, Texas   77002
> (713) 223-5959

ALSO PRESENT:

> Mr. Walter E. Boyd, Jr.
> SBOT: 02782000
> Law Offices of Walter E. Boyd, Jr.
> 202 Travis, Suite 208
> Houston, Texas   77002
> (713) 622-3505

21

INDEX

SEPTEMBER 27, 2012                                    PAGE

     Appearances. . . . . . . . . . . . . . . . . . .02

     Index. . . . . . . . . . . . . . . . . . . . . .03

     Reporter's Certificate. . . . . . . . . . . . . 09

THE COURT: I have something else to do outside the presence of the jury on an unrelated matter. Did you want to approach?

MR. FREYER: Mr. Ward wants to approach, Judge.

THE COURT: And what case is this on?

MR. FREYER: This is on the fellow from last week.

MR. WARD: His name was Peter Martin, Your Honor.

THE COURT: Do you happen to have the Court's file?

MR. WARD: No, I don't. Your Honor, we were here last week and you denied my motion to withdraw.

THE COURT: Right.

MR. WARD: We have had a motion to substitute. Mr. Boyd -- I don't want to speak for him, but he has agreed to come onto the case and I step off. But we wanted to approach and tell you what is going on.

THE COURT: The problem with that is I believe Mr. Boyd represented to me that he is a civil attorney and does not practice criminal law.

Is that correct?

MR. BOYD: I don't know where you got that. I practice criminal law mostly. The other Walter Boyd gets into trouble as much as I do. He is mostly civil. You may have looked me up on the Internet, but I have practiced criminal law and tried hundreds of cases.

THE COURT: I have not looked you up on the Internet. I don't even -- sorry, sir. I don't even know your name. I don't know you at all. I just know whenever you approached, you said you were representing the family civilly of some sort.

MR. BOYD: Oh.

THE COURT: And I would not have let you approach had I known -- because I thought you were on the case. Obviously, I am not going to let you approach on something if you are not representing the person.

MR. BOYD: No. But the problem is that they had an interest and they had paid him. And I did represent him to do something about this case.

Now, since that time, they have talked to me and they want me to represent the Defendant. And I have agreed to do so. And it is -- I am not a civil lawyer, but I want to -- the Defendant wants me on, the family wants me on. And they definitely want, with all

due respect, Mr. Ward off.

THE COURT: And your case is set for trial when?

MR. WARD: January 28th, I believe. So we have four months. And I can get all my file and all the work I have done to Mr. Boyd within a week.

THE COURT: Then you need to file a motion to substitute and have him sign off and have the Defendant sign off.

MR. WARD: I will.

MR. BOYD: And, Your Honor, we are going to do that today, if that is okay with you. I would like to just at this point stress that I do want to have that, if at all possible, go to trial on that day. I know you have got other deals, but the reasons I want to assert to you why --

THE COURT: Is your client in custody, sir?

MR. BOYD: Yes, ma'am. Yes, Your Honor.

THE COURT: Typically, the custody defendants go first. I can't guarantee anything. It is not set preferentially. I don't see any need to set it preferentially.

And, furthermore, your attitude last time concerns me. You raised your voice. You acted

inappropriate in court. And my bailiff almost had to intervene. If you do that again, I will have you removed. Are we clear? Are we absolutely 100 percent clear? Because I will not put up with that.

MR. BOYD: Well, I think you have made yourself clear, Your Honor.

THE COURT: All right. Thank you. I am in the middle of trial. I will let you sub in --

MR. BOYD: But you didn't get on him and he started it.

MR. WARD: Thank you, Your Honor.

MR. BOYD: All right. Well, we will substitute. Thank you, Your Honor.

MR. WARD: And, Your Honor, also for the record, I filed five pretrial motions. That was my primary purpose of coming here today -- discovery, 404 B motions, independent examination of the car --

THE COURT: Right. I have a standard discovery order that I submit in every single case.

MR. WARD: Sure. There was one extra one, but I have handed it over to Mr. Boyd. So I am sure he will get some sort of --

MR. FREYER: And, Judge, respectfully, what date are we talking about for this trial, because I don't remember?

THE COURT: Did you say January 23rd?

MR. WARD: January 28th, I believe, at 9:00. Just a minute.

MR. FREYER: The last offer is withdrawn. State will be ready.

MR. BOYD: Good.

THE COURT: Okay.

MR. WARD: January 28th we are set for trial.

MR. BOYD: Did you hear what he said, Your Honor?

THE COURT: He said the last offer is withdrawn and the State is ready.

MR. BOYD: That's fine. And I expect him to stick to that. And I would like to go to trial in January that day.

And I am glad you are the prosecutor on it. I am looking forward to it.

MR. WARD: Thank you, Your Honor.

THE COURT: Okay.

THE BAILIFF: We are done here.

MR. BOYD: All right. Thank you. Thank you.

* * * * *

STATE OF TEXAS

COUNTY OF MONTGOMERY

I, Cathy M. Busa, Official Court Reporter in and for the 221st District Court of Montgomery County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that the total cost for the preparation of this Reporter's Record is $50 and was paid by Mr. Todd Ward, attorney for Defendant.

WITNESS MY OFFICIAL HAND this the 24th day of October, 2012.

/s/ Cathy M. Busa
CATHY M. BUSA, CSR, RPR
Texas CSR No. 5060, Exp. 12/31/13
Official Court Reporter
221st District Court
Montgomery County, Texas
301 Main, 2nd Floor
Conroe, Texas 77301
Telephone: (936) 538-8133

28

09-13-00180  09-13-00181 09-00182  09-00183  STATE OF TEXAS VS.  PETER MARTIN

IN THE NINTH COUR T OF APPEALS OF TEXAS


AFFIDAVIT BY WALTER BOYD

TO THE HONORABLE COURT OF APPEALS:

My name is Walter Boyd. I was the trial counsel for the appellant. I am no longer his attorney and have not been such since Chris Allen was appointed as the appellant's appellate counsel. I submit this affidavit for whatever it might be to this court on this appeal.

The conclusion I have reached is that Chris Allen has been ineffective as the attorney on this appeal. I make this judgment as an expert. I submit facts and law to support this position This is the thrust of this affidavit.

So for my credentials:

I have been an attorney continuously for over fifty years in the state of TexasAnd have practiced during this time for the most part in criminal law. I was board certified in criminal law from the first time the certification was established in 1975 I believe it was. I kept my certification until about ten years ago when I got cancelled without my knowing about it for not paying some $20 fee or something like that. I have tried pretty successfully many jury criminal cases of probably well overf two hundred cases over this state but mostly in Harris County. and have handled a number of appeals in criminal cases. I wrote a well-received book at one time on criminal law cases in Texas . I have been a speaker in legal seminars and produced some and have been active in legal seminars and civic matters for a very long time. I have never been disciplined by a bar committee (although I was subject to a judge going after me in Huntsville one time). But so much for this. But I want to stress that I have never been one for attacking another attorney's performance in a formal proceeding. Usually I just rail in court or work behind the scenes if I need to. In other words, I am only complaining about Mr. Allen because I find his appellate work on these cases simply abysmal and way below any reasonable ethical standard.

Now to the merits:

From the very outset, shortly after Mr. Allen was appointed, I went a number of times to his office to express my desire to help him on appeal. He refused to see me each time. He left word that he would see me when the record was prepared. I never heard from him at all. The next thing I knew is that an inmate wrote me about the brief Mr. Allen had prepared. Shortly thereafter I went to the District Clerk's office in Conroe and got the record. This Court had entered an unpublished opinion based on only one point of error Mr. Allen raised. I called Mr. Allen and got his answering device shortly thereafter. He and I eventually spoke and it was not a pleasant conversation, that's for sure. It would do little good to relay what was exchanged and not a good thing to go into conversations between

attorneys for what should be obvious reasons. But one thing I do think important to report. Mr. Allen would not or could not even tell me whether he still represented this appellant.

Now the fact that Mr. Allen would not even have the good sense or courtesy or even in the interest of his client to consult with me is bad enough. But look at the number of errors I raised in the trial. I am not saying that I necessarily preserved all of them or that even if preserved they may not be harmless error. I am saying that it was Mr. Allen's job to do a better job on his brief. After my conversation with him, I find that he really has no excuse for not raising some if not all of the errors in this trial. I even discussed that it might have been better just to go straight to a writ. But it was pretty obvious that Mr. Allen had not thought of this. It is apparent to me that Mr. Allen just did not or could not do a good brief for whatever reason. I just ask this Court to look at the record to see if I am not correct in this appraisal of this situation.

I am submitting this affidavit on my own but have communicated with this appellant indirectly via lay persons who are trying to help him. From my indirect communications with the appellant, he has no objection to me filing this affidavit but he has not been furnished a copy of this at this point and does not I have not been paid or promised any payment for making this affidavit and am not otherwise



Walter Boyd  State Bar Card # 02782000

Subscribed and sworn to by Walter Boyd before the undersigned authority this 22nd day of July, 2014

Notary Public

MELISSA HOLMAN
Notary Public, State of Texas
Commission Expires 10-18-2017

- 2 -

30





32

PD-1050-14
IN THE TEXAS COURT OF CRIMINAL APPEALS
COURT OF APPEALS 09-13-00180-CR,09-13-00181-CR,09-13-00182-CR,09-13-00183-CR

PETER JAMES MARTIN, Appellant,          §
                                        § On appeal from the 221st Judicial
v.                                      § District Court of Montgomery County,
                                        § Texas, Cause No.12-03-02604-CR
THE STATE OF TEXAS, Appellee,           §

## APPELLANT'S PRO-SE APPENDIX, VOLUME II OF II VOLUMES

### Volume II Contents

Court of Appeals Memorandum Opinion,1-9(7/21/14)                              33-41
Court of Appeals order denying en banc consideration(9/4/14)                     42
Court of Appeals notice of filing en banc consideration(8/21/14)                 43
Court of Appeals notice of not filing motion to abate appeal(8/14/14)            44
Court of Appeals order overruling motion for rehearing(7/24/14)                  45
Court of Appeals orders denying motion to exceed page limit, and
    granting "final extension" to file for rehearing(6/26/14)                    46
Court of Appeals order granting "final extension" to file motion
    for rehearing until July 21,2014(6/17/14)                                    47
Court of Appeals order refusing to construe a pro-se motion while
    represented by counsel who filed a brief on the merits(3/20/14)             48
Appellant's Pro-Se Motion Requesting a Free Copy of the Appellate
    Records...,and complaining about appeal counsel's brief(3/17/14)          49-52
State's Ex.176 photo of bullet hole into side of car(2012.03.07 17:32)          53
State's Ex.179 photo of bullet hole into front hood and cracked
    windshield(2012.03.07 17:32)                                                 54
State's Ex.106,107 close up of used, bent tipped, missing plungers,
    syringe bodies found in Appellant's car(2012.03.07 16:38)                    55
State's Ex.78,79 close up extremely different looking turkey baster
    or veterinarian horse needle type of syringe found on roadside              56
State's Ex.59,60 close up diabetic, unused, marked, capped, new syringe
    found on roadside                                                           57

### Inmate Declaration

I Peter James Martin, being presently incarcerated in the Texas Dept. of Criminal Justice, Correctional Institutions Division, declare under penalty of perjury that the above listed record are true and correct unaltered copies of the originals already in the record in the instant case or in the possession of State prosecutors in the instant case. These facts are within my own personal knowledge. EXECUTED ON DECEMBER 24,2014.

### Certificate of Service

I certify and affirm placing a true and correct copy of the forgoing into the prison mailbox on 12-24-14 addressed to: State Prosecuting Attorney, Price Daniel Sr. Bldg., 209 W.14th St., Rm.202, Austin, Tx.78711, the Montgomery County District Attorney's Office, assistant DA's Jason Larman and Christopher Allen, 207 W. Phillips, 2nd Fl., Conroe, Tx. 77301, & the Clerk of the Beaumont Court of Appeals, Suite 330, 1001 Pearl St., Beaumont, Tx. 77701.

Peter James Martin

Peter James Martin #1846003
Stiles Unit 3060 FM 3514  Beaumont, TX 77705

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

---

NO. 09-13-00180-CR
NO. 09-13-00181-CR
NO. 09-13-00182-CR
NO. 09-13-00183-CR

---

**PETER JAMES MARTIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-03-02604-CR (Counts 1, 2, 3, 4)**

---

**MEMORANDUM OPINION**

Arguing that the prosecutor elicited prejudicial testimony about his criminal history from a witness during the guilt-innocence phase of his trial, Peter James Martin contends he is entitled to receive a new trial. With respect to Martin's complaint, the record shows the trial court instructed the jury to disregard Martin's sister's testimony that Martin had been in and out of prison. Because the instruction sufficiently cured any harm that resulted from the jury hearing the

1

question and testimony at issue, the trial court's decision to deny Martin's motion for mistrial was not an abuse of discretion.

## Background

In a four-count indictment, the State charged Martin with aggravated assault against a public servant (Count One), evading arrest/detention with a vehicle (Count Two), tampering with physical evidence (Count Three), and possession of a controlled substance (Count Four). *See* Tex. Penal Code Ann. § 22.02(b)(2) (West 2011), § 38.04(b)(2)(A)[1] (West Supp. 2013), § 37.09(d) (West Supp. 2013); Tex. Health & Safety Code Ann. § 481.115 (West 2010). Seeking to enhance Martin's punishment, the State also alleged that Martin had previously been convicted of several prior felonies.

Martin pled not guilty to each of the four counts of the indictment; the jury found him guilty on all four counts following the guilt/innocence phase of his trial. Additionally, the jury found that Martin used a deadly weapon while evading arrest.

---

[1]The judgment of conviction related to Martin's conviction cites section 38.04(b)(1), making evading arrest or detention with a vehicle a state jail felony if the defendant is shown to have a prior conviction for evading arrest or detention under section 38 of the Penal Code. However, the factual allegations in Martin's indictment and the evidence introduced during the trial show that he evaded arrest or detention by using a vehicle, a third-degree felony under 38.04(b)(2)(A) of the Penal Code. In the opinion, we cite to the correct statute.

2

During the punishment phase of the trial, Martin pled "not true" regarding all the enhancement allegations in the indictment. At the conclusion of the punishment phase of Martin's case, the jury returned "true" verdicts regarding three of Martin's prior felonies. Given its enhancement findings, the jury considered an enhanced range of punishment regarding three of the four crimes on which it convicted Martin of committing. On each of the felonies that were the subjects of the jury's enhancement findings (aggravated assault against a public servant, evading arrest, and tampering with physical evidence), the jury assessed separate life sentences. For possessing a controlled substance, the felony not subject to any of the jury's enhancement findings, the jury assessed a sentence of twenty years.

## Analysis

The record shows that during the prosecutor's cross-examination of Martin's sister, the prosecutor asked her if she knew that Martin had "been in and out of prison[.]" After Martin's sister answered, Martin objected to the question and asked that the trial court instruct the jury to disregard it. The trial court sustained Martin's objection, and then instructed the jury "to disregard the testimony about being in and out of prison." Martin then moved for a mistrial; however, the trial court denied Martin's request.

3

35

In a single issue, Martin contends the prosecutor purposely elicited inadmissible testimony showing that he had been in and out of prison. According to Martin, given the nature of the charges against him, the evidence about having been in prison was extremely prejudicial.

We review Martin's issue complaining of the trial court's decision to deny his request for a mistrial under an abuse of discretion standard. *See Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Asking an "improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Id.* In considering whether an abuse of discretion occurred, we consider the severity of the alleged misconduct, the curative effect of the trial court's instruction to disregard, and the certainty of the punishment assessed assuming the misconduct had not occurred. *See Hawkins*, 135 S.W.3d at 77.

Martin argues that his sister's testimony concerning his prior incarceration was so prejudicial that it was impossible for the jury to disregard it. On the record before us, we disagree that the evidence was very prejudicial. Before Martin's sister testified, a statement that Martin gave to the police was admitted into

4

evidence without objection: in that statement, Martin said that he did not pull over because he was on drugs and on parole. Because the jury could infer directly from Martin's statement to the police that he had been in prison, and because the statement was admitted without objection, the additional testimony of Martin's sister about Martin having been in prison was cumulative of other evidence that was properly before the jury. *See Austin v. State*, 222 S.W.3d 801, 816 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (determining the prejudicial impact by considering the evidence in the context of the entire trial).

The record also shows that the trial court took prompt curative action in an effort to prevent the jury from considering the testimony at issue. The trial court instructed the jury to disregard the testimony just after Martin's sister agreed that she knew that Martin had been in and out of prison. Generally, a prompt instruction to disregard is sufficient to cure the possible prejudice that may result when objectionable testimony about a defendant's prior incarceration is mentioned by a witness. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (explaining that a witness's reference to the defendant having been in prison was cured by an instruction to disregard); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992) (concluding a witness's reference to the defendant having been incarcerated was cured by an instruction to disregard). The trial court's prompt

5

instruction, in our opinion, sufficiently cured any unfair prejudice which may have resulted from the question or the answer at issue. *See Kemp*, 846 S.W.2d at 308.

The evidence of Martin's guilt leads to the conclusion that Martin's prospects of being acquitted on any of the charges for which he was tried were highly unlikely. When considering the record as a whole, nothing in the record shows that Martin might have received a different punishment. For example, regarding Martin's conviction for evading arrest, the entire pursuit was captured on a video that the jury reviewed during Martin's trial. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). The video shows that Deputy Chris Azwell, after observing that Martin was not maintaining his speed and that he was operating his vehicle in an unsafe manner, activated his overhead lights and siren in an effort to get Martin to stop. The video further shows that Martin failed to stop, and that he committed additional traffic violations while evading Deputy Azwell's attempt to pull him over. Additionally, after the State finished its closing argument and with the jury present, Martin's attorney requested that Martin be allowed to plead guilty to the charge of evading arrest. In closing argument, Martin's attorney agreed that Martin was guilty of evading arrest.

With respect to Martin's conviction for aggravated assault against a public servant, Deputy Azwell testified that Martin, in attempting to evade arrest, tried to run over him with his car. *See id.* § 22.02(b)(2). Martin did not testify at the trial,

6

and the video admitted into evidence that captured Martin evading arrest does not include the part where Martin used his car in an effort to run over Deputy Azwell. Nonetheless, Deputy Azwell's testimony about Martin's having driven directly at him as the chase was ending is not contradicted. According to Deputy Azwell, he fired several shots at Martin's car when Martin drove toward him. Based on Deputy Azwell's testimony, it is unlikely that the jury would have chosen to acquit Martin on the charge that he committed an aggravated assault against a public servant. Additionally, nothing in the record supports a conclusion that the jury might have given Martin another punishment on the charge.

Martin's conviction for knowingly possessing a controlled substance also finds ample support in the evidence. *See* Tex. Health & Safety Code Ann. § 481.115. The testimony from the trial shows that after Martin's arrest, a crime scene investigator retrieved a small plastic baggy containing a white powder from the floorboard on the driver's side of Martin's car. *See Washington v. State*, 215 S.W.3d 551, 554-57 (Tex. App.—Texarkana 2007, no pet.) (finding the evidence sufficient to prove that the defendant knowingly possessed a controlled substance where the facts and circumstances linked the defendant to the cocaine found in the floorboard of his car). Additional evidence in the record shows that the substance in the baggy was tested by a forensic scientist, who found that the powdery substance was cocaine. Other evidence admitted during Martin's trial shows that

7

Martin was the only person in the car, that the car contained other drug paraphernalia, and that Martin indicated he was on drugs shortly after he was stopped. *See id.* at 556-57. We are not persuaded that Martin would have been acquitted on this charge had the testimony at issue never been introduced.

The evidence further supports Martin's conviction for tampering with physical evidence. *See* Tex. Penal Code Ann. § 37.09(d)(1) (providing that a person, who knows that an offense has been committed, commits the offense of tampering with evidence, if the person alters, destroys, or conceals anything with the intent to impair its availability as evidence). According to Deputy Azwell, while pursuing Martin's vehicle, he saw Martin throw a spoon and several syringes out of his car's window. Syringes that the police recovered from the area where Deputy Azwell observed Martin throwing things from his car were admitted into evidence during Martin's trial. Thus, the record allowed the jury to infer that Martin, knowing that he was in possession of a controlled substance, tampered with evidence by attempting to dispose of evidence relevant to his guilt for possessing a controlled substance. *See Stewart v. State*, 240 S.W.3d 872, 873-84 (Tex. Crim. App. 2007) ("The tampering with evidence statute requires *intent* as to a particular result, namely, impairing a thing's availability as evidence.").

Considering the entire record, the trial court could have reasonably believed that its instruction eliminated any prejudice from the question and answer at issue.

8

Therefore, we conclude the trial court did not abuse its discretion in denying Martin's request for a mistrial. *See Hawkins*, 135 S.W.3d at 85. We overrule Martin's sole issue. Martin's convictions and sentences in trial cause numbers 12-03-02604-CR Count One, 12-03-02604-CR Count Two, 12-03-02604-CR Count Three, and 12-03-02604-CR Count Four are affirmed.

AFFIRMED.

_____

HOLLIS HORTON
Justice

Submitted on April 21, 2014
Opinion Delivered May 21, 2014
Do Not Publish

Before Kreger, Horton and Johnson, JJ.



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
## Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402 FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

September 04, 2014

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Chris Allen
430 North Main
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

**RE:** Case Number:    09-13-00180-CR
Trial Court Case Number:    12-03-02604 CR - Count 1

**Style:** Peter James Martin
v.
The State of Texas

    The appellant's pro se motion for en banc consideration of the panel's decision to deny rehearing in the above styled and numbered cause was overruled this date.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

42

FILE COPY



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
### Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402  FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

August 21, 2014

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Chris Allen
430 North Main
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

**RE:**   Case Number:   09-13-00180-CR
          Trial Court Case   12-03-02604 CR - Count 1
          Number:

**Style:**   Peter James Martin
             v.
             The State of Texas

The appellant's motion for en banc reconsideration, received August 7, 2014, in the above styled and numbered cause is being considered timely filed. You will be notified when the Court acts on the motion for en banc reconsideration.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

43



**CHIEF JUSTICE**
STEVE MCKEITHEN

**JUSTICES**
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
### Ninth District

**CLERK**
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402   FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

August 14, 2014

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Chris Allen
430 North Main
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

**RE:**   Case Number:            09-13-00180-CR
          Trial Court Case        12-03-02604 CR - Count 1
          Number:

**Style:** Peter James Martin
          v.
          The State of Texas

    A Pro Se Motion to Abate Appeal was received this date from the Hughes Unit. Per appellant's instructions, this motion is received but not filed and no action will be taken on this motion.

                        Sincerely,

44



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
## Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402   FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

July 24, 2014

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

**RE:**  Case Number:        09-13-00181-CR
        Trial Court Case    12-03-02604 CR - Count 2
        Number:

**Style:**  Peter James Martin
        v.
        The State of Texas

The Appellant's Pro Se amended motion for rehearing in the above styled and numbered cause was overruled this date.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

cc:   Chris Allen (DELIVERED VIA E-MAIL)
      Judge Lisa Benge Michalk (DELIVERED VIA E-MAIL)
      Pamela May (DELIVERED VIA E-MAIL)
      Barbara Adamick (DELIVERED VIA E-MAIL)
      William J. Delmore III (DELIVERED VIA E-MAIL)

45



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
### Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402  FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

June 26, 2014

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Chris Allen
430 North Main
Conroe, TX 77301
\* DELIVERED VIA E-MAIL \*

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
\* DELIVERED VIA E-MAIL \*

**RE:**   Case Number:        09-13-00180-CR
          Trial Court Case    12-03-02604 CR - Count 1
          Number:

**Style:**   Peter James Martin
            v.
            The State of Texas

The Appellant's Pro Se Motion to Exceed the Page Limit for Motion for Rehearing in the above styled and numbered cause was denied this date.

The Appellant's Pro Se Motion for Rehearing remains due to be filed on or before July 21, 2014 with the notation "FINAL EXTENSION."

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

46



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
## Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402  FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

June 17, 2014

Peter James Martin
#1846003
Michael Unit
2664 FM 2054
Tennessee Colony, TX 75886

Chris Allen
430 North Main
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

**RE:**  Case Number:  09-13-00180-CR
  Trial Court Case
  Number:  12-03-02604 CR - Count 1

**Style:**  Peter James Martin
  v.
  The State of Texas

The Appellant's Pro Se motion for extension of time to file motion for rehearing in the above styled and numbered cause was granted this date with the notation "**FINAL EXTENSION**". The Appellant's Pro Se motion for rehearing is due to be filed on or before **July 21, 2014**.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

47



CHIEF JUSTICE
STEVE MCKEITHEN

JUSTICES
CHARLES KREGER
HOLLIS HORTON
LEANNE JOHNSON

# Court of Appeals
## State of Texas
## Ninth District

CLERK
CAROL ANNE HARLEY

OFFICE
SUITE 330
1001 PEARL ST.
BEAUMONT, TEXAS 77701
409/835-8402  FAX 409/835-8497
WWW.9THCOA.COURTS.STATE.TX.US

March 20, 2014

Peter James Martin
#1846003
Hughes Unit
Rt. 2, Box 4400
Gatesville, TX 76597

Chris Allen
430 North Main
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

Jason Larman
Assistant District Attorney
207 W. Phillips, 2nd Floor
Conroe, TX 77301
* DELIVERED VIA E-MAIL *

**RE:**   Case Number:           09-13-00180-CR
         Trial Court Case        12-03-02604 CR - Count 1
         Number:

**Style:**  Peter James Martin
         v.
         The State of Texas

We received a *pro se* motion. Appellant is being represented by counsel, who filed a brief on the merits on December 10, 2013. The Court will not consider *pro se* submissions while a party is represented by counsel.

Sincerely,

CAROL ANNE HARLEY
CLERK OF THE COURT

48

NO.09-13-00180-CR, NO.09-13-00181-CR,
NO.09-13-00182-CR, NO.09-13-00183-CR

In the Court of Appeals for the Ninth Judicial District of Texas, at Beaumont

Peter James Martin, Appellant, **FILED**

v.

**MAR 1 7 2014**

The State of Texas, Appellee,

CAROL ANNE HARLEY
CLERK OF THE COURT
NINTH COURT OF APPEALS

Arising from: the 221st Judicial
District Court of Montgomery County,
Texas, Cause No.12-03-02604-CR

APPELLANT'S PRO-SE MOTION TO BE PERSONALLY PROVIDED WITH A FREE
COPY OF THE APPELLATE RECORDS, AND AN EXTENSION OF TIME TO
FILE PRO-SE A MOTION FOR REHEARING OF ANY DECISION

NOW COMES PETER JAMES MARTIN, pro-se and <u>not</u> acting in a hybrid form of

representation with the above styled and numbered Pro-Se Motion seeking a copy

of his appellate record and an extension of time to file pro-se a motion for

rehearing of any ultimate decision of this Court, and would show as follows:

I. Relevant Facts and Procedural History

1.   Appellant adopts appointed defense counsel's "Statement of the Case"

facts. See <u>Appellant's rief</u>,7-10. He is proceeding as an indigent. <u>id.</u> @ 10.

In Appellant's entire jury trial on fourt felony charges, defense counsel's only

argument on appeal was the <u>prosecution</u> elicited testimony as to Appellant's prior

convictions during trial requiring a mistrial which was not granted, <u>id.</u> @ 13,

but failed to mention <u>defense counsel</u> invited this error during voir dire appar-

ently deliberately. See <u>State's rief</u>,6-7(noting appellant in a taped interview

played for jury admitted to being on parole which was why he ran from police,

defense counsel "hardly sought to sheid the jury from evidence of his past...

convictions"excerpting his trial arguments "reading his rap sheets" then admitting

"I think I've already achieved my purpose by having this thing drawn out at

the bench").

2.   Appellant has sought during this appeal to participate in the appellate

process with appointed defense counsel on appeal Mr. Allen and Mr. Finch, by

having his family contact them for him asking for them to provide Appellant with

-1-

49

When an attorney cannot identify any non-frivolous ground on which to base an appeal, he files an "Anders brief" and advises the defendant of his right to file a pro-se brief in the court of appeals. Jiminez,129 S.Ct. @ 683(citation omitted). While Appellant is still represented by appointed counsel on appeal, he cannot directly participate pro-se in the appeal process by filing motions or briefs. See Robinson v State, 919,922(Tex.Crim.App.2007)(rev'g & rem'dg for court of appeals' summary, unexplained denial of pro-se motion, for clarification if it was on the merits or because of "hybrid representation" bar). But he can file a pro-se motion for rehearing of any final decision of this Court attacking appellate counsel's presentation of reversible error (or non-presentation thereof) and new reversible error that is meritorious. Rodriguez,129 S.W.3d @ 562-64(rev'g & acquitting on pro-se motion for reh'g, and appointed counsel's obtaining of an affirmance and unpublished opinion). Although the Rodriguez opinion only briefly mentions the other issues raised in that motion for rehearing in passing before only ruling on the legal insufficiency of the evidence of knowledge of the partner's possession of a knife before and during the robbery, those other issues included ineffective assistance of counsel in trial and on appeal for failing to identify and litigate the ultimate issue of success. id. @ 562.

### III. Argument

As an indigent, Appellant is entitled to a free copy of his appellate records, to actively particpate in his own direct appeal, but appointed appeal counsel denied him access to a copy, assentially preventing him from participating in this appeal and suppressing his point of view on constitutional error that may have occurred in his own jury trial. That is surely hinderring the right to a meaningful appeal protected by due process and the right to counsel. Appellant does not seek to interfere with this Court's process as it stands at this time, but only to be given the same opportunity that the Rodriguez appellant was given, to actively participate in his own direct appeal while the case is still pending

-3-

50

## IV. Conclusion

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays this Court will GRANT this motion in all ways, by ORDERING he be provided with complete copies of his reporter's records and clerks records from Cause No.12-03-02604-CR from the 221st Court of Mantgomery County, Texas, and that the 15 day time limit for filing a motion for rehearing of this Court's memorandmum opinion yet to be issued as of this date be extended to 75 days for the filing of a pro-se motion for rehearing of any affirmance from this Court.

## V. Unsworn Declaration

I, Peter James Martin, am the appellant in this case, and do hereby declare udner penalty of perjury that the facts stated hereinabove are true and correct.

EXECUTED ON MARCH 11th,2014.

## VI. Certificate of Service

I certify and affirm placing a true and correct copy of this motion into the prison mailbox on March 11th,2014 addressed to Jason Larman, Assistant District Attorney of Montgomery County Texas, 207 W. Phillips, 2nd Fl., Conroe, Texas 77301, and Christopher Neal Allen, defense appellate counsel, 430 N. Main Street, Conroe, Texas 77301.

Respectfully Submitted,

Peter James Martin, #1846003, pro-se
Hughes Unit, Rt.2, Box 4400
Gatesville, Texas 76597

51

Peter J. Martin, TDCJ #1846003
Hughes Unit, Rt.2, Box 4400
gatesville, Texas 76597

RECEIVED AND FILED
FOR RECORD
At_____ O'Clock_____ M.

FEB 21 2014

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____Deputy

February 17th, 2014

Trial Attorney Walter Boyd
202 Travis St., Suite 208,
Houston, TX. 77002
Texas State Bar No.0278200

Appeal Attorney Chris Allen
430 N. Main Street
Conroe. TX. 77301
Texas State Bar No.24031816

Barbara Gladden Adamick
District Clerk of Montgomery County
P.O. Box 2985
Conroe, TX. 77305

Appeal Attorney Jeremy D. Finch
300 W. Davis, Suite 450,
Conroe, TX. 77301
Texas State Bar No.2405964

RE : Trial Court Cause No. 12-03-02604-CR-CTI,CTII,CTIII,CTIV
Appeal Nos.09-13-00180-CR, 09-13-00181-CR, 09-13-00182-CR &
09-13-00183-CR

Peter James Martin v. State of Texas

Dear Attorneys Boyd, Allen and Finch,

I respectfully request to be provided with complete copies of the (1) clerk's
record (2) reporter's record (3) the approx.400 large color photos taken by prior
trial counsel Todd Ward now in possession of trial counsel Walter Boyd (4) trial
counsel's trial notes (Mr. Boyd's - I have Mr. Ward's notes), and (5) any other
records and exhibits from my trial and appeal, including a copy of Officer Chris
Azwell's "dash camera" video recording of the incident.
I need these records in order to actively participate in my direct appeal
process with my appeal lawyers, and in order to preserve my legal rights.
Please send them to me in prison at my above address clearly marked "LEGAL
RECORDS ENCLOSED - ATTORNEY CLIENT PRIVELEDGED CONTENTS".

Thank you very much for your continued assistance and co-operation in my
criminal trial and appeal indicated hereinabove.

Dear District Clerk Adamick,

Would you please file your copy of this notice sent to the above listed
attorneys, in the trial court cause number listed hereinabove, for verification
purposes that this notice was sent out in this case? Thank you very much.

Sincerely,

Peter James Martin

Peter J. Martin, TDCJ #1846003

cc: file

52



2012.03.07 17:32

53





56



51